WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Matthew S. Barr
David J. Lender
Theodore E. Tsekerides
Joshua S. Amsel

*Counsel to Official Committee of Unsecured Creditors*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | Case No. 16-10992 (SMB) |
| SUNEDISON, INC., *et al.*, | : | (Jointly Administered) |
| | : | |
| Debtors.[1] | : | |
| | : | |
| OFFICIAL COMMITTEE OF UNSECURED | : | |
| CREDITORS, on behalf of the estates of the | : | |
| Debtors, | : | |
| | : | Adversary Proceeding |
| Plaintiff, | : | No. 16-_____ |
| | : | |
| v. | : | |
| | : | |
| JUAN M. RODRIGUEZ BELTRAN, | : | |
| (contd.) | : | |

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number are as follows: SunEdison, Inc. (5767); SunEdison DG, LLC (N/A); SUNE Wind Holdings, Inc. (2144); SUNE Hawaii Solar Holdings, LLC (0994); First Wind Solar Portfolio, LLC (5014); First Wind California Holdings, LLC (7697); SunEdison Holdings Corporation (8669); SunEdison Utility Holdings, Inc. (6443); SunEdison International, Inc. (4551); SUNE ML 1, LLC (3132); MEMC Pasadena, Inc. (5238); Solaicx (1969); SunEdison Contracting, LLC (3819); NVT, LLC (5370); NVT Licenses, LLC (5445); Team-Solar, Inc. (7782); SunEdison Canada, LLC (6287); Enflex Corporation (5515); Fotowatio Renewable Ventures, Inc. (1788); Silver Ridge Power Holdings, LLC (5886); SunEdison International, LLC (1567); Sun Edison LLC (1450); SunEdison Products Singapore Pte. Ltd. (7373); SunEdison Residential Services, LLC (5787); PVT Solar, Inc. (3308); SEV Merger Sub Inc. (N/A); Sunflower Renewable Holdings 1, LLC (6273); Blue Sky West Capital, LLC (7962); First Wind Oakfield Portfolio, LLC (3711); First Wind Panhandle Holdings III, LLC (4238); DSP Renewables, LLC (5513); Hancock Renewables Holdings, LLC (N/A); EverStream HoldCo Fund I, LLC (9564); Buckthorn Renewables Holdings, LLC (7616); Greenmountain Wind Holdings, LLC (N/A); Rattlesnake Flat Holdings, LLC (N/A); Somerset Wind Holdings, LLC (N/A); SunE Waiawa Holdings, LLC (9757); SunE Minnesota Holdings, LLC (8926); SunE MN Development Holdings, LLC (5388); and SunE MN Development, LLC (8669).   The address of the Debtors' corporate headquarters is 13736 Riverport Drive, Maryland Heights, Missouri 63043.

PYRAMID HOLDINGS, INC.,                              :
ABHISHEK AGRAWAL, IRON                               :
WORKERS MID-SOUTH PENSION FUND,  :
ANTON S. BADRI, MITESH PATEL,                        :
COBALT PARTNERS, LP,COBALT                           :
PARTNERS II, LP, COBALT OFFSHORE        :
MASTER FUND, LP, COBALT KC                           :
PARTNERS, LP, OKLAHOMA                                   :
FIREFIGHTERS PENSION AND                             :
RETIREMENT SYSTEM, GLENVIEW              :
CAPITAL PARTNERS, L.P. GLENVIEW          :
INSTITUTIONAL PARTNERS, L.P.,                    :
GLENVIEW CAPITAL MASTER FUND,           :
LTD., GLENVIEW CAPITAL                                 :
OPPORTUNITY FUND, L.P., GLENVIEW      :
OFFSHORE  OPPORTUNITY MASTER            :
FUND, LTD., OMEGA CAPITAL                          :
INVESTORS, L.P.,OMEGA CAPITAL              :
PARTNERS, L.P., OMEGA EQUITY                  :
INVESTORS, L.P.,OMEGA OVERSEAS            :
PARTNERS, LTD., DINA HOROWITZ,            :
KENNETH J. MOODIE, ROBERT KUNZ,       :
ALEXANDER Y. USENKO, JULIE DULL,       :
ERIC O'DAY, ROBERT LINTON,                      :
RICHARD A. WHEELER, JAMES                      :
GOLDEN, JERRY JONES, CHARLES              :
BLOOM, SHARON BURNSTEIN,                      :
TERRAFORM GLOBAL, INC., DARCY            :
CHURCH, JOHN CHAMBLEE, KINGDON      :
ASSOCIATES, KINGDON CREDIT                   :
MASTER FUND, L.P., KINGDON FAMILY  :
PARTNERSHIP, L.P., M. KINGDON               :
OFFSHORE MASTER FUND, L.P.,                   :
CANYON CAPITAL ADVISORS LLC,            :
CANYON BALANCED MASTER FUND,        :
LTD., CANYON CAPITAL ARBITRAGE       :
MASTER FUND, LTD., CANYON-GRF            :
MASTER FUND II, L.P., CANYON                   :
VALUE REALIZATION FUND, L.P.,              :
CANYON VALUE REALIZATION                   :
MASTER FUND, L.P., PERMAL CANYON    :
IO LTD., VMT II, LLC, SIMON                        :
FRASER, JASON ALDRIDGE, KEARNY      :
INVESTORS S.À R.L, POWELL                        :
INVESTORS L.P. and POWELL                        :
INVESTORS II LIMITED PARTNERSHIP,   :
                                                                                  :
         Defendants.                                                  :
                                                                                  :
—————————————————————:

## ADVERSARY COMPLAINT

The Official Committee of Unsecured Creditors (the "**Creditors' Committee**") of SunEdison, Inc. ("**SUNE**" or the "**Company**") and certain of its affiliates in the above-captioned chapter 11 cases, as debtors and debtors-in-possession (collectively, the "**Debtors**"), by and through its undersigned counsel, on behalf and as the representative of the Debtors' estates, as and for its Adversary Complaint, hereby alleges as follows:

## INTRODUCTION

1.      This is an adversary proceeding for declaratory relief and to enforce the automatic stay under section 362 or, in the alternative, section 105 of the Bankruptcy Code with respect to pending litigation against certain current and former directors and officers of the Debtors (collectively, the "**D&O Actions**"), among others, the majority of which cases (20 of 30) also name the Company as a defendant.[2]  As set forth herein, the automatic stay must be enforced against the D&O Actions because the Debtors have a property interest in the Company's directors' and officers' liability insurance policies (collectively, the "**D&O Policies**"), which are likely to fund most or all of any money judgment in the D&O Actions, and the continued prosecution of those actions threatens to deplete—if not entirely eliminate—that property interest.

