Laurence May, Esq.
Peter Reiser, Esq.
Eric Aschkenasy, Esq.
EISEMAN LEVINE LEHRHAUPT &
KAKOYIANNIS, P.C.
805 Third Avenue, 10th Floor
New York, New York 10022
*Attorneys for the Non-Class Defendants*

Dennis J. Herman, Esq.
David W. Hall, Esq.
ROBBINS GELLER RUDMAN & DOWD LLP
Post Montgomery Center
One Montgomery Street Suite 1800
San Francisco, CA. 94104
*Attorneys for the Non-Class Defendants*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| SUNEDISON INC., *et al.*, | : | Case No. 16-10992 (SMB) |
| | : | (Jointly Administered) |
| | : | |
| Debtors. | : | |
| | : | |
| | : | |
| OFFICIAL COMMITTEE OF UNSECURED | : | |
| CREDITORS, on behalf of the estates of the | : | |
| Debtors, | : | |
| | : | Adversary Proceeding |
| Plaintiff, | : | No. 16-01257 |
| | : | |
| v. | : | |
| JUAN M. RODRIGUES BELTRAN, PYRAMID | : | |
| HOLDINGS, INC., ABHISHEK AGRAWAL, | : | |
| IRON WORKERS MID-SOUTH PENSION FUND | : | |
| ANTON S. BADRI, MITESH PATEL, COBALT | : | |
| PARTNERS, LP, COBALT PARTNERS II, LP | : | |
| COBALT OFFSHORE MASTER FUND, LP, | : | |
| COBALT KC PARTNERS, LP, OKLAHOMA | : | |
| FIREFIGHTERS SYSTEM, GLENVIEW | : | |
| CAPITAL PARTNERS, L.P., GLENVIEW | : | |
| INSTITUTIONAL PARTNERS, L.P., GLENVIEW | : | |
| CAPITAL MASTER FUND, LTD., GLENVIEW | : | |

CAPITAL OPPORTUNITY FUND, L.P.,                              :
GLENVIEW OFFSHORE OPPORTUNITY                                :
MASTER FUND LTD., OMEGAL CAPITAL                             :
INVESTORS, L.P., OMEGA CAPITAL                               :
PARTNERS L.P., OMEGA EQUITY                                  :
INVESTORS L.P., OMEGA OVERSEAS                               :
PARTNERS, LTD., DINA HOROWITZ,                               :
KENNETH J. MOODIE, ROBERT KUNZ,                              :
ALEXANDER Y.USENKO, JULIE DULL,                              :
ERIC O'DAY, ROBERT LINTON, RICHARD A.                       :
WHEELER, JAMES GOLDEN, JERRY JONES,                         :
CHARLES BLOOM, SHARON BURNSTEIN,                            :
TERRAFORM GLOBAL, INC., DARCY CHURCH                        :
JOHN CHAMBLEE, KINGDON ASSOCIATES,                          :
KINGDON CREDIT MASTER FUND, L.P.,                           :
KINGDON FAMILY PARTNERSHIP, L.P.,                           :
M. KINGDON OFFSHORE MASTER FUND, L.P.                       :
CANYON CAPITAL ADVISORS LLC                                 :
CANYON BALANCED MASTER FUND,LTD.,                           :
CANYON CAQITAL ARBITRAGE MASTER                             :
FUND, LTD., CANON-GRF MASTER FUND II,                       :
 L.P., CANYON VALUE REALIZATION FUND                        :
L.P., CANYON VALUE REALIZATION MASTER                       :
FUND, L.P., PERMAL CANYON IO LTD.,                          :
VMT II, LLC, SIMON FRASER, JASON                            :
ALDRIDGE, KEARNY INVESTORS S.A R.L,                         :
POWELL INVESTORS L.P. and POWELL                            :
INVESTORS L.P. and POWERLL INVESTORS II                     :
LIMITED PARTNERSHIP                                         :
_____                     :

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR
DECLARATION TO ENFORCE THE AUTOMATIC STAY AGAINST LITIGATION
INVOLVING CERTAIN CURRENT AND FORMER OFFICERS AND DIRECTORS OF
THE DEBTORS**

## TABLE OF CONTENTS

FACTS .................................................................................................................................3

    A. The Non-Class Litigations ........................................................................................3

    B. Procedural History .....................................................................................................6

    C.   The Adversary Complaint...........................................................................................7

    D.   The ACE Policy .........................................................................................................8

ARGUMENT ......................................................................................................................11

The Motion Should Be Denied Because: (1) The Debtors Do Not Have A
Property Interest In The Proceeds Of The D&O Policies; (2) The Automatic
Stay Does Not Apply; and (3) No Showing Has Been Made To Support
An Injunction Under Section 105 of The Bankruptcy Code...............................................11

    A.   The Debtors Do Not Have a Property Interest in the Proceeds of
        the D&O Policies .....................................................................................................11

    B.   The Automatic Stay Does Not Apply .....................................................................16

    C.   No Showing Has Been Made to Support an Injunction Under Section 105
        of the Bankruptcy Code ...........................................................................................17

CONCLUSION...................................................................................................................20

## TABLE OF AUTHORITIES

**Cases**

*Alert Holdings, Inc. v. Interstate Protective Servs., Inc.,*
   (*In re Alert Holdings, Inc.*), 148 B.R. 194 (Bankr. S.D.N.Y. 1992) ......................................... 17

*American Imaging Services v. Eagle-Picher Indus. (In re Eagle-Picher Indus., Inc.),*
   963 F.2d 855 (6th Cir.1992). ...................................................................................................... 18

*Cobalt Partners, L.P., et al. v. SunEdison Inc., et al.,* ...................................................................4

