**Hearing Date**: 12/6/2016 at 10:00 A.M. (EST)
**Objection Deadline** (extended by agreement of the parties): 12/01/2016 at 4:00 P.M. (EST)

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

51 Madison Ave., 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100
Andrew J. Rossman
Jordan A. Goldstein

*Counsel To Plaintiffs Kearny Investors S.à r.l., Powell Investors L.P., and Powell Investors II Limited Partnership*

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

51 Madison Ave., 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100
Jonathan E. Pickhardt

*Counsel To Plaintiffs Canyon Capital Advisors LLC, Canyon Balanced Master Fund, Ltd., Canyon Capital Arbitrage Master Fund, Ltd., Canyon-GRF Master Fund II, L.P., Canyon Value Realization Fund, L.P., The Canyon Value Realization Master Fund, L.P., and Permal Canyon IO Ltd.*

**BAUTE CROCHETIERE & GILFORD LLP**

777 S. Figueroa Street
Suite 4900
Los Angeles, CA 90017
Telephone: (213) 630-5000
Facsimile: (213) 683-1225
Frank J. Broccolo *(pro hac application forthcoming)*
Mark D. Baute *(pro hac application forthcoming )*

*Counsel To Plaintiffs Canyon Capital Advisors LLC, Canyon Balanced Master Fund, Ltd., Canyon Capital Arbitrage Master Fund, Ltd., Canyon-GRF Master Fund II, L.P., Canyon Value Realization Fund, L.P., The Canyon Value Realization Master Fund, L.P., Permal Canyon IO Ltd., Kearny Investors S.à r.l., Powell Investors L.P., and Powell Investors II Limited Partnership*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

In re:

SUNEDISON, INC., *et al.*,

Debtor(s).[1]

Chapter 11

Case No. 16-10992 (SMB)
(Jointly Administered)

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number are as follows: SunEdison, Inc. (5767); SunEdison DG, LLC (N/A); SUNE Wind Holdings, Inc. (2144); SUNE Hawaii Solar Holdings, LLC (0994); First Wind Solar Portfolio, LLC (5014); First Wind California Holdings, LLC (7697); SunEdison Holdings Corporation (8669); SunEdison Utility Holdings, Inc. (6443); SunEdison International, Inc. (4551); SUNE ML 1, LLC (3132); MEMC Pasadena, Inc. (5238); Solaicx (1969); SunEdison Contracting, LLC (3819); NVT, LLC (5370); NVT Licenses, LLC (5445); Team-Solar, Inc. (7782); SunEdison Canada, LLC (6287); Enflex Corporation (5515); Fotowatio Renewable Ventures, Inc. (1788); Silver Ridge Power Holdings, LLC (5886); SunEdison International, LLC (1567); Sun Edison LLC (1450); SunEdison Products Singapore Pte. Ltd. (7373); SunEdison Residential Services, LLC (5787); PVT Solar, Inc. (3308); SEV Merger Sub Inc. (N/A); Sunflower Renewable Holdings 1, LLC (6273); Blue Sky West Capital, LLC (7962); First Wind Oakfield Portfolio, LLC (3711); First Wind Panhandle Holdings III, LLC (4238); DSP Renewables, LLC (5513); Hancock Renewables Holdings, LLC (N/A); EverStream HoldCo Fund I, LLC (9564); Buckthorn Renewables Holdings, LLC (7616); Greenmountain Wind Holdings, LLC (N/A); Rattlesnake Flat Holdings, LLC (N/A); Somerset Wind Holdings, LLC (N/A); SunE Waiawa Holdings, LLC (9757); SunE Minnesota Holdings, LLC (8926); SunE MN Development Holdings, LLC (5388); and SunE MN Development, LLC (8669).  The address of the Debtors' corporate headquarters is 13736 Riverport Drive, Maryland Heights, Missouri 63043.

OFFICIAL COMMITTEE OF UNSECURED
CREDITORS, on behalf of the estates of the
Debtors,

               Plaintiff,

               v.

JUAN M. RODRIQUEZ BELTRAN, et al.

Defendants.

Adversary Proceeding

No. 16-01257 (SMB)

---

**OBJECTION WITH RESERVATION OF RIGHTS OF PLAINTIFFS CANYON
CAPITAL ADVISORS LLC, CANYON BALANCED MASTER FUND, LTD., CANYON
CAPITAL ARBITRAGE MASTER FUND, LTD., CANYON-GRF MASTER FUND II,
L.P., CANYON VALUE REALIZATION FUND, L.P., THE CANYON VALUE
REALIZATION MASTER FUND, L.P., PERMAL CANYON IO LTD., KEARNY
INVESTORS S.À R.L., POWELL INVESTORS L.P., AND POWELL INVESTORS II
LIMITED PARTNERSHIP TO THE MOTION OF THE CREDITORS' COMMITTEE
FOR (1) A DECLARATION AND (2) ENFORCEMENT OF AUTOMATIC STAY
AGAINST LITIGATION INVOLVING CERTAIN CURRENT AND
<u>FORMER DIRECTORS AND OFFICERS OF DEBTORS</u>**

TO:    THE HONORABLE STUART M. BERNSTEIN
        UNITED STATES BANKRUPTCY JUDGE:

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................................1

PROCEDURAL BACKGROUND...........................................................................................4

OBJECTION ................................................................................................................................6

I.    The Automatic Stay Does Not Apply to the Actions............................................................6

    A.    *The Automatic Stay Does Not Stay Litigation Against Non-Debtors.* ....................6

    B.    *The Debtors' Estate Has No Property Interest In The D&O Policies.*...................8

    C.    *Any Interest Allegedly Held By The Debtors' Estates' In The D&O*
    *Policies Or The Debtors' Risk Of Indemnifying The D&O Defendants*
    *Does Not Make The Actions Subject To The Automatic Stay.* ...............................10

    D.    *The Committee's Motion Does Not Support Issuance Of An Injunction*
    *Under Section 105.*................................................................................................16

II.   Even If A Stay Were Granted As To The D&O Defendants, It Should Be Denied
    As To The Underwriter Defendants.................................................................................20

III.  Any Mediation Must Not Interfere With Plaintiffs' Claims Against The
    Underwriter Defendants...................................................................................................21

CONCLUSION.............................................................................................................................22

# TABLE OF AUTHORITIES

**Page**

## Cases

*In re Adelphia Commc'ns Corp.*,
    298 B.R. 49 (S.D.N.Y. 2003)................................................................8, 16

*Alert Holdings, Inc. v. Interstate Protective Servs., Inc.*,
    148 B.R. 194 (Bankr. S.D.N.Y. 1992)........................................................17

*In re Allied Digital Tech. Corp.*,
    306 B.R. 505 (Bankr. D. Del. 2004) .........................................................10

*In re Bidermann Indus. U.S.A., Inc.*,
    200 B.R. 779 (Bankr. S.D.N.Y. 1996)...............................................13, 15, 16, 19