2.      The D&O Actions were commenced by the individuals and entities that are named as defendants in this adversary proceeding (collectively, "**Defendants**").   Across the D&O Actions, Defendants have asserted a variety of claims—including claims for, among other things, securities fraud, breaches of fiduciary duty, and breach of duty under the Employee Retirement Income Security Act of 1974 ("**ERISA**")—against a host of current and former

---

[2] Pursuant to an October 4, 2016 order of the U.S. Judicial Panel on Multidistrict Litigation, the D&O Actions have been consolidated before Judge P. Kevin Castel in the U.S. District Court for the Southern District of New York.

directors and officers of SUNE and various of its affiliates (including, but not limited to, SUNE's publicly-traded "YieldCo" subsidiaries, TerraForm Power, Inc. ("**TERP**") and TerraForm Global, Inc. ("**GLBL**," and together with TERP, the "**YieldCos**")) and, in many cases, SUNE itself.  Certain of the D&O Actions have been brought as putative class actions, certain have been brought as shareholder derivative actions, and certain have been brought as direct actions on an individual basis by several of Defendants.

3.    The Creditors' Committee, in a separate adversary proceeding,[3] intends to assert many of these same claims—including claims for breaches of fiduciary duty and other violations of law—against many, if not all, of the same current and former directors and officers. To that end, on October 7, 2016, the Creditors' Committee served on SUNE's Board of Directors a written demand to commence litigation against these directors and officers or, in the alternative, consent to the Creditors' Committee's standing to commence such litigation on behalf of the Debtors' estates.  SUNE responded through counsel on October 14, 2016 and refused to do either.

4.    Continued prosecution of the D&O Actions outside of these bankruptcy cases threatens to harm the Debtors' estates, affect the Debtors' property interest in the D&O Policies, and, potentially, affect the recoveries available to creditors of the estates.  Worse yet, should any of the D&O Actions settle (with insurance money) or proceed to judgment, such settlement or judgment could very well extinguish all amounts remaining under the policies (given that the potential damages in the D&O Actions, in the aggregate, are in the billions of dollars).  That would leave SUNE to both fund the entirety of its own potential liability in the D&O Actions and satisfy any indemnification obligations to those directors and officers still

---

[3] Contemporaneous with the filing of this Adversary Complaint, the Creditors' Committee intends to file a motion for, among other things, leave, standing and authority to commence and prosecute breach of fiduciary duty and other claims against certain current and former SUNE directors and officers.

litigating, all at the expense of the Debtors' estates and creditors.  Unless the automatic stay is enforced against the D&O Actions, those actions are sure to deplete, and likely wipe out, a valuable property interest of the Debtors—the D&O Policies.  Those policies cover the Debtors, the YieldCos and their respective directors and officers, and, importantly, proceeds of the policies may be an asset for distribution to unsecured creditors.[4]

5.      Specifically, unless the automatic stay is enforced against the D&O Actions, the named directors and officers, along with the YieldCos in certain of the actions, will continue to draw down on the D&O Policies as defense costs are incurred.  Given the number of D&O Actions and the number of covered individuals and entities that are named as defendants therein, such defense costs, in the absence of the relief requested herein, will soon spiral out of control, threatening to materially reduce the total coverage available under the policies long before any of the actions reach a logical settlement point or proceed to judgment.  Further, if any of the D&O Actions settle or proceed to judgment, again, in the absence of the relief requested herein, the use of insurance dollars to pay for the settlement or satisfy the judgment would naturally impair—and, eventually, preclude—the estates' (and, thus, unsecured creditors') ability to access the D&O Policies.

6.      The D&O Actions are now stayed as to SUNE pursuant to the automatic stay.  The Creditors' Committee brings this adversary proceeding pursuant to Fed. R. Bankr. P. 7001 seeking declaratory relief and to enforce the automatic stay against the D&O Actions in their entirety under section 362 or, in the alternative, section 105 of the Bankruptcy Code.

---

[4] Subject to certain conditions and carve-outs, the Debtors' unsecured creditors are entitled to the proceeds of the D&O Policies under the Litigation Trust and D/O Insurance Proceeds provisions of the Committee Settlement annexed to the Final DIP Order [ECF No. 523].

## JURISDICTION AND VENUE

7.    This is an adversary proceeding pursuant to Fed. R. Bankr. P. 7001. Pursuant to Local Bankruptcy Rule 7008-1, the Creditors' Committee consents to the entry of final orders or judgments by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

8.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

9.    Venue is proper before the Court pursuant to 28 U.S.C. § 1409.

## PARTIES

10.    The Creditors' Committee is the seven-member creditors' committee duly-appointed by the Office of the U.S. Trustee on April 29, 2016 pursuant to section 1102(a)(1) of the Bankruptcy Code.  [Docket No. 148].[5]

11.    Defendants Juan M. Rodriguez Beltran, Pyramid Holdings, Inc., Abhishek Agrawal, Iron Workers Mid-South Pension Fund, Anton S. Badri, Mitesh Patel, Cobalt Partners, LP, Cobalt Partners II, LP, Cobalt Offshore Master Fund, LP, Cobalt KC Partners, LP, Oklahoma Firefighters Pension and Retirement System, Glenview Capital Partners, L.P., Glenview Institutional Partners, L.P., Glenview Capital Master Fund, Ltd., Glenview Capital Opportunity Fund, L.P., Glenview Offshore Opportunity Master Fund, Ltd., Omega Capital Investors, L.P., Omega Capital Partners, L.P., Omega Equity Investors, L.P., Omega Overseas Partners, Ltd., Dina Horowitz, Kenneth J. Moodie, Robert Kunz, Alexander Y. Usenko, Julie Dull, Eric O'Day, Robert Linton, Richard A. Wheeler, James Golden, Jerry Jones, Charles

---

[5] The members of the Creditors' Committee are:  Advantage Opportunities Fund, LP; Albemarle Corporation; AQR DELTA Master Account, L.P.; BOKF, N.A., as Indenture Trustee; D. E. Shaw Composite Holdings, LLC; Flextronics Industrial, Ltd.; and Vivint Solar, Inc.