*GAF Corp. v. Johns-Manville Corp.(In re Johns-Manville Corp.),*
   26 B.R. 405 (Bankr. S.D.N.Y. 1983), aff'd, 40 B.R. 219 (S.D.N.Y. 1984) .............................. 17

*Glenview Capital Investors, L.P., et al. v. SunEdison Inc., et al.,* .............................................. 4, 5

*Goldin v. Primavera Familienstiftung (In re Granite Partners, L.P.),*
   194 B.R. 318 (Bankr. S.D.N.Y. 1996) ......................................................................... 12, 17, 19

*In re Adelphia Comm'n Corp.,*
   239 B.R. 49 (S.D.N.Y. 2003) ...................................................................................................... 12

*In re Adelphia Comm'n Corp.,*
   285 B.R. 580 (Bankr. S.D.N.Y. 2002) ........................................................................................ 14

*In re Alexander SRP Apartments, LLC,*
   2012 WL 1910088, at * 6 (Bankr. S.D. Ga. Apr. 20, 1012)........................................................19

*In re Allied Digital Technologies Corp.,*
   306 B.R. 505 (Bankr. Del. 2004)......................................................................................... 12, 13

*In re Alper Holdings USA,*
   07-12148 (Bankr S.D.N.Y. Sept. 10, 2008) ......................................................................... 15, 16

*In re Cybermedica, Inc.,*
   280 B.R. 12 (Bankr. D. Mass. 2002) .......................................................................................... 12

*In re Downey Financial Corp.,*
   428 B.R. 595 (Bankr. Del. 2010)........................................................................................ 12, 13

*In re Kalikow,*
   602 F.3d 96 (2nd Cir. 2010) ....................................................................................................... 19

*In re MF Global Holdings Ltd.,*
  469 B.R. 177 (Bankr. S.D.N.Y. 2012) ...................................................................................... 12

*In re MF Global Holdings Ltd.,*
  515 B.R. 193 (Bankr. S.D.N.Y. 2014) .............................................................................. 12, 13

*In re United Health Care Org.,*
  210 B.R. 228 (S.D.N.Y. 1997) ................................................................................................ 17

*In re Wedtech Corp.,*
  85 B.R. 285 (Bankr S.D.N.Y. 1988) ...................................................................................... 16

*In re SunEdison, Inc. Securities Litigation,*
  MDL No. 2742 (PKC). .............................................................................................................. 6

*Integrated Solutions, Inc v. Service Support Specialties, Inc.,*
  124 F.3d 487 (3d Cir BAP 1997) .......................................................................................... 14

*Kingdon Associates, et al. v. TerraForm Global, Inc., et al.* ........................................................ 5

*Ochs v. Lipson (In re First Central Financial Corp.)*
  238 B.R. 9 (Bankr. E.D.N.Y. 1999) .............................................................................. 12, 14, 18

*Oklahoma Firefighters Pension and Retirement System v. SunEdison Inc., et al.* ......................... 5

*Omega Capital Investors, L.P., et al. v. SunEdison Inc., et al* ....................................................... 5

*Sec. Investor Prot. Corp. v. Madoff,*
  490 B.R. 59 (S.D.N.Y.2013) .................................................................................................... 19

*Tucker Anthony Realty Corp. v. Schlesinger,*
  888 F.2d 969 (2d Cir.1989) .................................................................................................... 18

*VMT II, LLC v. TerraForm Global, Inc., et al.* ............................................................................... 5

This Memorandum of Law is submitted by Cobalt Partners, LP, Cobalt Partners II, LP, Cobalt Offshore Master Fund, LP, Cobalt KC Partners, LP, Oklahoma Firefighters Pension & Retirement System, Glenview Capital Partners, L.P., Glenview Institutional Partners, L.P., Glenview Capital Master Fund, Ltd., Glenview Capital Opportunity Fund, L.P., Glenview Offshore Opportunity Master Fund, Ltd., Omega Capital Investors, L.P., Omega Capital Partners, L.P., Omega Equity Investors, L.P., Omega Overseas Partners, Ltd., Kingdon Associates, Kingdon Credit Master Fund, L.P., Kingdon Family Partnership, L.P.. M. Kingdon Offshore Master Fund, L.P. and VMT II, L.L.C.[1] in opposition to the motion filed on November 2, 2016 [Dkt. No. 2 in Adv Pro 16-01257; (the "Motion")] by the Official Committee of Unsecured Creditors appointed in the above captioned chapter 11 cases (the "Committee") requesting the Court to declare that, by the Committee's count, thirty pending lawsuits against non-debtor third parties (the "D&O Actions") are subject to the Bankruptcy Code's automatic stay. The Committee asks that these suits now be stayed by order of this Court, even though many of the cases (including four of the six actions brought by the Non-Class Defendants) were pending when SunEdison, Inc. and certain of its affiliates (the "Debtors") filed their chapter 11 petitions on April 21 of this year, and have been proceeding since then without objection by the Debtors or the Committee.[2]

---

[1]  Each of these actions asserts non-fraud claims under the Securities Act of 1933 or state law. None of the cases are styled as class actions or seek class-wide relief. For ease of reference they are collectively referred to as the "Non-Class Defendants."

[2]  The Non-Class Defendants are plaintiffs in six suits which have been transferred along with several other cases by order of the Judicial Panel on Multi-District litigation to an MDL proceeding before Judge P. Kevin Castel of the Southern District of New York. The Non-Class Defendants' cases were commenced in California State Court and removed to the United States District Court for the Northern District of California. Motions to remand three of those cases (the actions brought by the Cobalt, Glenview and Omega groups of plaintiffs) were denied prior to transfer by the Northern District of California court, which *sua sponte* certified the ruling for interlocutory review to the United States Court of Appeals for the Ninth Circuit pursuant to 28 U.S.C. §1292(b). Those petitions remain pending.