*Circle K. Corp. v. Marks (In re Circle K Corp.)*,
    121 B.R. 257 (Bankr. D. Ariz. 1990).........................................................16

*In re Crazy Eddie Sec. Litig.*,
    104 B.R. 582 (E.D.N.Y. 1989) ................................................................6

*Dore & Assocs. Contracting, Inc. v. American Druggists' Ins. Co.*,
    54 B.R. 353 (Bankr. W.D. Wis. 1985).......................................................17

*Duval v. Gleason*,
    1990 WL 261364 (N.D. Cal. 1990) ..........................................................19

*In re First Cent. Fin. Corp.*,
    238 B.R. 9 (Bankr. E.D.N.Y. 1999)........................................................6, 9

*GATX Aircraft Corp. v. M/V Courtney Leigh*,
    768 F.2d 711 (5th Cir. 1985) .................................................................18

*In re G.S.F. Corp.*,
    938 F.2d 1467 (1st Cir. 1991) ................................................................17

*Globus v. Law Research Service, Inc.*,
    418 F.2d 1276 (2d Cir. 1969).................................................................14

*In re Granite Partners, L.P.*,
    194 B.R. 318 (Bankr. S.D.N.Y. 1996)..............................................7, 8, 11, 17

*Heizer Corp. v. Ross*,
    601 F.2d 330 (7th Cir. 1979) .................................................................14

*JSO Associates, Inc. v. Awrey Bakeries, LLC*,
    2014 WL 2882896 (E.D.N.Y. June 25, 2014) .................................................6

*Kommanditselskab Supertrans v. O.C.C. Shipping, Inc.*,
    79 B.R. 534 (S.D.N.Y. 1987)..................................................................7

*In re Louisiana World Exposition, Inc.*,
   832 F.2d 1391 (5th Cir. 1987) ..................................................................................8

*In re MF Glob. Holdings Ltd.*,
   515 B.R. 193 (Bankr. S.D.N.Y. 2014) ................................................................9, 10

*N.J. Carpenters Health Fund v. Royal Bank of Scotland Group,
PLC*, --- B.R. ---, 2016 WL 4705169 (S.D.N.Y. Sept. 2, 2016) .................................... *passim*

*In re Phar-Mor, Inc. Sec. Litig.*,
   166 B.R. 57 (W.D. Pa. 1994) ..................................................................................17

*Picard v. Fairfield Greenwich Ltd.*,
   762 F.3d 199 (2d Cir. 2014) ............................................................................ *passim*

*Queenie, Ltd. v. Nygard Int'l*,
   321 F.3d 282 (2d Cir. 2003) ............................................................................ *passim*

*In re Recoton Corp.*,
   307 B.R. 751 (Bankr. S.D.N.Y. 2004) ....................................................................7

*In re SDNY 19 Mad Park*,
   2014 WL 4473873 (Bankr. S.D.N.Y. Sep. 11, 2014) .......................................11, 15

*Schaffer ex rel. Lasersight, Inc. v. CC Investments, LDC*,
   286 F. Supp. 2d 279 (S.D.N.Y. 2003) .....................................................................6

*Teachers Ins. & Annuity Ass'n of Am. v. Butler*,
   803 F.2d 61 (2d Cir. 1986) .......................................................................................6

*In re United Health Care Org.*,
   210 B.R. 228 (S.D.N.Y. 1997) ...............................................................................17

*Williford v. Armstrong World Indus., Inc.*,
   715 F.2d 124 (4th Cir. 1983) ..................................................................................19

*In re Zale Corp.*,
   62 F.3d 746 (5th Cir. 1995) ....................................................................................17

## **Statutes**

11 U.S.C. § 105 ............................................................................................. *passim*

11 U.S.C. § 362 ............................................................................................. *passim*

D.G.C.L. § 145(a) ...................................................................................................15

## PRELIMINARY STATEMENT

1.      On November 2, 2016, the Official Committee of Unsecured Creditors (the "Committee") commenced an adversary proceeding against the plaintiffs in 30 actions pending in federal and state court, and concurrently filed a motion (the "Motion")[2] seeking to stay in their entirety all 30 actions (collectively, the "D&O Actions"), even as to defendants unrelated to the Debtors.

2.      This objection is jointly filed by individual institutional investors ("Plaintiffs") who have brought three actions (the "Actions")[3] asserting that *non-bankrupt* third parties, including defendants unaffiliated with the Debtors, injured Plaintiffs through violations of federal and state securities laws.  The defendants in the Actions are (i) the underwriters (the "Underwriter Defendants") who effected the offering of shares of Debtor SunEdison and one of its non-bankrupt subsidiaries based upon false and misleading offering documents; (ii) the SunEdison directors and officers (the "D&O Defendants") who participated in the offerings; and (iii) in one of the Actions (*Canyon I*), the non-bankrupt publicly-traded subsidiary issuer, Terraform Global, Inc. ("GLBL").  Although debtor SunEdison is a party to 20 of the other D&O Actions (Mot. ¶ 23), neither SunEdison nor any other bankrupt entity is a defendant in any of the three individual Actions brought by Plaintiffs.

---

[2]  All terms not otherwise defined herein have the same meanings as defined in the Motion.

[3]  The Actions are: *Canyon Capital Advisors LLC et al., v. TerraForm Global, Inc. et al.*, 16-cv-9171 (S.D.N.Y.) ("*Canyon I*"); *Canyon Capital Advisors, LLC et al., v. Alvarez et al.*, 16-cv-9172 (S.D.N.Y.) ("*Canyon II*"); and *Kearny Investors S.à r.l. et al., v. Goldman Sachs & Co. et al.*, 16-cv-6582 (N.D. Cal.) ("*Kearny*").  *Canyon I* was brought on behalf of Canyon Capital Advisors LLC, Canyon Balanced Master Fund, Ltd., Canyon Capital Arbitrage Master Fund, Ltd., Canyon-GRF Master Fund II, L.P., Canyon Value Realization Fund, L.P., and The Canyon Value Realization Master Fund, L.P.  *Canyon II* was brought on behalf of Canyon Capital Advisors LLC and Permal Canyon IO LTD.  *Kearny* was brought on behalf of Kearny Investors S.à r.l., Powell Investors L.P., and Powell Investors II Limited Partnership.

3.      Plaintiffs' Actions are, from a procedural standpoint, substantially similar to the ERISA Action that this Court has already determined was not subject to the automatic stay provisions of section 362 of the Bankruptcy Code.  *See* "Order Clarifying that the Automatic Stay Does Not Apply Under 11 U.S.C. § 362(d)(1) to Certain Prepetition ERISA Action as Against Non-Debtor Defendants."  Dkt. 474.[4]  Even though this Court already ordered that the procedurally similar ERISA Action as against non-debtor defendants was not subject to the automatic stay, the Committee commenced this adversary proceeding against Plaintiffs (and others) because the Committee has sought to initiate a separate adversary proceeding against certain D&O Defendants alleging claims for breach of fiduciary duty.