Bloom, Sharon Burnstein, TerraForm Global, Inc., Darcy Church, John Chamblee, Kingdon Associates, Kingdon Credit Master Fund, L.P., Kingdon Family Partnership, L.P., M. Kingdon Offshore Master Fund, L.P., Canyon Capital Advisors LLC, Canyon Balanced Master Fund, Ltd., Canyon Capital Arbitrage Master Fund, Ltd., Canyon-GRF Master Fund II, L.P., Canyon Value Realization Fund, L.P., Canyon Value Realization Master Fund, L.P., Permal Canyon IO Ltd., VMT II, LLC, Simon Fraser, Jason Aldridge, Kearny Investors S.À R.L, Powell Investors L.P., and Powell Investors II Limited Partnership are the plaintiffs in the D&O Actions.

## RELIEF REQUESTED

12.     By this Adversary Complaint, the Creditors' Committee seeks a declaratory judgment and an order enforcing the automatic stay under sections 362(a) and/or 105(a) of the Bankruptcy Code against the D&O Actions in their entirety.

## FACTUAL ALLEGATIONS

13.     SUNE is a renewable-energy development company that develops, finances, installs, owns and operates renewable energy power plants, while also serving as a renewable energy asset manager.

14.     In its capacity as asset manager, SUNE provides asset management, operations and maintenance, monitoring and reporting services to safeguard and maximize the performance of its customers' renewable energy assets.

15.     SUNE is the ultimate parent company of hundreds of domestic and foreign subsidiaries, including the other Debtors and various non-debtors, that operate throughout the world, including in the United States, Canada, Mexico, Latin America, Europe, India, Malaysia, Singapore, Africa, the Middle East, Australia and Asia.

16.     As referenced above, SUNE has two non-debtor YieldCo subsidiaries, TERP and GLBL, that own completed energy projects and were designed to contribute a steady dividend to the YieldCos' investors, including SUNE.  On July 23, 2014, SUNE completed the

initial public offering ("**IPO**") of TERP.   SUNE retained a majority equity stake in TERP immediately following the IPO[6] and contributed completed energy projects in developed countries (*e.g.*, North America, the United Kingdom and Chile) to TERP.   On August 5, 2015, SUNE completed the IPO of GLBL.   SUNE retained an approximately 33% equity stake in GLBL immediately following the IPO and contributed completed energy projects in emerging markets (*e.g.*, Brazil, China and India) to GLBL.

## I.    PROCEDURAL HISTORY

17.    Beginning on April 21, 2016, the Debtors filed with the Court voluntary petitions for relief under chapter 11 of the Bankruptcy Code.   The Debtors' chapter 11 cases are being jointly administered for procedural purposes.   The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.   As of the date hereof, neither a trustee nor an examiner has been appointed in these chapter 11 cases.

18.    On April 21, 2016, the Debtors filed a motion, pursuant to sections 105(a) and 362(d)(1) of the Bankruptcy Code, Rule 4001 of the Bankruptcy Rules, and Rule 4001-1 of the Local Bankruptcy Rules for the U.S. Bankruptcy Court for the Southern District of New York, seeking entry of an order modifying the automatic stay, to the extent it applies, to permit certain insurers to reimburse certain defense costs in accordance with the Debtors' D&O Policies.  [ECF Nos. 32, 33].

19.    On May 20, 2016, the Court granted the Debtors' motion, permitting reimbursement from the D&O Policies with cap amounts of $8 million and $12 million (for SUNE and the YieldCos, respectively), which could be increased by written agreement among

---

[6] SUNE's equity interest in TERP has reduced over time—from approximately 64% immediately following the IPO, to approximately 43% in November 2015 and approximately 35% as of the Petition Date.

the Debtors, the Creditors' Committee, the Tranche B Lenders and Steering Committee and the DIP Agent.  [ECF Nos. 367, 368].  If those parties fail to agree on an increase, the Debtors may move for an expedited hearing.  The Court's orders specifically reserved, among other things, the right of parties to assert that the Debtors have a property interest in the D&O Policies.  [ECF Nos. 367, 368].

20.    On June 6, 2016, the Court entered an order clarifying that the automatic stay did not extend to certain pre-petition ERISA actions brought against non-debtor defendants, including directors and officers of the Debtors.  [ECF No. 474].  This order was entered without prejudice to the Creditors' Committee moving to extend the automatic stay to those non-debtor defendants in the ERISA actions or any other actions.

## II.    D&O ACTIONS

21.    Defendants have filed 30 actions against various current and former SUNE directors and officers, including:

- Actions alleging breaches of fiduciary duty.

  - *TerraForm Global, Inc. v. SunEdison, Inc.*, No. 12159 (Del. Ch.)
  - *Golden v. Chatila*, No. 16 Civ. 1423 (D. Md.)

- Actions alleging violations of ERISA.

  - *Jones v. MEMC Elec. Materials, Inc.*, No. 08 Civ. 1991 (E.D. Mo.)
  - *Usenko v. SunEdison, Inc.*, No. 16 Civ. 76 (E.D. Mo.)
  - *Dull v. SunEdison, Inc.*, No. 16 Civ. 173 (E.D. Mo.)
  - *Linton v. SunEdison, Inc.*, No. 16 Civ. 199 (E.D. Mo.)
  - *Wheeler v. SunEdison, Inc.*, No. 16 Civ. 226 (E.D. Mo.)