Although the Non-Class Defendants are not actively seeking any relief against the Debtors because of the Debtors' bankruptcies, the Committee maintains that continuation of the actions will nevertheless "deplete" an estate asset, namely the Debtors' purported interests in sixteen directors and officers liability policies (the "D&O Policies"). The Debtors procured these policies expressly to provide their current and former officers and directors (the "D&Os") with the funds needed to defend and indemnify themselves should they be sued. The Committee argues that using these proceeds for their intended purpose violates the automatic stay. Notably, they do so without ever actually claiming that the proceeds of the D&O Policies are estate property; nor in fact does the Motion request that the Court declare these proceeds estate property. In other words, the Committee wants to stay numerous litigations because the litigations are causing the defendants in the litigations to use funds in which the estate has no interest. [3]

The Motion is without merit and should be denied. The justification for the Motion is that continuation of the D&O Actions will deplete estate property, but what is at issue is the use of the D&O Policy *proceeds* and the Debtors have no interest in these proceeds. While the Debtors have a nominal interest in the D&O Policies, that interest does not extend to the policies' proceeds and will in no way be affected should the D&O Actions continue. The Debtors are not parties to the D&O Actions and other estate assets will not otherwise be diminished by the D&Os use of the policies' proceeds. Under the pretext of a motion to declare

---

[3]    That the Motion is not about staying the D&O Actions but preventing the D&Os from using the policy proceeds is reflected in the admission in note 9 of the Motion. In the footnote, the Committee discloses that in addition to the D&O Policies, there are five "Side A" policies which only provide coverage to the D&Os, and so far as these policies are used to fund defense and other costs, the Committee has no objection to the D&O Actions continuing. ("The Creditors Committee is not seeking any relief in this adversary proceeding or through this motion with respect to the Side-A Only Policies").

2

the automatic stay applicable -- which it is not -- the Committee is asking the Court to rewrite contracts of insurance, weaponize the automatic stay to disadvantage third parties and are urging it to grant the Debtors property rights which did not exist pre-petition.

## FACTS

### A.    The Non-Class Litigations

The Non-Class Defendants are plaintiffs in six lawsuits all alleging strict liability claims for relief arising under federal securities laws.  Some actions also include claims under state securities laws and common law (e.g., breach of contract, negligent misrepresentation).  None of the cases are class-actions or allege fraud-based claims.  The cases all arise from one or more of the following offerings of newly-issued securities by SunEdison, Inc. or its wholly-owned subsidiary, Terraform Global, Inc. ("Global"), and are based on alleged misrepresentations or omissions contained in offering documents (and, with respect to the Global Class D claims, the contract governing the purchase) associated with the offerings: (i) the August 18, 2015 sale of SunEdison, Inc. Series A perpetual convertible preferred stock carrying a 6.75% dividend right (the "SUNE Preferred Offering"); (ii) the June 9, 2015, sale of Global Class D shares in a private contractual offering (the "Global Class D Offering"); (iii) the July 31, 2015 sale of Global unrestricted common stock in an initial public offering (the "Global IPO"); and (iv) the July 31, 2015 sale of Global 9.75% bonds (the "Global Bond Offering").  Although SunEdison, Inc. was named a defendant in four of the cases, those proceedings are stayed as against it pursuant to 11 U.S.C §362(a).[4]

---

[4]    The Non-Class Defendants have filed estimated proofs of claims which are subject to revision based on, *inter alia*, additional evidence, changes in methodology, and additional remedies.  The Cobalt Group's proofs of claim total $6,400,243; the Glenview Group's proofs of claim total $82,126,087; the Kingdon Group's proofs of claim

3

The defendants (which vary according to which offerings are at issue) are SunEdison, Inc., TerraForm Global, Inc., certain of their officers and directors, officers and directors of related entities, and various investment banks or other financial institutions that served as underwriters or placement agents for various securities offerings at issue in the complaint (including Goldman Sachs & Co., J.P. Morgan Securities LLC; Barclays Capital Inc.; Citigroup Global Markets Inc.; Morgan Stanley & Co., LLC; Merrill Lynch, Pierce, Fenner & Smith Incorporated; Deutsche Bank Securities Inc.; BTG Pactual US Capital LLC; Macquarie Capital (USA), Inc.; and MCS Capital Markets LLC). All were involved in the underwriting of the securities offerings at issue. In each of the actions, the Non-Class Defendants allege that the defendants were liable for certain false and misleading statements and omissions concerning the business and prospects of SunEdison, Inc. and its subsidiaries and affiliates, in violation of sections 11, 12(a)(2) and 15 of the Securities Act of 1933.

Cobalt Partners, LP, Cobalt Partners II, LP, Cobalt Offshore Master Fund, LP and Cobalt KC Partners, LP are plaintiffs in an action titled *Cobalt Partners, L.P., et al. v. SunEdison Inc., et al.,* originally filed in the California Superior Court, San Mateo County, Case No., CIV537954, on March 28, 2016 and asserting federal Securities Act claims based on the SunEdison Preferred Offering. The case was removed to the United States District Court, N.D. Cal., Case No. 16-CV-02263-WHA.

Glenview Capital Partners, L.P., Glenview Institutional Partners, L.P., Glenview Capital Master Fund, Ltd., Glenview Capital Opportunity Fund, L.P. and Glenview Capital Offshore Opportunity Master Fund, L.P. are plaintiffs in an action titled, *Glenview Capital Investors, L.P.,*

---

total $25,437,851; the Omega Group's proofs of claim total $78,614,135 the Oklahoma Firefighters proof of claim totals $316,522; and VMT II LLC's proof of claim totals $2,082,014.