4.      In the Motion, the Committee argues that the automatic stay provisions of section 362(a) must be enforced against the D&O Actions because the Debtors' estates have a property interest in the insurance policies issued for the benefit of the D&O Defendants (the "D&O Policies" or the "Policies") and continuation of the D&O Actions will allegedly drain the proceeds of the D&O Policies.  Alternatively, the Committee contends that this Court should use its authority under Bankruptcy Code section 105(a) to enjoin all such D&O Actions, even though the Committee makes no effort to show that enjoining the D&O Actions is necessary to the Debtors' reorganization efforts.  Put bluntly, the Committee wants to have access to the proceeds of the D&O Policies (as it prosecutes, and possibly will prevail, on its claims) without any perceived interference from any of the Plaintiffs, and apparently believes the best way to accomplish this goal is to use this Court to halt litigation around the country, including multidistrict litigation pending in the District Court for the Southern District of New York.

---

[4]   Cites to the Chapter 11 Docket, 16-10992-smb, are cited as "Dkt. _" herein.

5.      The Committee's Motion fails as a matter of law.  *First*, the Debtors' estate has no property interest in the D&O Policies' proceeds.  The only D&O Policy that Plaintiffs have been able to obtain provides that the D&O Defendants have priority over SunEdison for all of the proceeds.  Accordingly, the Actions against the D&O Defendants do not implicate any property interests of the Debtors.  Nothing in the Bankruptcy Code permits the Creditors' Committee to reverse the priority of payments specified under the D&O Policies and thereby treat the Policies as if SunEdison had priority over the D&O Defendants for the proceeds.

6.      *Second*, even if the Debtors' estates have a property interest in the D&O Policies, that property interest is not being interfered with by the prosecution of Plaintiffs' Actions against non-debtor defendants, as it is well settled that suits against non-debtor defendants are <u>not</u> subject to the automatic stay.  Neither the fact that the proceeds of the D&O Policies are a possible source of satisfaction of a judgment, nor the fact that the Defendants may ultimately assert indemnification claims warrants extension of the automatic stay to non-debtor defendants in these circumstances.  Not surprisingly, this Court has already ruled that one action—the ERISA Action—is not subject to the automatic stay as against non-debtor defendants, and there is nothing to mandate a different outcome as to Plaintiffs' Actions.

7.      *Third*, there is no basis to enjoin the Actions under section 105(a).  There is no evidence that continuing the Actions will threaten the Debtors' reorganization efforts.  This adversary proceeding does not involve the more common case where a debtor seeks to stay litigation against its directors, officers, and controlling shareholders because such litigation threatens the Debtors' ability to reorganize.  No such argument is made by the Committee, which is not surprising because the Committee intends to bring *its own* litigation, and thus necessarily believes suing the directors and officers does not threaten reorganization.  Indeed, the Committee

3

seeks to do something unprecedented.  The Committee is attempting to stop litigation involving

D&O Defendants because of the possible drain on D&O Policy proceeds—when not even the

defendants or the Debtors themselves have sought to stay such actions and when the real

property interest dispute (concerning the proceeds of the D&O Policies) is between the D&O

Defendants and the Committee, not Plaintiffs—while simultaneously permitting the Committee's

own litigation against the D&O Defendants to proceed unimpeded.  But the Committee is not

entitled to leap in front of shareholder plaintiffs in seeking to recover funds from the D&O

Defendants.

8.      *Fourth*, even if the Committee's concerns about protecting the value of the D&O

Policies were legitimate, this Court has already established the framework to deal with the D&O

Policies and their proceeds, so that if the cap set by the Court is met, the Court can determine

whether to advance additional monies under the Policies.[5]

9.      As to SunEdison's request for mediation, Plaintiffs are gravely concerned that it is

merely an excuse for delay on the part of Debtor SunEdison and its current and former insiders.

That said, Plaintiffs are willing to consider prompt mediation of their claims against the D&O

Defendants, provided that any mediation does not impair Plaintiffs' entitlement to continue

pursuing their legally distinct claims against the Underwriter Defendants in all the Actions, and

against GLBL in *Canyon I*.

## PROCEDURAL BACKGROUND

10.     On August 8 and August 25, 2016, the Canyon Plaintiffs filed *Canyon I* and

*Canyon II*, respectively, in San Mateo Superior Court in California.  On October 5, 2016, the

---

[5]   In establishing this framework, the Court expressly did not reach whether the D&O
Policies constituted property of the estate.  Dkt. 368, at 3.

*Kearny* Plaintiffs filed their suit in San Mateo as well.  None of the Actions was commenced against SunEdison or any other debtor in the SunEdison bankruptcy.

11.    The Actions assert statutory securities claims under the California Corporate Securities Law of 1968, Cal. Corp. Code §§ 25401, 25501 and 25504, and the federal Securities Act of 1933, §§ 11, 12(a)(2) and 15 (15 U.S.C. §§ 77k, 77*l*(a)(2), 77o), in relation to false or misleading statements and omissions in the offering materials for two public securities issuances: (i) the 6.75% Series A Perpetual Convertible Preferred Stock, par value $0.01 per share offered by SunEdison on August 18, 2015; and (ii) the Class A common stock of GLBL in its initial public offering offered on July 31, 2015.  The Actions name numerous defendants, including several of the underwriters, a number of SunEdison's current confirm and former directors and officers, and—in the case of *Canyon I*, GLBL—but none of the Actions asserts any claims against debtor SunEdison or any other bankrupt party.

12.    Defendants in the Actions removed the cases to the U.S. District Court for the Northern District of California on September 8, 2016 (*Canyon I and II*) and November 14, 2016 (*Kearny*).  On October 4, 2016, the Judicial Panel on Multidistrict Litigation (the "JPML") issued an order forming a multidistrict litigation proceeding captioned *In re: SunEdison, Inc., Securities Litigation*, MDL No. 2742, which is pending in the United States District Court for the Southern District of New York (the "SunEdison MDL").  On October 5, 2016, the JPML issued an order conditionally transferring *Canyon I and II* to the SunEdison MDL.  The same order was made in respect of *Kearny* on November 17, 2016.  On November 28, 2016, *Canyon I and II* were transferred to the SunEdison MDL after the *Canyon* plaintiffs withdrew their objections to transfer upon the Defendants' stipulation that, among other things, the *Canyon* plaintiffs' state law claims would not be precluded or dismissed in the SunEdison MDL.  The parties to *Kearny*

5

have stipulated under similar terms to their willingness to have that action also transferred to the

SunEdison MDL.  At present, *Kearny* remains pending in the Northern District of California.