- Actions alleging securities fraud.

  - *Beltran v. TerraForm Global, Inc.*, No 15. Civ. 4981 (N.D. Cal.)
  - *Pyramid Holdings, Inc. v. TerraForm Global, Inc.*, No. 15 Civ. 5068 (N.D. Cal)
  - *Agrawal v. TerraForm Global, Inc.*, No. 15 Civ. 6322 (N.D. Cal.)
  - *Iron Workers v. TerraForm Global, Inc.*, No. 16 Civ. 2270 (N.D. Cal.)
  - *Badri v. TerraForm Global, Inc.*, No. 16 Civ. 2269 (N.D. Cal.)
  - *Patel v. TerraForm Global, Inc.*, No. 16 Civ. 2272 (N.D. Cal.)

- o *Aldridge v. TerraForm Global, Inc.*, C.A. No. 12196-VCL (Del. Ch.)
- o *Chamblee v. TerraForm Power, Inc.*, 16 Civ. 981 (D. Md.)
- o *Horowitz v. SunEdison, Inc.*, No. 15 Civ. 1769 (E.D. Mo.)
- o *Moodie v. SunEdison, Inc.*, No. 15 Civ. 1809 (E.D. Mo.)
- o *Kunz v. SunEdison, Inc.*, No. 16 Civ. 113 (E.D. Mo.)
- o *Cobalt Partners, LP v. SunEdison, Inc.*, No. 16 Civ. 2263 (N.D. Cal.)
- o *Okla. Firefighters Pension & Ret. Sys. v. SunEdison, Inc.*, No. 16 Civ. 2267 (N.D. Cal.)
- o *Glenview Capital Partners, LP v. SunEdison, Inc.*, No. 16 Civ. 2264 (N.D. Cal.)
- o *Omega Capital Inv., LP v. SunEdison, Inc.*, No. 16 Civ. 2268 (N.D. Cal.)
- o *Bloom v. SunEdison, Inc.*, No. 16 Civ. 7427 (S.D.N.Y.)
- o *Canyon Capital Advisors, LLC v. TerraForm Global, Inc.*, No. 16 Civ. 5185 (N.D. Cal.)
- o *Canyon Capital Advisors, LLC v. Alvarez*, No. 16 Civ. 5187 (N.D. Cal.)
- o *Kingdon Assocs. v. TerraForm Global, Inc.*, No. 16 Civ. 5477 (N.D. Cal.)
- o *Fraser v. TerraForm Global, Inc.*, No. 16 Civ. 2273 (N.D. Cal.)
- o *VMT II, LLC v. TerraForm Global, Inc.*, No. 16 Civ. 5531 (N.D. Cal.)
- o *Church v. Chatila*, No. 16 Civ. 628 (E.D. Mo.)
- o *Kearny Investors S.À R.L v. Goldman Sachs & Co.*, No. 16-CIV-01732 (Sup. Ct. Cal.)

22.    The current and former directors and officers named as defendants in the

D&O Actions include:

- Antonio Alvarez, Director, SUNE.

- Jeremy Avenier, Vice President, SUNE; formerly Chief Financial Officer, GLBL.

- Peter Blackmore, formerly Director, SUNE; currently Chairman, TERP; and currently Chairman, GLBL.

- Ahmad Chatila, formerly President, Chief Executive Officer and Director, SUNE; formerly Chairman and Director, TERP; and formerly Chairman and Director, GLBL.

- Rebecca Cranna, Chief Financial Officer, GLBL; Chief Financial Officer TERP; formerly Senior Vice President and CFO, Global Asset Management, SUNE.

- Clayton Daley, Jr., Director, SUNE.

- Sebastian Deschler, Senior Vice President and General Counsel, TERP; formerly Vice President and Head of Legal, EMEA, and Latin America, SUNE.

- Carlos Domenech Zornoza, formerly Executive Vice President, SUNE; formerly Chief Executive Officer and Director, TERP; formerly Chief Executive Officer and Director, GLBL.

- Rik Gadhia, Vice President, SUNE; Vice President, TERP; and Vice President, GLBL.

- Francisco Perez Gundin, formerly Executive Vice President and Chief Operating Officer, SUNE; formerly Chief Operating Officer, TERP.

- Alejandro Hernandez, Executive Vice President and Chief Financial Officer, TERP; Executive Vice President and Chief Financial Officer, GLBL.

- Emmanuel Hernandez, Executive Chairman, SUNE.

- Matthew Herzberg, Senior Vice President and Chief Human Resources Officer, SUNE.

- Sanjeev Kumar, formerly Chief Financial Officer, TERP.

- Georganne Proctor, Director, SUNE.

- David Ranhoff, Senior Vice President, SUNE.

- Manavendra Sial, formerly Senior Vice President and Deputy Chief Financial Officer, SUNE; formerly interim Chief Financial Officer, TERP; formerly interim Chief Financial Officer, GLBL.

- Steven Tesoriere, formerly Director, SUNE; formerly Director, TERP; and formerly Director, GLBL.

- Martin Truong, Senior Vice President, General Counsel and Secretary, SUNE; formerly Director, TERP; and formerly Director, GLBL.

- James Williams, Director, SUNE.

- Brian Wuebbels, formerly Executive Vice President and Chief Financial Officer, SUNE; formerly Chief Executive Officer, President and Director, TERP; and formerly Chief Executive Officer, President and Director, GLBL.

- Randy Zwirn, Director, SUNE.