*et. al. v. SunEdison Inc., et al.*, originally filed in the California Superior Court, San Mateo County, Case No. CIV537971, on March 29, 2016 and asserting claims under the SunEdison Preferred, Global Class D and Global Bond offerings. The case was removed to the United States District Court, N.D. Cal., Case No. 16-CV-02264-WHA.

Omega Capital, Investors, L.P., Omega Capital Partners, L.P., Omega Equity Investors, L.P. and Omega Overseas Partners, Ltd. are plaintiffs in a securities action titled, *Omega Capital Investors, L.P., et al. v. SunEdison Inc., et al.,* originally filed in the California Superior Court, San Mateo County, Case No. CIV537977, on March 30, 2016 and asserting claims under the SunEdison Preferred and Global Class D offerings. The case was removed to the United States District Court, N.D. Cal., Case No. 16-CV-02268-WHA.

Oklahoma Firefighters Pension and Retirement System is the plaintiff in a securities action titled, *Oklahoma Firefighters Pension and Retirement System v. SunEdison Inc., et al.,* originally filed in the California Superior Court, San Mateo County, Case No. CIV537965, on March 29, 2016 and asserting claims based on the Global IPO. The case was removed to the United States District Court, N.D. Cal., Case No. 16-CV-02267-BLF.

Kingdon Associates, Kingdon Credit Master Fund, L.P., Kingdon Family Partnership, L.P. and M. Kingdon Offshore Master Fund, L.P. are plaintiffs in a securities action titled, *Kingdon Associates, et al. v. TerraForm Global, Inc., et al.,* filed in the California Superior Court, San Mateo County, Case No. 16 CIV 00459, on July 14, 2016. On September 26, 2016, the case was removed to the United States District Court, N.D. Cal., Case No. 16-CV-05477-JSC.

VMT II, LLC is a plaintiff in a securities action titled, *VMT II, LLC v. TerraForm Global, Inc., et al.,* filed in the California Superior Court, San Mateo County, Case No.

5

16CIV01433, on September 16, 2016.  On September 28, 2016, the case was removed to the United States District Court, N.D. Cal., Case No. 16-CV-05531-DMR.

## B. Procedural History

Competing motions to remand the Cobalt, Glenview, Omega and Oklahoma cases to state court or transfer them to the Southern District of New York were filed after removal.  By order dated August 26, 2016, the District Court in which the Cobalt, Glenview and Omega cases were pending[5] (i) denied the motions to remand, (ii) granted the motions to transfer, (iii) certified interlocutory appeals of its denial of the remand motions to the Ninth Circuit, and (iv) stayed the cases pending appellate review.  On September 2, 2016, petitions for leave to appeal pursuant to 28 U.S.C. §1292(b) were timely filed with the Ninth Circuit Court of Appeals in all three cases. By order dated October 4, 2016, after the §1292(b) petitions filed by the Cobalt, Glenview and Omega plaintiffs were at issue (and before a pending motion to remand the Oklahoma action to state court was ruled upon), the JPML transferred the Cobalt, Glenview, Omega and Oklahoma cases to the Southern District of New York, where they were all centralized under *In re: SunEdison, Inc. Securities Litigation,* MDL No. 2742 (PKC).  On October, 13, 2016, the JPML issued a conditional transfer order (which became final on October [20], 2016) transferring the Kingdon and VMT II cases to the Southern District of New York, centralized under the *case In re: SunEdison, Inc. Securities Litigation*, MDL No. 2742 (PKC).  On November 17, 2016, the Ninth Circuit requested supplemental briefing regarding the effect of the JPML transfer order on the Cobalt, Glenview and Omega petitions for interlocutory review, which remain pending.

---

[5]    Oklahoma's case was pending before a different judge in the District, along with certain related class action cases.

## C.   The Adversary Complaint

The Committee commenced this adversary proceeding with a simultaneous filing of its Adversary Complaint and Motion. [Dkt. No.1 16-01257 (the "Adversary Complaint")]. The two documents are largely repetitive of each another. In fact the Motion asks, presumably on some interim basis, for much the same relief as does the Adversary Complaint on a more permanent basis.[6] The Adversary Complaint "demands judgment" that the Court enter a declaration that the "Debtors have a property interest in the D&O Policies" and that the Court enter an order "enforcing the automatic stay under section 362 of the Bankruptcy Code with respect to the D&O Policies and against the D&O Actions...." Adversary Complaint, p. 23. The Adversary Complaint is short on the specific D&O Policy interests that the Committee wants the Court to declare the Debtors have, but as best as the Non-Class Defendants can tell, the Committee is not asking the Court to declare that the Debtors have any interest in the D&O Policy proceeds, which is puzzling given that sole purpose of this Adversary Proceeding is to stop the D&Os from using the policy proceeds to defend themselves. If the Court is not being asked to address that issue, the Adversary Complaint and the Motion serve no purpose and should be summarily dismissed.

The Committee does not hide its reasons for wanting to stay the D&O Actions. It is asking that the Court to, so to speak, put its thumb on the scale, thereby insuring that the D&O Policy proceeds are dedicated solely to defend a proposed litigation that the Committee intends to bring against the D&Os and to fund a settlement or judgment in the action. "The Creditors'

---

[6]   Both the Motion and the Adversary Complaint ask the Court to declare that the Debtors have a property interest in the D&O Policies, (without articulating what that interest might be) and request an indeterminate stay of the D&O Actions, until "further Order of the Court." It suggests that the Committee wants the Court to order the ultimate relief sought in the Adversary Complaint on a motion, which makes the Motion appear to be one for summary judgment even though issue has not been joined and despite the Committee's failure to provide either: (i) a statement of material facts not in issue or (ii) any affidavits or other evidence in support of the Motion. Besides being without substantive merit, the Motion is procedurally defective. It seems to treat Part VII of the *Fed. R. Bankr. P.* as optional.