## OBJECTION

### I.     The Automatic Stay Does Not Apply to the Actions.

#### A.     *The Automatic Stay Does Not Stay Litigation Against Non-Debtors.*

13.     It is "well-established" that the automatic stay provisions of 11 U.S.C. § 362 are

generally limited to actions against debtors and property of the debtors "and do not encompass

non-bankrupt co-defendants." *N.J. Carpenters Health Fund v. Royal Bank of Scotland Group,

PLC*, --- B.R. ---, 2016 WL 4705169, at *1 (S.D.N.Y. Sept. 2, 2016) (quoting *Teachers Ins. &

Annuity Ass'n of Am. v. Butler*, 803 F.2d 61, 65 (2d Cir. 1986)); *In re Crazy Eddie Sec. Litig.*,

104 B.R. 582, 583–84 (E.D.N.Y. 1989).  Direct claims against non-debtors are thus not subject

to the automatic stay, even if such claims are factually similar to claims of a debtor's estate

against the same non-debtors.  *See Picard v. Fairfield Greenwich Ltd.*, 762 F.3d 199, 208 (2d

Cir. 2014) (holding that action brought against non-debtors and subsequent settlement were not

subject to the automatic stay).

14.     Even where a corporate debtor is a co-defendant with the debtor's directors and

officers, the stay typically only applies to claims against the debtor, and claims against the non-

debtor directors and officers may proceed.  *See, e.g.*, *JSO Associates, Inc. v. Awrey Bakeries,

LLC*, 2014 WL 2882896, at *2 (E.D.N.Y. June 25, 2014) ("Even when an action is pending as of

the petition date against a corporate debtor which is a codefendant with its officers and directors,

the lawsuit is typically stayed only as to the debtor.") (quoting *In re First Cent. Fin. Corp.*,

238 B.R. 9, 18 (E.D. Bankr. 1999)).  This is especially true where the action against the non-

debtors is a direct action rather than a derivative action on behalf of the debtor.  *See, e.g.*,

*Schaffer ex rel. Lasersight, Inc. v. CC Investments, LDC*, 286 F. Supp. 2d 279, 281 (S.D.N.Y.

2003) ("the stay does not apply to suits brought to recover rights of action which belong to the plaintiff-creditor") (quoting *Kommanditselskab Supertrans v. O.C.C. Shipping, Inc.*, 79 B.R. 534, 540 (S.D.N.Y. 1987)). In fact, this Court has previously held that application of the automatic stay to third-party suits is something of a misnomer, as the proper source for any injunction as to third-party suits is under section 105 of the Bankruptcy Code, not section 362. *See In re Granite Partners, L.P.*, 194 B.R. 318, 337 (Bankr. S.D.N.Y. 1996) (Bernstein, J.) ("We take yet another viewpoint which we believe to be consistent with the case law that initially breathed life into these principles. We think that the issue is not whether the automatic stay applies, but whether it should be extended under section 105(a) of the Bankruptcy Code.").

15.    Thus, unsurprisingly, "it is commonplace for securities fraud actions to be pending against the officers and directors of a debtor that is concurrently in a case under the Bankruptcy Code." *In re Recoton Corp.*, 307 B.R. 751, 759 (Bankr. S.D.N.Y. 2004). In fact, numerous instances abound, in this district alone, of securities actions that are pursued out of bankruptcy against underwriters and directors and officers of debtors. *See, e.g.*, *In re Worldcom Sec. Litig.*, No. 02-cv-3288 (S.D.N.Y.); *In re Lehman Bros. Sec. & ERISA Litig.*, No. 08-cv-5223 (S.D.N.Y.); *In re MF Glob. Holdings Ltd. Sec. Litig.*, No. 11-cv-7866 (S.D.N.Y.).

16.    Here, Plaintiffs in *Kearny* and *Canyon II* have sued only the Underwriter and D&O Defendants. Likewise, in *Canyon I*, Plaintiffs have sued only those same defendants and GLBL. None of the Debtors is a party to any of the Actions. As such, the Actions are procedurally, substantially similar to the ERISA Action that this Court determined was not subject to the automatic stay provisions under section 362 of the Bankruptcy Code. As in the present case, the non-debtor ERISA Plaintiffs argued that "[t]he Bankruptcy Code was never intended to be used as a shield behind which officers and directors of a debtor corporation …

could hide their violations of federal law." Dkt. 229 ¶ 14.  Here, too, Plaintiffs bring only federal and state statutory securities claims, and likewise seek to pursue those claims only against non-debtor parties.  While the Committee's Motion notes the existence of this prior order (Mot. ¶ 15), the Committee makes no effort to explain why that prior order should not control here.[6]

17.     In addition, as noted above, *Canyon I* asserts claims against GLBL, a non-bankrupt subsidiary of SunEdison.  Although the automatic stay has been applied to *wholly owned* subsidiaries of debtors, GLBL is a publicly traded entity, and is therefore not wholly owned by the debtor.  There is no identity of interest between SunEdison and GLBL such that SunEdison may be said to be the real party defendant in *Canyon I*.  Accordingly, the automatic stay should not apply to GLBL either.  *Cf. Queenie, Ltd. v. Nygard Int'l*, 321 F.3d 282, 287–88 (2d Cir. 2003).  Moreover, even if the stay were applied to GLBL, it should not apply to any other defendant in that action, let alone to the *Kearny* and *Canyon II* actions.

**B.      The Debtors' Estate Has No Property Interest In The D&O Policies.**

18.     The Committee asserts that the Debtor has a property interest in the D&O Policies.  Mot. ¶ 34.  However, the Committee does not—and cannot—claim that the Debtors have a property interest in the D&O Policies' *proceeds*, which is the relevant issue for the Motion.  *See In re Adelphia Commc'ns Corp.*, 298 B.R. 49, 53 (S.D.N.Y. 2003) (holding that debtor did not have property interest in D&O policy proceeds despite having a property interest in the policy itself); *see also In re Louisiana World Exposition, Inc.*, 832 F.2d 1391, 1399 (5th Cir. 1987) (finding that relevant question "is not who owns the policies, but who owns the

---

[6]   The Committee states that the prior "order was entered without prejudice to the Creditors' Committee moving to extend the automatic stay to those non-debtor defendants in the ERISA actions or any other actions."  Mot. ¶ 15.  A request to extend the automatic stay to any of the Actions, of course, would be a request under section 105(a), *see In re Granite Partners*, 194 B.R. at 337, which as described below cannot be justified.

liability proceeds"). Courts have consistently held that when D&O policies are solely or primarily for the benefit of the D&Os, the proceeds are *not* property of the estate. *See, e.g.*, *In re MF Glob. Holdings Ltd.*, 515 B.R. 193, 202 (Bankr. S.D.N.Y. 2014) ("when a policy covers the directors and officers exclusively, courts have generally held that the proceeds are not property of the estate") (internal quotation marks omitted); *In re First Cent. Fin. Corp.*, 238 B.R. 9, 16 (Bankr. E.D.N.Y. 1999) ("In essence and at its core, a D&O policy remains a safeguard of officer and director interests and not a vehicle for corporate protection.").