23.    In general, the D&O Actions assert a variety of claims against the named directors and officers, all stemming from allegations that the directors and officers failed to exercise good faith oversight over SUNE's operations and, instead, abdicated their responsibility to ensure that SUNE maintained adequate internal controls and complied with all applicable legal, regulatory and financial reporting requirements.  More specifically, some of the plaintiffs in the D&O Actions allege that the directors and officers filed false and misleading statements, including with the U.S. Securities and Exchange Commission (the "**SEC**"), concerning SUNE's financial status, including statements that concealed SUNE's true financial condition and misled the public and SUNE's stakeholder constituencies about SUNE's liquidity, internal controls and capital constraints—causing, among other things, the artificial inflation of SUNE's stock price and leading investors to continue investing and customers to continue doing business with SUNE (all to their significant financial detriment).

24.    Other plaintiffs in the D&O Actions allege that certain directors and officers sold their stock in SUNE while knowing, but failing to disclose, that SUNE had falsely stated or otherwise misstated its financial position.

25.    Other allegations in the D&O Actions include claims that the directors and officers were responsible for wasteful and imprudent spending of corporate assets, without disclosing liquidity and financial problems, on an unsustainable acquisition plan, including, but not limited to, the acquisitions of First Wind Holdings, LLC for $2.4 billion (plus an additional $510 million in earn-out payments to the sellers); Latin American Power for $677 million; Atlantic Power Transmission, Inc. for $525 million; and, as proposed, Vivint Solar, Inc. ("**Vivint**") for $2.2 billion—which proposed transaction was never completed and has led to litigation against SUNE with alleged damages in excess of $1 billion.

26.    Other claims brought by the plaintiffs in the D&O Actions arise out of SUNE's alleged manipulation of the YieldCos, including by, *inter alia*, (a) replacing members of

the TERP Conflicts Committee and senior management in order to receive authorization for revising the Vivint purchase agreement that approved pre-payment of future project purchases from SUNE, and (b) being complicit in the manipulation of the GLBL Board to conceal SUNE's true financial condition.

27.     The plaintiffs in the D&O Actions also allege that SUNE failed to monitor its internal controls over financial reporting, leading to the delayed filing of its 2015 Form 10-K with the SEC due to the identification of "material weaknesses in its internal controls over financial reporting."

28.     SUNE is named as a defendant in 20 of the D&O Actions, and it is alleged to have committed securities fraud in 14 of those actions, including:  *Beltran*, *Pyramid Holdings*, *Agrawal*, *Badri*, *Patel*, *Horowitz*, *Moodie*, *Kunz*, *Cobalt Partners*, *Oklahoma Firefighters*, *Glenview Capital*, *Omega Capital*, *Bloom* and *Fraser*.

29.     The allegations in these complaints arise out of material misstatements and omissions relating to the GLBL IPO in August 2015 and SUNE's acquisitions and attempted acquisitions of other energy companies in and around the same time period and after, including those identified above (*see* ¶ 25, *supra*).

## III.    D&O POLICIES

30.     The primary D&O Policy, under which SUNE is the named insured, is with ACE American Insurance Company (Policy No. DON G23652389 009), in effect from July 15, 2015 through July 15, 2016 (the "**ACE Policy**").[7]  The ACE Policy provides for Sides A/B/C coverage[8] with a $10 million limit of liability.

---

[7] The Debtors purchased a six-year tail to extend the claims period under this policy, as well as under the excess layers in the tower (*see* ¶ 31, *infra*), until July 15, 2022.

[8] "Side A" provides coverage to individual directors and officers when not indemnified by the named insured corporation or another covered entity.  *See, e.g.*, ACE Policy § I.A.  "Side B" provides coverage for the named insured corporation or another covered entity when it indemnifies directors and officers (*i.e.*, corporate

31.     Fifteen other D&O Policies, each also effective from July 15, 2015 through July 15, 2016, are excess to the ACE Policy (also providing Sides A/B/C coverage) in the following order and amounts:

- National Union Fire Insurance Company of Pittsburgh, Pa. (Policy No. 01-565-30-35), $10 million;

- Beazley Insurance Company, Inc. (Policy No. V122A7150501), $10 million;

- Freedom Specialty Insurance Company (Policy No. XMF1500236), $10 million;

- Starr Indemnity & Liability Company (Policy No. SISIXFL21226515), $10 million;

- National Union Fire Insurance Company of Pittsburgh, Pa. (Policy No. 01-565-37-56), $10 million;

- Old Republic Insurance Company (Policy No. CUG 37717), $10 million;

- National Union Fire Insurance Company of Pittsburgh, Pa. (Policy No. 01-565-38-29), $10 million;

- Beazley Insurance Company, Inc. (Policy No. V133E2150401), $5 million;

- Everest National Insurance Company (Policy No. SC5DO00179-151), $10 million;

- Endurance American Insurance Company (Policy No. DOX10007451600), $5 million;

- QBE Insurance Corporation (Policy No. QPL0133085), $10 million;

- Axis Insurance Company (Policy No. MCN788613/01/2015), $10 million;

- Liberty Insurance Underwriters Inc. (Policy No. DOCHAA6FKR001), $10 million;

---

reimbursement).  *See, e.g.*, ACE Policy § I.B.  "Side C" provides coverage to the named insured corporation or another covered entity for certain claims brought against it.  *See, e.g.*, ACE Policy § I.C.

- Endurance American Insurance Company (Policy No. DOX10007452000), $10 million; and

- XL Specialty Insurance Company (Policy No. ELU140099-15), $10 million.

32.     Upon information and belief, each of the defendants in the D&O Actions is an insured under the D&O Policies. The D&O Policies, in the aggregate, provide for $150 million in coverage. They cover, among other things, judgments, settlements and defense costs incurred in connection with certain claims brought against SUNE, its subsidiaries (including, but not limited to, the YieldCos) or its or their directors or officers. *See, e.g.*, ACE Policy § II.I. These policies provide for aggregate liability, and, subject to the specific terms and conditions contained therein, proceeds are paid out as claims are made against the policies (*i.e.*, on a first-billed, first-paid basis) following exhaustion of the applicable retention (*i.e.*, deductible)—here, $2.5 million (which amount, upon information and belief, has already been expended).