Committee, in a separate adversary proceeding, intends to assert many of the same claims ... against many if not all of the same current and former directors and officers." Adversary Complaint ¶3. "Continued prosecution of the D&O Actions ... potentially affect recoveries available to creditors of the estates." *Id.* ¶ 4.

Although the Committee is demanding that the Court adjudicate the Debtors' property rights in the D&O Policies, it is asking that it do so blindly, having failed to provide the Court with any of the policies, including the primary layer policy (the "ACE Policy") issued by the ACE American Insurance Company ("ACE").   The Adversary Complaint is limited to a perfunctory, and as will be explained below, misleading description of the coverages in the ACE Policy.[7]  The Committee's description of the ACE Policy is pretty much limited to representing that it "provides for Sides A/B/C coverage with a $10 million limit of liability." Adversary Complaint ¶ 25.  This description of a complex, approximately seventy-one page agreement (including endorsements), plainly does not provide the Court with any basis to declare that the Debtors have a "property interest" in the D&O Policies, much less a property right which warrants staying multiple state and federal lawsuits suits against non-debtors.[8]

### D. The ACE Policy

There are four insuring agreements in the ACE Policy, each referred to as a "Side" coverage.  Side A is the primary insuring agreement and it obligates ACE to "pay on behalf of

---

[7]  A copy of the ACE Policy is attached to the affidavit of Laurence May, sworn to on November 29, 2016 and submitted in opposition to the Motion.  The Non-Class Defendants do not have copies of the fifteen excess policies and assume that they are "follow form" policies which follow and incorporate the provisions of the ACE Policy. The material provisions of the ACE Policy are described *infra.*

[8]  According to the Adversary Complaint (the Non-Class Defendants have no way of knowing the accuracy of the statements since none of these policies have been provided), the "Side A-Only Policies" do not provide any rights of reimbursement to the Debtors nor do they provide any debtor entity coverage.

the Insured Persons all Loss for which the Insured Persons are not indemnified by the Company and which the Insured Persons shall become legally obligated to pay by reason of a Claim..."[9] Side B coverage obligates ACE to reimburse the Company (i.e. SunEdison, Inc.,) once it has indemnified an Insured Person for any "Loss" incurred by the Insured Person. Under Side C, ACE agreed to pay on behalf of the Company any Loss the Company becomes "legally obligated" to pay by reason of a Securities Claim. Finally, under Side D, coverage is provided to "Outside Identity Insured Persons," generally meaning any officer, director or executive of the Debtors who is acting as an officer or director of another entity at the request of the Debtors and who is sued in his capacity as such.

The ACE Policy contains several "priority of payment" provisions that are highly material to the Motion, but which the Committee neglects to bring to the Court's attention. First, there is Section XV, entitled "Payment Priority," which provides that in the event the ACE Policy is not sufficient to pay all Losses, payment is first to be made on account of claims covered under Side A. Next, to the extent that any proceeds remain, and the Debtors have actually indemnified their officers and directors, Side B claims are to be paid. After Side D claims are paid, if policy proceeds remain can they be used to indemnify the Debtors for Securities Claims the Debtors are legally obligated to pay.

Section XXI of the ACE Policy, entitled "Bankruptcy", reaffirms the parties' intent that that Side A coverage retains a payment priority in the event the Company files for bankruptcy. The section states that the insurance provided by the ACE Policy "is intended as a matter of priority to protect and benefit the Insured Persons [i.e. the Debtors' current and former officers

---

[9]    Insured Person(s) are the Debtors' officers and directors. *See* Ace Policy §II F. Loss is defined in Endorsement 14(4) and excludes any amounts for which an Insured (which defined term includes the Debtors but solely with respect to a Securities Claim) is "not financially liable" to pay.

and directors] such that, in the event of bankruptcy of the Company, the Insurer shall first pay Loss covered under Section 1, Insuring Agreement A, Directors' and Officers' Liability, prior to paying Loss under any other Insuring Agreement." As further protection for the Debtors' officers and directors, and consistent with the ACE Policy's intention that they have a priority interest in the policy proceeds as well as ready access to those proceeds, the section provides that should the "Named Insured" (also SunEdison, Inc.) file for bankruptcy, it agrees in advance to waive the automatic stay to the extent "such Stay may apply to the proceeds of this Policy."

Other provisions in the ACE Policy serve to limit the Debtors' interests in the proceeds and to subordinate their rights to the rights of the directors and officers. In Endorsement 3, for example, SunEdison, Inc. is excused from its obligation to indemnify its officers and directors if it is "neither permitted nor required to grant such indemnification … because of becoming a debtor-in-possession." This waiver effectively does away with Side B coverage in the event of a bankruptcy. If the Debtors do not or cannot provide post-petition indemnification to their officers and directors reimbursement is moot.

Finally, Endorsement 12 supplements the payment priority provisions of Section XV to provide that in the event of the Company's bankruptcy, ACE is not relieved of its obligation "unless prohibited by law ... to prioritize payment of covered Loss under the Policy pursuant to Section XV."