19.     Remarkably, notwithstanding the obvious relevance of the D&O Policies to the Motion, the Committee failed to attach a single example of the Policies to its papers. With respect to the one D&O Policy Plaintiffs have been able to locate (based on its having been filed in another proceeding), that Policy was clearly created for the benefit of the D&O Defendants. Policy No. DON-G23652389 009 (the "Ace Policy").[7] In fact, the Policy expressly states that it "is intended as a matter of priority *to protect and benefit the* [D&O Defendants]." Ace Policy, Endorsement XXI (emphasis added). Accordingly, the Policy provides that in the event of bankruptcy of SunEdison, the Insurer must first pay claims for loss incurred by the director and officer insureds, prior to paying claims by SunEdison for loss under the Policy. *Id.* That is, the Policy—by its own terms—specifies that, if SunEdison is bankrupt, the D&O Defendants must be compensated for their litigation and other expenses *up to the full Policy limit*, before any funds may be paid to the Debtor under the Policy's coverage for claims by the Debtor arising from securities actions (so-called "Side C coverage").

20.     By their argument, however, the Committee attempts to invert the payment order under the D&I Policies, and to provide that the *Debtor* will receive D&O Policy proceeds ahead

---

[7]     The Ace Policy is attached as Exhibit A to the Declaration of Jordan A. Goldstein.

of the D&Os *who are the D&O Policies' intended beneficiaries*.  Nothing in the Bankruptcy

Code permits the Committee to rewrite the D&O Policies to disfavor their intended beneficiaries

(the D&Os), and thereby grant the Debtors' a property interest in the D&O Policies they did not

possess prior to bankruptcy.  *See In re MF Glob. Holdings Ltd.*, 515 B.R. 193, 203 (Bankr.

S.D.N.Y. 2014) ("Even if [Debtors] had a contractual claim to the D&O Proceeds, that claim

would be subject to the D&O Policies' priority of payment provision … [which provides] that

the Individual Insureds be advanced defense costs before other payments under the D&O

Policies are satisfied.").

> **C.**      ***Any Interest Allegedly Held By The Debtors' Estates' In The D&O Policies Or The Debtors' Risk Of Indemnifying The D&O Defendants Does Not Make The Actions Subject To The Automatic Stay.***

21.      The Committee argues that because the D&O Policies are allegedly property of

SunEdison's estate, the automatic stay applies to stay Plaintiffs' Actions.  However, even if the

Court were to accept that the D&O Policies' proceeds are property of the Debtor's' estates—

which they are not for the reasons discussed above—the automatic stay still should not apply.

The Committee conflates two separate inquiries—while whether the D&O Defendants can

access proceeds of D&O policies (in order to have advanced or be reimbursed for defense costs,

or for settlement funding) may be an issue that implicates the automatic stay,[8] it does not affect

the separate question of whether the Actions are subject to the automatic stay (which they are

---

[8]    Several of the cases the Committee cites concern this issue.  *See In re Allied Digital Tech. Corp.*, 306 B.R. 505, 513 (Bankr. D. Del. 2004) (while holding that policy proceeds were property of the estate, court granted relief from the stay to permit director and officer defendants to access policy proceeds, stating "[i]t is not uncommon for courts to grant stay relief to allow payment of defense costs or settlement costs to directors and officers, especially when there is no evidence that direct coverage of the debtor will be necessary.").

not).  The Committee also ignores the fact that the D&O Policies are simply inapplicable to the claims against the Underwriter Defendants and GLBL under any circumstances.

22.     The Committee does not cite any cases from this District holding that, because a debtor's estate *may* have a property interest in an insurance policy that *may* supply funding for settlement or defense costs in actions brought against non-debtor directors and officers, such litigation is subject to the automatic stay.  Rather, the Committee relies on arguments that this District (including this Court) have already rejected.  *See, e.g.*, *N.J. Carpenters Health*, 2016 WL 4705169, at *2 (S.D.N.Y. Sept. 2, 2016); *In re SDNY 19 Mad Park*, 2014 WL 4473873, at *2 (Bankr. S.D.N.Y. Sep. 11, 2014); *In re Granite Partners, L.P.*, 194 B.R. 318 at 337–38 (Bernstein, J.).

23.     Notwithstanding the absence of supporting precedent, the Committee claims that the D&O Policies implicate the debtor's estate in two potential ways.  First, the Committee asserts that the Policies provide for "Side C" insurance coverage (meaning that the policy provides insurance coverage to SunEdison).  Mot. ¶ 30–31.  According to the Committee, if the Actions are permitted to proceed, the Policies would have less value for the Debtor based upon having already paid claims to the D&O Defendants pursuant to the Policies' concurrent "Side A" insurance, which purports to cover director and officer claims that are not indemnified by the issuer.  Mot. ¶¶ 42–43.

24.     However, "[t]he mere possibility of a future indemnification claim will not support application of the automatic stay, and [the Committee] ha[s] not provided Second Circuit authority to the contrary."  *N.J. Carpenters Health Fund,* 2016 WL 4705169, at *2 (S.D.N.Y. Sept. 2, 2016) (citations omitted).  Accordingly, the mere possibility of a claim by SunEdison for Side C coverage would not support the application of the automatic stay to the Actions.  Rather,

to support application of the automatic stay to third-party actions, the third-party suit must be "*legally certain[]* to impact estate property." *Picard*, 762 F.3d at 208 (emphasis added) (refusing "to automatically stay actions taken against third parties that are only factually likely, as opposed to legally certain, to impact estate property"). Here, any impact on the Debtors' estate based upon a diminution of D&O Policy proceeds by the D&O Defendants is speculative at best.

25.     The Committee claims that the D&O Policies are at risk of depletion because they "are likely to fund most or all of any money judgment in the D&O Actions" (Mot. ¶ 1). As an initial matter, the Second Circuit recently held that the effect of a litigation, absent a judgment, fails to satisfy the test under *Queenie, Ltd. v. Nygard Int'l*, 321 F.3d 282 (2d Cir. 2003), that "[t]he automatic stay can apply to non-debtors, but normally does so only when a claim against the non-debtor will have an immediate adverse economic consequence for the debtor's estate." *See Picard*, 762 F.3d at 212 ("The impact of the settlements could not be 'immediate' because the Trustee's fraudulent conveyance actions are actively being litigated; the Trustee therefore lacks a judgment entitling him to any part of the assets of the Fairfield or Merkin Defendants.").