33.     In addition, there are a number of other liability insurance policies under which SUNE is the named insured that provide excess Side A-only coverage, effective from July 15, 2015 through July 16, 2016 (collectively, the "**Side A-Only Policies**").[9] The Creditors' Committee is not currently seeking any relief in this adversary proceeding with respect to the Side A-Only Policies,[10] although the Creditors' Committee reserves the right to seek relief with respect to the Side A-Only Policies in the future.

## IV.    DEBTORS' INDEMNIFICATION OBLIGATIONS

34.     SUNE has indemnification obligations to certain of its current and former directors and officers, including many or all of those named in the D&O Actions, pursuant to its

---

[9] The claims period for these policies has also been extended to July 15, 2022.

[10] Accordingly, "D&O Policies," as used herein, does not include or refer to the Side A-Only Policies.

Amended and Restated Certificate of Incorporation (the "**Certificate**").  The Certificate provides

for broad indemnification of SUNE's current and former directors, officers and employees.

35.     Specifically, Article SIXTH of the Certificate provides that SUNE

shall indemnify any person who was or is a party or is threatened to be made a
party to any threatened, pending or completed action, suit or proceeding, whether
civil, criminal, administrative or investigative (other than an action by or in the
right of the Corporation) by reason of the fact that he is or was a director, officer,
employee or agent of the Corporation, or is or was serving at the request of the
Corporation as a director, officer, employee or agent of another corporation,
partnership, joint venture, trust or other enterprise, to the full extent authorized or
permitted by law, as now or hereafter in effect, against expenses (including
attorneys' fees), judgments, fines and amounts paid in settlement actually and
reasonably incurred by him in connection with such action, suit or proceeding.
The Corporation shall indemnify any person who was or is a party or is threatened
to be made a party to any threatened, pending or completed action or suit by or in
the right of the Corporation to procure a judgment in its favor by reason of the
fact that he is or was a director, officer, employee or agent of the Corporation, or
is or was serving at the request of the Corporation as a director, officer, employee
or agent of another corporation, partnership, joint venture, trust or other
enterprise, to the full extent authorized or permitted by law, as now or hereafter in
effect, against expenses (including attorneys' fees) actually and reasonably
incurred by him in connection with the defense or settlement of such action or
suit.

36.     These obligations cover defense and settlement costs, judgments and other

expenses associated with claims arising out of an act or omission committed in good faith while

acting as a director, officer or employee.   In addition, the Company has indemnification

obligations to certain of its current and former directors and officers, including several of those

named in the D&O Actions, pursuant to, among other things, employment, severance and other

contractual undertakings and agreements.

## V.     **DEBTORS HAVE A PROPERTY INTEREST IN D&O POLICIES**

37.     An insurance policy issued to a debtor is "property of the estate" within the

meaning of section 541 of the Bankruptcy Code.  *See* 11 U.S.C. § 541(a); *see also In re MF*

*Glob. Holdings Ltd.*, 469 B.R. 177, 190 (Bankr. S.D.N.Y. 2012) ("[I]t is well-settled that a

debtor's liability insurance is considered property of the estate.").

38.    Further, where a directors and officers' liability insurance policy provides coverage to both individual insureds and debtors, courts have held that the debtors have a property interest in the policies "if depletion of the proceeds would have an adverse effect on the estate to the extent the policy actually protects the estate's other assets from diminution." *MF Glob.*, 469 B.R. at 191; *see also In re Focus Capital, Inc.*, 504 B.R. 296, 305 (Bankr. D.N.H. 2014) (similar), *aff'd sub nom.*, *Straccia v. Menard*, 2014 WL 4364904 (D.N.H. Sept. 2, 2014). Here, depletion of the value of the D&O Policies would adversely affect the Debtors' estates because such policies, subject to their terms and conditions, may be paid out on a first-billed, first-paid basis, with any payments or reimbursements to the directors and officers depleting the total value available to the Debtors under the policies.

39.    Courts analyze the terms of the policies and consider the facts and circumstances of each case when deciding whether debtors have a property interest in the policies.  The presence, as here, of Side C coverage weighs in favor of finding such a property interest.  *See In re Allied Digital Techs., Corp.*, 306 B.R. 505, 511 (Bankr. D. Del. 2004) ("When a liability insurance policy provides direct coverage to the debtor as well as the directors and officers, the general rule is that since the insurance proceeds may be payable to the debtor they are property of the debtor's estate."); *see also In re Downey Fin. Corp.*, 428 B.R. 595, 603 (Bankr. D. Del. 2010) (same).  Similarly, courts are concerned with whether claims have already been asserted against the debtor.  *Cf. In re First Cent. Fin. Corp.*, 238 B.R. 9, 17-18 (Bankr. E.D.N.Y. 1999) (holding that debtor did not have a property interest in policy, in part, because no securities claims had been filed to trigger Side C coverage).

40.    Here, SUNE's Side C coverage is triggered because securities fraud claims have already been asserted against SUNE (*see* ¶ 28, *supra*).  Thus, the Debtors have a property interest in the policies.  *See Allied Digital*, 306 B.R. at 511 ("A debtor's interest in the proceeds requires protection from depletion and overrides the interest of the directors and officers.");

*Focus*, 504 B.R. at 306; *In re Arter & Hadden, LLP*, 335 B.R. 666, 672-73 (Bankr. N.D. Ohio 2005); *see also* 1-15 Collier on Bankruptcy ¶ 15.03 (16th ed. 2016) (acknowledging that such a finding "give[s] adequate breadth to the concept of property of the estate").

41.    Additionally, courts have found that even where a debtor's own liability exposure was not covered by a directors' and officers' liability insurance policy, but where the debtor is entitled to proceeds of that policy if it had been required to indemnify directors and officers directly (*i.e.*, Side B coverage), then such "an indemnification interest in proceeds is sufficient to bring those proceeds into the estate." *In re Sacred Heart Hosp.*, 182 B.R. 413, 420 (Bankr. E.D. Pa. 1995); *see also Kirschenbaum v. Federal Ins. Co. (In re EMS Fin. Servs., LLC)*, 2013 Bankr. LEXIS 139, at *19 (Bankr. E.D.N.Y. Jan. 4, 2013) (same); *City Ins. Co. v. Mego Int'l, Inc. (In re Mego Int'l, Inc.)*, 28 B.R. 324, 326 (Bankr. S.D.N.Y. 1983) (same).