10

## ARGUMENT

**THE MOTION SHOULD BE DENIED BECAUSE: (1) THE DEBTORS DO
NOT HAVE A PROPERTY INTEREST IN THE PROCEEDS OF THE D&O
POLICIES; (2) THE AUTOMATIC STAY DOES NOT APPLY; AND (3) NO
SHOWING HAS BEEN MADE TO SUPPORT AN INJUNCTION UNDER
SECTION 105 OF THE BANKRUPTCY CODE**

### A. The Debtors Do Not Have a Property Interest in the Proceeds of the D&O Policies

In its Motion, the Committee contends that the Debtors have a property right in the D&O Policies and asks for a declaration to that effect. Its request for an injunction, however, is directed not at the Policies themselves, but is instead intended to prevent the D&O Policies' *__proceeds__* from being used by the directors and officers to defend and indemnify themselves from any judgment that might be entered in the D&O Actions. Nothing in the Motion is designed to protect the Debtors' rights in the policies, which are nominal if not non-existent. Because the Debtors do not have an interest in the D&O Policies proceeds, they are not entitled to enjoin their use and staying the D&O Actions would be pointless. Moreover, the requested stay of the D&O Actions is incidental to the true purpose of the Motion, which is concerned only with interdicting the use of the D&O Policies' proceeds. As such, the Motion is actually an acknowledgement by the Committee that a direct challenge to the right of the directors and officers to the use of the proceeds would fail. Indeed the Committee has already agreed to an order giving the directors and officers access to up to $12 million of the D&O Policies' proceeds. Only by now attempting to stay the D&O Actions – including claims against non-debtor and unrelated entities that are well outside the jurisdiction of this Court – can the Committee seek to preserve the proceeds of the D&O policies, which are indisputably *not* an asset of the Debtors' estate.

11

We submit that it would be manifest error to grant the Committee's Motion. As will be demonstrated below, the Debtors do not have a property interest in the proceeds of the D&O Policies, indeed their interests in the D&O Policies themselves, as distinguished from the proceeds of those policies, are so nominal and attenuated as to be without effect. Moreover, as this Court has previously held on similar facts, the automatic stay does not apply. *See Goldin v. Primavera Familienstiftung (In re Granite Partners, L.P.),* 194 B.R. 318 (Bankr. S.D.N.Y. 1996) [hereafter *In re Granite Partners*]. The Committee has totally failed, in fact it has not even made the effort to show, that it is entitled to an injunction under §105 of the Bankruptcy Code.

While cases hold that insurance policies are property of a bankruptcy estate, *see, e.g., In re MF Global Holdings Ltd.*, 469 B.R. 177, 190 (Bankr. S.D.N.Y. 2012) [well settled that a debtor's liability insurance is considered property of its estate], the same is not the case when it comes to the proceeds of a directors and officers liability policy. Rather, most cases hold that the debtor has no interest in the policy proceeds when there is a payment priority scheme in favor of the officers and directors or there is little likelihood that the debtor will ever have a right of reimbursement or indemnification under the policies. *See, e.g., In re Adelphia Comm'n Corp.* 239 B.R. 49 (S.D.N.Y. 2003); *In re MF Global Holdings Ltd.,* 515 B.R. 193 (Bankr. S.D.N.Y. 2014); *In re Downey Financial Corp.,* 428 B.R. 595, 603 (Bankr. Del. 2010); *In re Allied Digital Technologies Corp.,* 306 B.R. 505, 509 (Bankr. Del. 2004); *In re Cybermedica, Inc.*, 280 B.R. 12,16 (Bankr. D. Mass. 2002); *Ochs v. Lipson (In re First Central Financial Corp.),* 238 B.R. 9 (Bankr. E.D.N.Y. 1999). Thus, when a directors and officers liability policy provides for coverage of both directors and officers and the debtor, whether the debtor has an interest in the policies' proceeds is a function of the facts and circumstances of the case and the terms of the

12

policy.  No facts present here, much less any facts pointed to by the Committee, support a finding that the Debtors have an interest in the proceeds of the D&O Policies' proceeds.

In *In re MF Global Holdings Ltd,* 515 B.R. 193, for example, Judge Glenn held that the proceeds of the directors and officers liability policies were not estate property.  The Court so found because it was unlikely the debtor would be indemnifying its officers and directors and therefore would not be entitled to reimbursement from the insurer.  The decision noted that the debtor had "yet to provide any indemnification coverage" to its officers and directors and that the Plan Administrator took the position that any indemnification claims should be disallowed. *Id.* at 203.

The Court also found that the debtor's right to indemnification under the policies was subject to a priority of payment provision in favor of the directors and officers.  The Court held that these provisions are uniformly enforced. *Id.* at 203-04.  In light of the payment priority provision and the lack of any evidence that the debtor would have to pay any monies to satisfy securities claims, the Court held that the proceeds of the policies were not property of the debtor's estate.

In *In re Downey, supra,* the Court likewise held that proceeds of a directors and officers liability policy were not estate property.  In that case, eleven of the debtor's former officers and directors moved for an order declaring that the automatic stay does not "bar the use of proceeds of a liability insurance policy" for defense costs. *Id.* at 598.  Citing to *In re Allied Digital, supra,* the Court held that when a policy provides coverage to both directors/officers and the debtor, policy proceeds become estate property only "if depletion of the proceeds would have an adverse effect on the estate to the extent the policy actually protects the estate's other assets from diminution." *Id.* at 603.  In other words, if a debtor will actually have to use assets to pay a

13

claim covered by the insurance policy, it might, but not necessarily will, have an interest in the policy's proceeds. *Id.* at 604. *See also Ochs v. Lipson (In re First Central Financial Corp.)* 239 B.R. at 20 ["Further, we are unconvinced that potential indemnification demands would damage the estate. Although claims for indemnification…might lessen the overall percentage of a *pro rata* distribution to creditors, such distributive adjustment does not damage the estate."]