26.     To the extent the Committee argues that the litigation costs borne by the D&O Defendants in the Actions, as distinct from the actual judgment, are likely to impair the estate, the Committee has not yet established that the D&O Defendants have an *absolute* right to indemnification under the D&O Policies that would result in a depletion of property of the estate. As this Court has previously held, absent claiming an absolute right to indemnity, the Committee cannot use the mere *possibility* that the D&O Defendants will be entitled to indemnification as a basis for staying third-party claims. This Court's prior order lifting the automatic stay to permit insurers to reimburse the D&O Defendants' defense costs does not comprise a finding that the

12

D&O Defendants were entitled to indemnity under the policies for past or future costs. Moreover, there is no reason to distinguish possible claims for indemnity under an insurance policy from possible claims against the Debtor for indemnity, which Courts have repeatedly held are insufficient to support application of the automatic stay. *See, e.g.*, *N.J. Carpenters Health Fund*, 2016 WL 4705169, at *2 ("[T]here is nothing in the record to suggest that any of the non-bankrupt Defendants would be entitled to absolute indemnity, only that they might elect to pursue indemnification or contribution in the event of an unfavorable result here. The mere possibility of a future indemnification claim will not support application of the automatic stay, and Defendants have not provided Second Circuit authority to the contrary."); *In re Bidermann Indus. U.S.A., Inc.*, 200 B.R. 779, 783–84 (Bankr. S.D.N.Y. 1996) (Bernstein, J.) (automatic stay applies to third-party actions under "unusual circumstances," which does *not* include claims for indemnification where "the right to indemnity is not absolute").

27. The Committee cites *Queenie* for the proposition that the automatic stay can extend to non-debtors when there is an immediate adverse economic consequence for the debtor's estate. But as was made clear in *Picard*, the requirement for showing an "immediate adverse economic consequence" is a high burden, akin to a showing of likely irreparable harm. *Picard*, 762 3d at 212.[9] In *Queenie*, the high burden was satisfied as to litigation against a wholly owned subsidiary of the debtor because "adjudication of a claim against the corporation will have an immediate adverse economic impact on [its president and sole shareholder, who was also a debtor in the proceeding]." *Queenie*, 321 F.3d at 288. But the Second Circuit declined to extend the stay to the appeal of non-debtor co-judgment debtors even though the debtor sought

---

[9]   *Picard* cited *Queenie* in connection with a request to extend the automatic stay protections pursuant to Bankruptcy Code section 105(a).

"to apply the stay to the [co-judgment debtors] to avoid the later use against himself and his corporation of offensive collateral estoppel arising from a ruling on this appeal adverse to these Appellants or at least to guard against the precedential effect of such a ruling." *Id.* The Second Circuit explained: "We have not located any decision applying the stay to a non-debtor solely because of an apprehended later use against the debtor of offensive collateral estoppel or the precedential effect of an adverse decision. If such apprehension could support application of the stay, there would be vast and unwarranted interference with creditors' enforcement of their rights against non-debtor co-defendants." The same principle applies here. The mere fact that the Committee desires to pursue litigation that might be satisfied through proceeds of the D&O Policies is insufficient under *Queenie* and *Picard* to stay the Actions because the Committee has not obtained a judgment and the estate does not have a right under the Bankruptcy Code to D&O Policy proceeds over other claimants.

28.     In addition, numerous decisions in the Circuit (and others) have consistently held that complete indemnification for violations of securities laws is contrary to public policy. *See e.g.*, *Heizer Corp. v. Ross*, 601 F.2d 330, 334 (7th Cir. 1979) ("A securities wrongdoer should not be permitted to escape loss by shifting his entire responsibility to another party."); *Globus v. Law Research Service, Inc.*, 418 F.2d 1276, 1288–89 (2d Cir. 1969). Thus, even if a limited right to indemnification potentially exists under the D&O Policies, such indemnification is not the absolute right the Committee proclaims, and any supposed depletion of the Policies that could result from the Actions is entirely speculative and falls well short of the "immediate adverse economic consequence" that the Second Circuit has said is required to stay claims against non-debtors. *Queenie*, 321 F.3d at 287.

29.     As a fallback argument, the Committee claims that the Policies' "Side B" (which purportedly provides coverage to SunEdison when it indemnifies directors and officers) may be depleted as a result of the Actions.  This, however, again assumes that the D&O Defendants have an absolute right to indemnification under SunEdison's Amended and Restated Certificate of Incorporation.  Mot. ¶ 28.  But they do not.

30.     Under Section 145 of the Delaware General Corporation Law—which is applicable to SunEdison as a Delaware corporation[10]—SunEdison may indemnify directors and officers "*if the person acted in good faith* and in a manner the person reasonably believed to be in or not opposed to the best interests of the corporation, and, with respect to any criminal action or proceeding, had no reasonable cause to believe the person's conduct was unlawful."  D.G.C.L. § 145(a) (emphasis added).  However, as this Court previously held, such a qualified "right" to indemnification is not absolute, and cannot support application of the automatic stay to a third-party action based upon the mere possibility that it could impact the debtor's estate.  *See In re Bidermann*, 200 B.R. at 784–85 ("Finally, Mr. Bidermann's assertion of an indemnification claim does not justify extending the stay. Under section 145 of the Delaware corporation law and the debtor's by-laws, the debtor must indemnify Mr. Bidermann if he was sued because he is an officer, director or agent of the debtor, and he acted in good faith and in a manner that he reasonably believed to be in the best interests of the debtor.  The right to indemnity is not absolute, and Mr. Bidermann must ultimately demonstrate his entitlement to indemnity under the criteria set forth in the statute and the by-laws.  This weighs against extending the stay."); *see also In re SDNY 19 Mad Park*, 2014 WL 4473873, at *2 ("The fact that a Debtor may have to

---

[10]   *See* SunEdison, Inc. Amended and Restated Certificate of Incorporation, which is attached as Exhibit B to the Declaration of Jordan A. Goldstein.

indemnify a third-party is alone not a sufficient basis to extend the automatic stay to that party").[11]

31.      The Committee also incorrectly claims that it "intends to assert many of these same claims" (*i.e.*, the same claims Plaintiffs have brought) against the D&O Defendants.  In fact, the Committee does not intend to assert *any* of the claims Plaintiffs have brought, which sound entirely under federal and state securities laws, and are not among the claims the Committee intends to bring.  Mot. ¶ 3.  Thus, rather than achieving purported efficiencies by allowing the Creditors' Committee to proceed with its claims against the D&O Defendants while other actions are stayed, the Committee blatantly seeks only to jump to the front of the line in recovering proceeds under the D&O Policies *for itself*.  The automatic stay does not entitle the Creditors' Committee to a headstart over shareholder litigants in receiving funds under the D&O Policies.