## VI.    BY DRAINING D&O POLICIES, CONTINUATION OF D&O ACTIONS WILL BE DETRIMENTAL TO DEBTORS' ESTATES

42.    If the D&O Actions continue, and the automatic stay is not enforced against them, the Debtors' estates will be harmed via the depletion, and eventual exhaustion, of a significant property interest of the Debtors—the D&O Policies.

43.    Specifically, depletion of the value of the D&O Policies will have an adverse effect on the estates because the estates have a significant interest in such policies—by virtue of claims that the Creditors' Committee intends to bring against SUNE's current and former directors and officers, with any recovery therein inuring to the benefit of all creditors. With dozens of other cases against these directors and officers to defend against, the value of the D&O Policies will be quickly exhausted in the absence of the relief requested herein, to the direct financial detriment of the Debtors' estates.  Because the claims largely, if not entirely, arise out of the same operative facts, it is wasteful for the D&O Actions to proceed at the same time. *See, e.g.*, *Circle K Corp. v. Marks (In re Circle K Corp.)*, 121 B.R. 257, 261 (Bankr. D.

Ariz. 1990) ("[C]ontinued prosecution of the District Court security litigation affects debtor's property interests in a valuable estate asset [directors and officers liability insurance policy proceeds] in violation of the automatic stay.").

44.     Instead, the Court should enforce the automatic stay against the D&O Actions and allow the Creditors' Committee, on behalf of the Debtors' estates, to proceed against the directors and officers and attempt to recover from the D&O Policies, in which the Debtors have a property interest. *See, e.g.*, *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1001–02 (4th Cir. 1986) ("[A]ctions 'related to' the bankruptcy proceedings against the insurer or against officers or employees of the debtor who may be entitled to indemnification under such policy or who qualify as additional insureds under the policy are to be stayed under section 362(a)(3).").[11] Allowing that to occur has the obvious benefit of potentially providing substantially more money for distribution.

45.     Denying the relief sought herein would have the contrary effect:  allowing such property to leave the Debtors' estates other than via distribution, and without any benefit, to the Debtors' estates and creditors.  Thus, allowing the plaintiffs in the D&O Actions to obtain value from the D&O Policies in the event of a settlement or judgment will hurt the estates—

---

[11] In addition, to the extent there is an "identity of interest" between SUNE and the directors and officers named in the D&O Actions, such that SUNE "is the true, real party in interest, and a judgment against the [directors and officers] will, in effect, be a judgment or a finding against" SUNE (such as, for example, in the securities fraud actions in which SUNE is also named as a defendant (*see* ¶ 21, *supra*)), a sufficient basis exists to enforce the litigation stay against the D&O Actions under section 362(a)(1) of the Bankruptcy Code. *In re Bidermann Indus. U.S.A., Inc.*, 200 B.R. 779, 783-84 (Bankr. S.D.N.Y. 1996) (Bernstein, J.) (citing *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986)).  Alternatively, as indicated below (*see* ¶¶ 52-60, *infra*), the Court can stay the actions under section 105 of the Bankruptcy Code.  *See Bidermann*, 200 B.R. at 783; *see also, e.g.*, *Drennen v. Certain Underwriters at Lloyd's of London (In re Residential Capital, LLC)*, 2016 WL 6155925, at *11 (Bankr. S.D.N.Y. Oct. 21, 2016) (in determining whether to stay action against non-debtor under section 105, court should consider, "among other relevant factors, whether the suits would (i) threaten the debtor's insurance coverage, (ii) increase the debtor's indemnification liability, (iii) result in inconsistent judgments, (iv) expose the debtor to risks of collateral estoppel or *res judicata*, and (v) burden and distract the debtor's management by diverting its manpower from reorganization to defending litigation").

namely, by depleting and, in turn, exhausting the value of the D&O Policies, in which the

Debtors have a property interest, before the estates and creditors obtain any benefit therefrom.[12]

46.    In addition, allowing the D&O Actions to proceed (and, in turn, the D&O

Policies to be depleted or exhausted) will only increase the total claims pool in these chapter 11

cases (and, thus, decrease recoveries for, among others, the Debtors' unsecured creditors):  given

the unavailability of insurance coverage (post-exhaustion of the D&O Policies) for SUNE's own

liability in the D&O Actions and to satisfy the Debtors' continuing indemnification obligations

to the directors and officers named in those actions, the attendant cost will be borne entirely by

the Debtors' estates and creditors.

## FIRST CLAIM FOR RELIEF

### (Declaratory Judgment)

47.    The Creditors' Committee repeats and realleges the allegations contained

in Paragraphs 1-46 of this Adversary Complaint as if fully set forth herein.

48.    For the reasons discussed above, the Creditors' Committee seeks an order

and judgment declaring that the Debtors have a property interest in the D&O Policies.

49.    Once so determined, and as described below, the Creditors' Committee will

seek to enforce the automatic stay to prevent depletion of this property interest.

50.    There is a substantial and continuing controversy between the Creditors'

Committee and Defendants, given that Defendants' continued prosecution of the D&O Actions

threatens to deplete, and quickly exhaust, the D&O Policies in which the Debtors have a property

interest.  A declaratory judgment that the Debtors have a property interest in the D&O Policies,

---

[12] Importantly, the directors and officers named as defendants in the Creditors' Committee's lawsuit also have a property interest in the D&O Policies and, thus, would still be entitled to use of the D&O Policies' proceeds to defend against the Creditors' Committee's claims.  *See In re CyberMedica, Inc.*, 280 B.R. 12, 18 (Bankr. D. Mass. 2002).  In order to preserve the value of the D&O Policies, however, the Court should continue to impose the $8 million and $12 million Cap Amounts (*see* ¶ 19, *supra*), with the same consultation and reservation of rights under the Court's prior orders.  [ECF Nos. 367, 368].

coupled with enforcement of the automatic stay with respect to those policies and against the D&O Actions in their entirety (as sought in the Creditors' Committee's Second Claim for Relief), would preserve this important property interest for the benefit of the Debtors' estates and creditors.