The *Downey* decision agreed with the Court in *Allied Digital,* that if the indemnification coverage provided to a debtor is unlikely to be used or is subject to a priority of payment provision, coverage under the policy would be "hypothetical, or speculative" and thus "the proceeds are not property of the bankruptcy estate." *Id.* at 605. The Court was of the opinion that if it were to hold "that the Policy proceeds are property of the estate, and thus, subject to the automatic stay, the trustee would have 'greater rights in the [policy proceeds] than the debtor had before filing the bankruptcy'" *quoting Integrated Solutions, Inc v. Service Support Specialties, Inc.* 124 F.3d 487, 492 (3d Cir BAP 1997).

> Prior to bankruptcy, there was no means by which the Debtor's interest in Coverages B(i) or B(ii) could become superior to, or even equal to, the Insureds' interest in Coverage A. Were the Court to hold that the Policy proceeds were property of the estate, however, there *would* be a means by which the trustee's in Coverages B(i) and B(ii) could become at least equal to the Insured's interest in Coverage A. *Id.* (emphasis in original).

In *In re Adelphia Communications Corp.*, *supra,* the Court held that the Debtor did not have a property interest in the proceeds of certain directors and officers policies. Quoting from the bankruptcy court decision which was the subject of the appeal, the Court found that there was no suggestion that "any of the Debtors [have] made any payments for which they would be entitled to indemnification coverage or that any such payments are now contemplated*." Id.* at 53 *quoting In re Adelphia Comm'n Corp.,* 285 B.R. 580, 592 (Bankr. S.D.N.Y. 2002). The Court

14

also found that the Debtors had not committed to making any payments which would trigger entity coverage. Under the circumstances, Judge Baer held that it would make no sense to conclude that the Debtors had a property interest in these proceeds. "[S]uch argument would be akin to a car owner with collision coverage claiming he had the right to proceeds from his policy simply because there is a prospective possibility that his car would collide with another tomorrow, or a living person having a death benefit policy and claiming his beneficiaries have a property interest in his proceeds even though he remains alive." *Id.* at 53.

Under the circumstances of this case, the Debtors' interests in the D&O Policies are nominal and they will neither have the need nor the right to access policy proceeds under either Side B or Side C coverage. First, as in the cases cited *infra,* the D&O Policies provide that Side A coverage has a priority unaffected by the Debtors' bankruptcies. For the Debtors to have a right to Side B reimbursement, they must first have paid indemnification dollars to or on behalf of the officers or directors who are defendants in the D&O Actions.[10]  Soon after the cases were filed the Debtors moved to modify the automatic stay "to the extent applicable" to allow for payment of defense costs under the D&O Policies. In the motion, the Debtors conceded that they would not be indemnifying the D&O Action defendants, arguing that the motion should be granted because otherwise the directors and officers ran a risk that the insurer would not pay defense costs, leaving the directors and officers to "personally fund their defense." *See* Dkt. No.33, ¶13.

Should the officers and directors file claims for indemnification, they would be subject to disallowance under § 502(e) of the Bankruptcy Code. *See, e.g., In re Alper Holdings USA,* 07-

---

[10]    Under the terms of the D&O Policies, the Insurers agreed to pay the defense costs of "Insured Persons" if the Debtors fail to do so when there is a Financial Insolvency event

12148 (Bankr S.D.N.Y. Sept. 10, 2008); *In re Wedtech Corp.* 85 B.R. 285 (Bankr S.D.N.Y.
1988). Any claims for indemnification, as well as any "Securities Claims" for which there is
Side C coverage would also be subject to subordination under §510(b) of the Bankruptcy Code.[11]
The Court has already found, albeit on a preliminary basis, that the Debtors are "hopelessly
insolvent" when it denied a motion to form an equity committee.

> Notwithstanding the admitted complexities of the Debtors' cases
> and the number of outstanding common shares and holders of
> record, the evidence showed that SunEdison appears to be
> hopelessly insolvent, and it is substantially unlikely that equity will
> receive a distribution. At the outset, the Court concludes that
> SunEdison's prepetition financial statements, which show
> shareholders' equity of roughly $4 billion, are unreliable, a
> conclusion with which many of the proponents agree.

*See* Memorandum Decision and Order Denying Appointment of Official Committee of Equity
Security Holders, Dkt. No. 975, August 12, 2016.

Because the Debtors will not be legally obligated to pay any "Securities Claims," they
will never be entitled to indemnification under Side C coverage, and therefore have no
conceivable interest in the proceeds of the D&O Policies.

### B. The Automatic Stay Does Not Apply

The Committee maintains because the Debtors have purported interests in the D&O
Policies, continuation of the D&O Actions violates the automatic stay, although it is unclear
exactly which subsection of §362(a) is being violated. In any event, this Court has previously
ruled that third party actions which might affect a debtor's indemnification rights under a
directors and officers liability policy do *not* violate the automatic stay.

---

[11]    Section 510(b) subordinates claims for damages arising from the purchase and sale of a security "or
reimbursement or contribution allowed under section 502 on account of such a claim" to general unsecured claims
when the security at issue is an equity security.

In *In re Granite Partners,* 194 B.R. 318, the trustee commenced an adversary proceeding

to enjoin several actions brought by investors and creditors of the debtor against, among others,

insiders of the debtor.  One of the arguments raised by the trustee was that the proceedings were

subject to the automatic stay because they would adversely affect the interests of the debtor in

certain director and officer like insurance policies.  This Court held otherwise: finding first that

"the mere threat to [a policy which provides indemnity to a debtor] does not implicate the

automatic stay" holding that "[w]e are not convinced that an action by a third party to recover a

judgment against another third party, whose liability maybe covered under an insurance policy

that also grants the debtor separate rights, implicates the automatic stay."  *Id.* at 337-38.