**D.    *The Committee's Motion Does Not Support Issuance Of An Injunction Under Section 105.***

32.      As an alternative, the Committee seeks an injunction against the Actions under section 105(a) of the Bankruptcy Code.  To obtain injunctive relief under section 105, a debtor must demonstrate (i) a reasonable likelihood of a successful reorganization, (ii) the risk of imminent, irreparable harm to its estate or ability to reorganize, (iii) that the threatened injury to the debtor absent the injunction outweighs the threatened harm an injunction might cause the party to be enjoined, and (iv) that the granting of the injunction will not disserve the public

---

[11]    Though the Committee relies upon *Circle K. Corp. v. Marks (In re Circle K Corp.)*, 121 B.R. 257 (Bankr. D. Ariz. 1990), which holds that the mere possibility that a debtor will be required to indemnify directors and officers permits a non-debtor action against them to be enjoined, that logic has been repeatedly rejected in this District, including by this Court.  *See, e.g.*, *In re Bidermann*, 200 B.R. at 784–85; *see also In re Adelphia Communications Corp.*, 298 B.R. 49, 53 (S.D.N.Y. 2003) (refusing to follow *Circle K*).

interest.  *In re United Health Care Org.*, 210 B.R. 228, 233 (S.D.N.Y. 1997); *see also In re Granite Partners, L.P.*, 194 B.R. at 337 (third-party actions should be stayed only under section 105, not section 362, and such an injunction should issue only where such third-party suits "threaten to thwart or frustrate the debtor's reorganization efforts"); *In re Zale Corp.*, 62 F.3d 746, 765 (5th Cir. 1995) (ordinary standard for a preliminary injunction applies to injunctions under section 105).

33.     In cases extending the protections of the automatic stay to stop litigation against non-debtors, the Second Circuit and courts in this District have made clear the remedy is available only under "extraordinary circumstances." *Picard*, 762 F.3d at 213 ("[I]t is 'an extraordinary exercise of discretion to use [section 105] to stay a third party action not involving the debtor' ….") (quoting *In re G.S.F. Corp.*, 938 F.2d 1467, 1474 (1st Cir. 1991)).  Such circumstances are normally limited to situations where "a claim against the non-debtor will have an *immediate* adverse economic consequence for the debtor's estate." *Queenie*, 321 F.3d at 287 (emphasis added).

34.     The Committee's Motion falls well short of this exacting standard.  Here, the Committee has not made even the most basic showing that permitting the Actions to proceed would cause imminent and irreparable harm to SunEdison such that they would interfere with a successful reorganization.  Irreparable harm in the context of a reorganization is shown where the failure to enjoin the actions "would embarrass, burden, delay or otherwise impede the reorganization." *Alert Holdings, Inc. v. Interstate Protective Servs., Inc*., 148 B.R. 194, 200 (Bankr. S.D.N.Y. 1992).  Strict proof, not conclusory allegations are needed to sustain this burden. *Dore & Assocs. Contracting, Inc. v. American Druggists' Ins. Co.*, 54 B.R. 353, 358 (Bankr. W.D. Wis. 1985) ("Speculative and conclusory allegations are clearly insufficient."); *In*

17

*re Phar-Mor, Inc. Sec. Litig.*, 166 B.R. 57, 62–63 (W.D. Pa. 1994) (in denying a request for an injunction under section 105 of the Bankruptcy Code, the court found the allegation that pursuit of an action against debtors' auditor would delay the reorganization was "mere speculation [that did] not constitute the type of proof required to entitle the Debtors to an injunction").

35.    It is not credible for the Committee to claim that pursuit of claims against D&O Defendants will interfere with the Debtors' successful reorganization given that the *Committee itself* intends to pursue such claims against the D&O Defendants.  Mot. ¶ 3.  More broadly, the Committee has provided this Court with absolutely no evidence of imminent and likely irreparable harm to the reorganization as a result of Plaintiffs' pursuit of the Actions, the necessary criterion for issuance of an injunction under section 105.  *See Picard*, 762 F.3d at 213 (holding that a party seeking an injunction under section 105 must "show[] that it is 'likely' as opposed to 'possible'" that a third-party suit will impair the estate).

36.    There is no reason to believe that SunEdison's ability to successfully reorganize is threatened by the mere possibility that the Actions will deplete estate property.  While some of the D&O Actions may have an impact on the SunEdison estate, Plaintiffs' Actions are *not* likely to have such "an immediate adverse economic consequence," given that the Actions (i) do not name the debtor as a party, (ii) do not give rise to an absolute right to indemnification by the D&O Defendants, and (iii) will not impair the Debtors' ability to reorganize (given that the Committee intends to bring its own claims against the D&O Defendants).

37.    In addition, some courts have applied an even more stringent standard when a debtor seeks to enjoin an action against executive officers in a statutory securities action, as is the case here.  In *Duval v. Gleason*, 1990 WL 261364 (N.D. Cal. Oct. 19, 1990), the court reasoned:

> Unlike a products liability action in which a suit against an officer is effectively one against the corporation itself, the present securities action seeks to attach liability for the specific fraudulent acts of named individuals. Thus the securities laws allow for the independent liability of the officers or other parties involved, and proceedings like the present may go forward without the participation of the corporation. To hold otherwise would allow the Bankruptcy Act to create a sizable loophole through which malfeasant corporate officers and directors and their insurers could escape, at least temporarily, all civil prosecutions of their individual fraudulent acts by having the corporation file a bankruptcy petition. We cannot agree that the protections afforded by the Bankruptcy Act were intended to be so all-encompassing as to shield such non-debtor third parties.

*Id.* at *4; *see also GATX Aircraft Corp. v. M/V Courtney Leigh*, 768 F.2d 711, 716 (5th Cir. 1985); *Williford v. Armstrong World Indus., Inc.*, 715 F.2d 124, 128 (4th Cir. 1983).

38.    Moreover, this Court already controls access to the proceeds of the D&O Policies. (The Court expressly stated that its control over access to the Policies did not constitute a determination that the Policies are property of the estate.  *See* Dkt. 368, at 3.)  Pursuant to this oversight, the Court has already protected the Committee from depletion of the D&O Policies— the D&O Defendants will have to come to this Court to request further advances, and the Committee will have an opportunity to respond.  Given this protection, there is no reason for this Court to exercise "extraordinary discretion" to deny Plaintiffs their day in court as against non-debtors.[12]

39.    At bottom, the Committee's Motion is a hypothetical exercise based upon a parade of horribles that is contradicted by both the facts and the law, as well as the Committee's

---

[12]    The Committee argues in a footnote that an "'identity of interest' between SUNE and the directors and officers named in the D&O Actions" supports entry of "the litigation stay against the D&O Actions." Mot. ¶ 41 n.10.  Of course, if this were true, the Committee's own attempt to sue those same D&Os should likewise be enjoined.  In any event, such an "identity of interest" requires not only that "the claim clearly arises out of the defendant's actions in his capacity as the debtor's officer," but also that the director or officer be "undisputedly entitled to indemnity." *Bidermann*, 200 B.R. at 783–84.  As the D&O Defendants are *not* "undisputedly entitled to indemnity," *see, e.g.*, *supra* ¶¶ 24–30, application of the automatic stay to them is accordingly barred.

own actions in pursuing claims against D&O Defendants.  Plaintiffs respectfully request that the

Motion be denied.

## II.    Even If A Stay Were Granted As To The D&O Defendants, It Should Be Denied As To The Underwriter Defendants.

40.    As discussed above, the basis for granting the Committee's overbroad and

unnecessary Motion is speculative and remote, and the Motion should be denied on that basis.