51.     As noted above (*see* ¶ 3 n.3, *supra*), the Creditors' Committee is seeking standing to commence and prosecute litigation imminently against various current and former SUNE directors and officers.  Because these individuals are unlikely to have assets sufficient to satisfy a judgment against them (given potential liability in the hundreds of millions of dollars, if not more), the D&O Policies are the principal source of any recovery for the estates for such causes of action.  A declaratory judgment that the Debtors have a property interest in the D&O Policies is thus critical, including to the Debtors' unsecured creditors.

## SECOND CLAIM FOR RELIEF

### (Enforcement of Automatic Stay under section 362 or, in the alternative, section 105 of Bankruptcy Code)

52.     The Creditors' Committee repeats and realleges the allegations contained in Paragraphs 1-51 of this Adversary Complaint as if fully set forth herein.

53.     As a result of the commencement of the Debtors' chapter 11 cases, and pursuant to section 362(a) of the Bankruptcy Code, the automatic stay enjoins all entities from "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."  11 U.S.C. § 362(a)(3).

54.     The automatic stay serves a number of purposes, including "protecting the assets of the estate."  *In re Zarnel*, 619 F.3d 156, 171 (2d Cir. 2010) (quoting *MBNA Am. Bank, N.A. v. Hill*, 436 F.3d 104, 109 (2d Cir. 2006)).  It bars any action which "would inevitably have an adverse impact on the property of the bankruptcy estate."  *Official Comm. of Unsecured Creditors v. PSS S.S. Co. (In re Prudential Lines Inc.)*, 119 B.R. 430, 432 (S.D.N.Y. 1990)

(quoting *In re 48th Street Steakhouse, Inc.*, 835 F.2d 427, 431 (2d Cir. 1987)), *aff'd*, 928 F.2d 565 (2d Cir. 1991).

55.     "The protections of the automatic stay inure to the benefit of both the debtor and creditors.  'One of the principal purposes of the automatic stay is to preserve the property of the debtor's estate for the benefit of all the creditors.'"  *In re Taub*, 427 B.R. 208, 220–21 (Bankr. E.D.N.Y. 2010) (quoting *Prudential Lines*, 928 F.2d at 573), *aff'd*, 2011 WL 1322390 (E.D.N.Y. Mar. 31, 2011).  The automatic stay "protects creditors by 'prevent[ing] dissipation of the debtor's assets before orderly distribution to creditors can be effectuated.'"  *In re Salander*, 450 B.R. 37, 45 (Bankr. S.D.N.Y. 2011) (quoting *Penn Terra Ltd. v. Dep't of Envtl. Res.*, 733 F.2d 267, 271 (3d Cir. 1984)); *see also In re Lehman Bros. Holdings Inc.*, 433 B.R. 101, 112 (Bankr. S.D.N.Y. 2010) ("Nothing is more basic to bankruptcy law than the automatic stay and nothing is more important to fair case administration than enforcing stay violations. . . . This Court has the power to protect a debtor's estate, and thereby ensure the equitable treatment of creditors, by enforcing the automatic stay."), *aff'd*, 445 B.R. 130 (S.D.N.Y. 2011).

56.     The protections of the automatic stay extend to all property of a debtor's estate.  Section 541 of the Bankruptcy Code defines "property of the estate" to include "all legal or equitable interests of the debtor in property as of the commencement of the case."  11 U.S.C. § 541(a)(1); *see also Banner v. Bagen (In re Bagen)*, 186 B.R. 824, 830 (Bankr. S.D.N.Y. 1995) ("By including all legal interests without exception, Congress indicated its intention to include all legally recognizable interests although they may be contingent and not subject to possession until some future time."), *aff'd*, 201 B.R. 642 (S.D.N.Y. 1996).

57.     The automatic stay applies to litigation against non-debtors where the claims "will have an immediate adverse economic consequence for the debtor's estate."  *Queenie, Ltd. v. Nygard Int'l*, 321 F.3d 282, 287 (2d Cir. 2003).

58.    The Debtors have a property interest in the D&O Policies under well-settled law—including, without limitation, because those Policies also provide coverage to the Debtors, both for their own liability, given that SUNE itself has been sued for securities fraud (*i.e.*, Side C coverage), and to provide reimbursement for SUNE's indemnification obligations to the named current and former directors and officers (*i.e.*, Side B coverage).

59.    Continued litigation of the D&O Actions will deplete—and, soon, entirely exhaust—the value of the D&O Policies, harming the Debtors' estates.

60.    Accordingly, the Court should enforce the automatic stay pursuant to section 362(a) (or, in the alternative, section 105(a)) and prevent the continued litigation of the D&O Actions. *A.H. Robins Co.*, 788 F.2d at 1001–02 ("[A]ctions 'related to' the bankruptcy proceedings against the insurer or against officers or employees of the debtor who may be entitled to indemnification under such policy or who qualify as additional insureds under the policy are to be stayed under section 362(a)(3).").

WHEREFORE, the Creditors' Committee demands judgment against Defendants and requests the following relief:

A.    Entering a declaratory judgment that the Debtors have a property interest in the D&O Policies;

B.    Entering an order enforcing the automatic stay under section 362 of the Bankruptcy Code with respect to the D&O Policies and against the D&O Actions (pursuant to sections 362(a) and/or 105(a) of the Bankruptcy Code) until the effective date of a restructuring plan or further order of the Court; and

C.    Granting the Creditors' Committee such other and further relief as the Court deems just and proper under the circumstances.

Dated: November 2, 2016
       New York, New York

/s/ Matthew S. Barr

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Matthew S. Barr
David J. Lender
Theodore E. Tsekerides
Joshua S. Amsel

*Counsel to Official Committee of Unsecured Creditors*