### C.  No Showing Has Been Made to Support an Injunction Under Section 105 of the Bankruptcy Code

A request by a debtor for an injunction under §105(a) pending confirmation of its plan of

reorganization is regarded as a request for a preliminary injunction.  *See, e.g., GAF Corp. v.

Johns-Manville Corp.(In re Johns-Manville Corp.),* 26 B.R. 405, 415 (Bankr. S.D.N.Y. 1983),

*aff'd,* 40 B.R. 219 (S.D.N.Y. 1984); *In re United Health Care Org.,* 210 B.R. 228, 233-35

(S.D.N.Y. 1997), *appeal dismissed as moot,* 147 F.3d 179 (2d Cir.1998).  The determination of

whether an injunction should issue calls into play the traditional preliminary injunction standards

as modified to fit the bankruptcy context.  *See* 105.02 Collier on Bankruptcy (15th Edition Rev.

2006); *In re United Health Care,* 210 B.R. at 233.  Although the first requirement is classically

that there be a danger of imminent, irreparable harm, there is a limited exception permitting

"issuance of a preliminary injunction in the bankruptcy context where the action to be enjoined is

one that threatens the reorganization process." *Alert Holdings, Inc. v. Interstate Protective Servs.,

Inc.(In re Alert Holdings, Inc.),* 148 B.R. 194, 200 (Bankr. S.D.N.Y. 1992).  Even under this

17

narrow exception, the threat to the reorganization process must be imminent, substantial and

irreparable. As for the second requirement, there must be a reasonable likelihood of a successful

reorganization. Third, the court must balance the comparative harm to the debtor, and to the

debtor's reorganization, against that to the would-be-enjoined party should an injunction be

issued. Fourth, the court must consider the public interest which "requires a balancing of the

public interest in successful bankruptcy reorganizations with other competing societal interests."

105.02 Collier; *accord Tucker Anthony Realty Corp. v. Schlesinger,* 888 F.2d 969, 972 (2d

Cir.1989). In evaluating these factors, the court takes a flexible approach and no one factor is

determinative. *See American Imaging Services v. Eagle-Picher Indus. (In re Eagle-Picher Indus.,*

*Inc.),* 963 F.2d 855, 859 (6th Cir.1992).

The Committee has offered no evidence to support its request for a §105 injunction. The

continuation of the D&O Actions does not represent a substantial, imminent and irreparable

threat to the reorganizations of the Debtors but it would inflict considerable harm on the Non-

Class Defendants. It would permit the Committee to proceed with its suit against the D&Os

while indefinitely staying all parties from seeking redress of their losses while the Debtors' cases

make their slow progression through chapter 11. The Motion perverts the usual justification for

a preliminary injunction, to preserve the status quo, when it asks this Court to use its equitable

powers to alter the status quo so that the Committee alone can pursue the D&Os. *See Ochs v.*

*Lipson (In re First Central Financial Corp.),* 239 B.R. at 20-22 [Court denied §105 injunction on

similar facts; no showing of irreparable harm and finding that injunction preventing suit against

former directors and officers while trustee pursued his suit imposes an "obvious hardship" and

the balancing of the equities weighed against injunction].

18

Furthermore, "[s]ection 105 'does not authorize... courts to create substantive rights that are otherwise unavailable under applicable law' and therefore cannot be used to provide the Trustee effective priority over independent and direct claims against non-debtors merely because both actions seek to recover from the same pool of funds." *Sec. Investor Prot. Corp. v. Madoff,* 490 B.R. 59, 72 (S.D.N.Y.2013) (quoting *In re Kalikow,* 602 F.3d at 96 (2nd Cir. 2010)). Similarly, in *In re Granite Partners*, *supra,* this Court found that the trustee was not entitled to an injunction because he failed to show "that the continuation of these lawsuits will frustrate or thwart the reorganization because of their effect on Granite's insurance coverage, or for any other reason." The same analysis applies here.[12]

---

[12]    Additionally, as mentioned above, Section XXI of the ACE Policy, entitled "Bankruptcy", provides, *inter alia*: "If a liquidation or reorganization proceeding is commenced by the Named Insured  [i.e. SunEdison, Inc.] or any other Company (whether voluntary or involuntary) under Tile 11 of the United States Code (as amended), or any similar state, local or foreign law (collectively, "Bankruptcy Law") then, in regard to a covered Claim under the Policy, the Insureds hereby waive and release any automatic stay or injunction ("Stay") to the extent such Stay may apply to the proceeds of this Policy under such Bankruptcy Law, and agree not to oppose or object to any efforts by the Insurer or any Insured to obtain relief from the Stay applicable to the proceeds of this Policy as a result of such Bankruptcy Law." Courts routinely enforce waivers like the one contained in the ACE Policy here. *See, e.g., In re Alexander SRP Apartments, LLC,* 2012 WL 1910088, at * 6 (Bankr. S.D. Ga. Apr. 20, 1012) ("Certainly the weight of case law upholds enforcement of waivers of the automatic stay under appropriate circumstances.").

## CONCLUSION

For the reasons stated above, Committee's Motion should be denied in all respects.

Dated: November 29, 2016

EISEMAN LEVINE LEHRHAUPT
& KAKOYIANNIS, P.C.

_/s/ Laurence May_
Laurence May, Esq.
Peter Reiser, Esq.
Eric Aschkenasy, Esq.

805 Third Avenue, 10th Floor
New York, New York 10022
212- 752-1000
*Attorneys for the Non-Class Defendants*

-and-

ROBBINS GELLER RUDMAN & DOWD LLP

_/s/ Dennis J. Herman_
Dennis J. Herman, Esq.
David W. Hall, Esq.

Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA. 94104
415-288-4545
*Attorneys for the Non-Class Defendants*

20