With respect to the Underwriter Defendants, there is an even stronger basis to deny the

Committee's Motion, as the Committee does not cite *any* basis for applying the section 362

automatic stay or the section 105 injunctive provision to Plaintiffs' claims against the

Underwriter Defendants.[13]  As described by the Committee, none of the D&O Policies provides

for any insurance proceeds to be paid to the Underwriter Defendants.  Thus, Plaintiffs' claims

against the Underwriter Defendants will not have any impact on the D&O Policies or the Debtors

(let alone the immediate and adverse impact on the Debtors that would be required to enjoin such

a third-party suit).

41.    Moreover, the Underwriter Defendants and the D&O Defendants are unrelated to

one another, and the claims against each are factually and legally distinct.  As such, even if there

is some factual overlap between the two sets of claims, there is no "identity" between the

Underwriter Defendants and the D&O Defendants that would support any stay as to the D&O

---

[13]    The Motion likewise fails to assert any basis for staying the *Canyon I* plaintiffs' claims against GLBL.  Not only is a stay against GLBL not addressed in the Committee's Motion, but GLBL is readily distinguishable from the debtor or related entities against which the automatic stay has been applied (*e.g.*, wholly owned subsidiaries of a debtor).  *See, e.g.*, *Queenie*, 321 F.3d at 287–88.  As such, the automatic stay is likewise inapplicable to the claims in *Canyon I* against GLBL.  In any event, even if a stay were applied to the claims in *Canyon I* against GLBL, it should be denied with respect to the claims in that action against the remaining defendants, and certainly against the Underwriter Defendants.  *See id.* at 288 (applying automatic stay to wholly owned subsidiary of debtor, but denying stay as to claims against the remaining non-bankrupt defendants).

Defendants being extended to the Underwriter Defendants. *See N.J. Carpenters Health Fund*, 2016 WL 4705169, at *3 ("The Underwriter Defendants and the [debtors] are separate entities, and Plaintiff's claims against the various Defendants are factually related but legally distinct."). Accordingly, any stay or injunctive relief, if imposed upon the Actions as to Plaintiffs' claims against the D&O Defendants, should not be extended to Plaintiffs' separate claims against the Underwriter Defendants.

### III.    <u>Any Mediation Must Not Interfere With Plaintiffs' Claims Against The Underwriter Defendants.</u>

42.    To the extent a mediation is ordered as to the D&O Defendants, such a proceeding should not become an excuse to delay Plaintiffs' independent claims against the Underwriter Defendants. For example, Plaintiffs have asserted California securities claims primarily against the Underwriter Defendants, rather than the D&O Defendants. Those claims are legally distinct from the federal claims against the D&O Defendants, have different elements, and different defenses. Moreover, Plaintiffs' federal Securities Act claims against the Underwriter Defendants are factually distinct from their federal claims against the D&O Defendants, and concern defendants separate from the D&O Defendants. *Cf. N.J. Carpenters Health Fund*, 2016 WL 4705169, at *3 ("[T]he argument that Plaintiff's claims against the Underwriter Defendants and the Debtor Defendants are 'inextricably interwoven' likewise fails. The Underwriter Defendants and the [debtors] are separate entities, and Plaintiff's claims against the various Defendants are factually related but legally distinct."). Accordingly, any mediation as to the D&O Defendants should not be permitted to bar or otherwise delay Plaintiffs from pursuing their independent causes of action against the Underwriter Defendants.

43.    Plaintiffs respectfully request that any mediation, if ordered, be solely limited to claims against SunEdison and/or its directors and officers, but should not encompass any of Plaintiffs' claims against the Underwriter Defendants.[14]

**<u>CONCLUSION</u>**

For the reasons above, Plaintiffs respectfully request that the Committee's Motion be denied in its entirety.  To the extent the Committee's Motion is granted, Plaintiffs further request that it be limited—at most—to staying claims against the D&O Defendants, but should permit Plaintiffs' claims against the remaining defendants to proceed.  Finally, to the extent this Court orders the mediation of certain claims arising from SunEdison's stock offerings, Plaintiffs respectfully request that any such mediation exclude Plaintiffs' claims against (i) the Underwriter Defendants and (ii) GLBL.  Further, Plaintiffs request, in the event the mediation is unsuccessful, that Plaintiffs remain entitled to pursue their claims outside of bankruptcy in *Kearny* and *Canyon II* against the Underwriter Defendants, and in *Canyon I* against the Underwriter Defendants and GLBL.[15]

---

[14]    For the reasons discussed above, *see supra* n.13, any mediation should not be allowed to interfere with the claims in *Canyon I* against GLBL.

[15]    Plaintiffs reserve their right to supplement this Objection in advance or in connection with the hearing on the Motion, and to join in or adopt any responses by other parties to this proceeding, and to be heard on the Motion.

DATED: December 1, 2016
      New York, NY

Respectfully submitted,


/s/  *Andrew J. Rossman*

**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**

Andrew J. Rossman

Jordan A. Goldstein

51 Madison Ave., 22nd Floor

New York, NY 10010

Telephone: (212) 849-7000

Facsimile: (212) 849-7100

*Counsel To Plaintiffs Kearny Investors S.à r.l.,*
*Powell Investors L.P., and Powell Investors II*
*Limited Partnership for Claims Against All*
*Defendants Except Morgan Stanley & Co., LLC*


Jonathan E. Pickhardt

51 Madison Ave., 22nd Floor

New York, NY 10010

Telephone: (212) 849-7000

Facsimile: (212) 849-7100

*Counsel To Plaintiffs Canyon Capital Advisors LLC,*
*Canyon Balanced Master Fund, Ltd., Canyon*
*Capital Arbitrage Master Fund, Ltd., Canyon-GRF*
*Master Fund II, L.P., Canyon Value Realization*
*Fund, L.P., The Canyon Value Realization Master*
*Fund, L.P., and Permal Canyon IO Ltd. for Claims*
*Against All Defendants Except Morgan Stanley &*
*Co., LLC*

**BAUTE CROCHETIERE & GILFORD LLP**

Frank J. Broccolo *(pro hac application forthcoming)*
Mark D. Baute *(pro hac application forthcoming)*
Attorneys for Plaintiffs

777 S. Figueroa Street
Suite 4900
Los Angeles, CA 90017
Telephone: (213) 630-5000
Facsimile: (213) 683-1225

*Counsel To Plaintiffs Canyon Capital Advisors LLC,
Canyon Balanced Master Fund, Ltd., Canyon
Capital Arbitrage Master Fund, Ltd., Canyon-GRF
Master Fund II, L.P., Canyon Value Realization
Fund, L.P., The Canyon Value Realization Master
Fund, L.P., Permal Canyon IO Ltd., Kearny
Investors S.à r.l., Powell Investors L.P., and Powell
Investors II Limited Partnership*