**Hearing Date: January 12, 2017 at 10:30 a.m. (Prevailing Eastern Time)**
**Objection Deadline: January 5, 2017 at 4:00 p.m. (Prevailing Eastern Time)**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Jay M. Goffman
J. Eric Ivester
Four Times Square
New York, New York 10036-6522
Telephone: (212) 735-3000
Fax: (212) 735-2000

-and-

James J. Mazza, Jr. (admitted *pro hac vice*)
Louis S. Chiappetta (admitted *pro hac vice*)
155 N. Wacker Dr.
Chicago, Illinois 60606-1720
Telephone: (312) 407-0700
Fax: (312) 407-0411

*Counsel for Debtors*
  *and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | : | |
| **In re:** | : | **Chapter 11** |
| | : | |
| **SUNEDISON, INC., *et al.*,** | : | **Case No. 16-10992 (SMB)** |
| | : | |
| **Debtors.**[1] | : | **Jointly Administered** |
| | : | |
| | : | |

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number are as follows: SunEdison, Inc. (5767); SunEdison DG, LLC (N/A); SUNE Wind Holdings, Inc. (2144); SUNE Hawaii Solar Holdings, LLC (0994); First Wind Solar Portfolio, LLC (5014); First Wind California Holdings, LLC (7697); SunEdison Holdings Corporation (8669); SunEdison Utility Holdings, Inc. (6443); SunEdison International, Inc. (4551); SUNE ML 1, LLC (3132); MEMC Pasadena, Inc. (5238); Solaicx (1969); SunEdison Contracting, LLC (3819); NVT, LLC (5370); NVT Licenses, LLC (5445); Team-Solar, Inc. (7782); SunEdison Canada, LLC (6287); Enflex Corporation (5515); Fotowatio Renewable Ventures, Inc. (1788); Silver Ridge Power Holdings, LLC (5886); SunEdison International, LLC (1567); Sun Edison LLC (1450); SunEdison Products Singapore Pte. Ltd. (7373); SunEdison Residential Services, LLC (5787); PVT Solar, Inc. (3308); SEV Merger Sub Inc. (N/A); Sunflower Renewable Holdings 1, LLC (6273); Blue Sky West Capital, LLC (7962); First Wind Oakfield Portfolio, LLC (3711); First Wind Panhandle Holdings III, LLC (4238); DSP Renewables, LLC (5513); Hancock Renewables Holdings, LLC (N/A); EverStream HoldCo Fund I, LLC (9564); Buckthorn Renewables Holdings, LLC (7616); Greenmountain Wind Holdings, LLC (N/A); Rattlesnake Flat Holdings, LLC (N/A); Somerset Wind Holdings, LLC (N/A); SunE Waiawa Holdings, LLC (9757); SunE MN Development, LLC (8669); SunE MN Development Holdings, LLC (5388); and SunE Minnesota Holdings, LLC (8926).  The address of the Debtors' corporate headquarters is 13736 Riverport Dr., Maryland Heights, Missouri 63043.

|  | : |  |
|---|---|---|
| **OFFICIAL COMMITTEE OF** | : | |
| **UNSECURED CREDITORS, on behalf of** | : | |
| **the estates of the Debtors,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Adversary Proceeding No. 16-01257 (SMB)** |
| | : | |
| **JUAN M. RODRIGUEZ BELTRAN,** *et al.*, | : | |
| | : | |
| **Defendants.** | : | |

## DEBTORS' MOTION TO INTERVENE IN ADVERSARY PROCEEDING

SunEdison, Inc. ("SUNE") and certain of its affiliates, the debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors" and, together with their non-Debtor affiliates, "SunEdison" or the "Company"),[2] hereby move (the "Motion") for an entry of an order pursuant to section 1109(b) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 7024 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 24 of the Federal Rules of Civil Procedure (the "Federal Rules") authorizing the Debtors to intervene in the above-captioned adversary proceeding (the "Adversary Proceeding").[3] In support of the Motion, the Debtors respectfully represent as follows:

### JURISDICTION AND VENUE

1.      This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue is proper under 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

---

[2]    For purposes herein, the definition of SunEdison and the Company does not include Terraform Power, Inc. and Terraform Global, Inc., and each of their respective direct and indirect subsidiaries, unless otherwise provided.

[3]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in complaint filed in the Adversary Proceeding (the "Adversary Complaint") [Adv. Pro. Docket No. 1].

## BACKGROUND

2.      On November 2, 2016 the Official Committee of the Unsecured Creditors' (the "Committee") commenced the Adversary Proceeding and filed a motion for declaratory relief that the D&O Policies are property of the Debtors' estate and seeking an order to enforce the automatic stay and hold all actions against the directors and officers (the "D&O Actions") in abeyance pending further order of the Court [Adv. Pro. Docket No. 2] (the "D&O Litigation Stay Motion").

3.      On November 4, 2016, the Committee filed a motion in the main case seeking standing to pursue estate claims for alleged breaches of fiduciary duty against certain current and former SunEdison directors and officers [Docket No. 1550] (the "D&O Standing Motion").

4.      On November 23, 2016, the Debtors responded to both the D&O Standing Motion [Main Case Docket No. 1664] and the D&O Litigation Stay Motion [Adv. Pro. Docket No. 11] (the "Mediation/Stay Request") and detailed their agreement with the Committee to grant it standing to pursue the proposed estate claims, but not until after a good faith effort to compel mediation of those claims, along with the claims in the pending D&O Actions, and stay the underlying litigation until the mediation is concluded. The D&O Stay Motion and this underlying Adversary Proceeding would be held in abeyance pending mediation. The Committee consented to and supported the Mediation/Stay Request. [Adv. Pro. Docket No. 39].

5.      Twelve separate groups of parties (the "Response Objectors") filed objections to the Mediation/Stay Request asserting, among other things, that the Mediation/Stay Request was procedurally improper.[4] In their reply in further support of the Mediation/Stay

---

[4]      As noted in the Debtors' Mediation/Stay Reply, all of the Response Objectors embrace some form of mediation.

Request [Adv. Pro. Docket No. 41] (the "Mediation/Stay Reply"), the Debtors agreed to refile

the mediation/stay request in any form the Court may require to consider the matter on the

merits.

6.    On December 6, 2016, the Court held a status conference on the D&O

Standing Motion and the D&O Litigation Stay Motion at which a proposed consent order

between the Debtors and the Committee was presented to grant the Committee standing on the

estate's director/officer claims, but they would not be prosecuted until either (1) the request for

mediation is denied by the District Court[5] or this Court or (2) if the mediation relief is granted by

both courts, but the mediation ultimately fails.  No one objected to the consent order, which was

entered by the Court [Docket No. 1796].[6]  However, to the extent that the Debtors intend to seek

affirmative relief in the Adversary Proceeding, certain Response Objectors requested that the

Debtors formally intervene therein.  Accordingly, the Debtors hereby move to intervene in the

Adversary Proceeding to the extent necessary to advocate for mediation of the D&O Actions and

the estate claims and a temporary stay thereof in favor of mediation.

7.    On December 19, 2016, at the status conference held in the District Court,

Judge Castel ordered a limited stay of the D&O Actions pending in the District Court through

March 31, 2017 and directed all parties involved in the D&O Actions pending in the District

Court to participate in the mediation.[7] During the limited stay period, the defendants will be able

---

[5]    Pursuant to an October 4, 2016 Transfer Order of the U.S. Judicial Panel on Multidistrict Litigation and an
October 13, 2016 JPML Final Conditional Transfer Order, numerous actions against SUNE, the YieldCos, the
Debtors' current and former directors and officers, the underwriters of certain securities and debt offerings of
the Debtors or the Yieldcos, and SUNE's independent auditor (the "Multidistrict Litigation") have been
centralized and consolidated before the Honorable Judge P. Kevin Castel in the United States District Court for
the Southern District of New York (the "District Court") (MDL No. 2742).

[6]    The order also lifted the automatic stay for the limited purpose of permitting the Debtors and the Committee to
seek mediation/stay relief in the District Court.

[7]    Judge Castel's order is attached as Exhibit C.

4

to file pre-motion letters that address the arguments that may be made in any future motions to

dismiss and the plaintiffs can respond to those letters.  In the responses, the plaintiffs can request

permission to further amend the complaints and respond to the merits of the arguments made in

the letters.

## RELIEF REQUESTED

8.      By this Motion, the Debtors seek entry of an order, pursuant to section

1109 of the Bankruptcy Code and Federal Rule 24, made applicable hereto by Bankruptcy Rule

7024, to intervene in the Adversary Proceeding.  If permitted to intervene, the Debtors request

that the Court deem the Debtors additional plaintiffs in the Adversary Complaint for the limited

purpose of seeking relief consistent with that set forth in the Debtors' Mediation/Stay Request

and Mediation/Stay Reply.

## APPLICABLE AUTHORITY

**A.      The Debtors Have An Absolute Right To Intervene Under Federal Rule 24(a)(1).**

9.      Federal Rule 24(a)(1), made applicable hereto by Bankruptcy Rule 7024,

provides that "[o]n timely motion, the court must permit anyone to intervene who . . . is given an

unconditional right to intervene by a federal statute." Fed. R. Civ. P. 24(a)(1). Section 1109(b) of

the Bankruptcy Code provides that "[a] party in interest, including the debtor . . . may raise and

may appear and be heard on any issue in a case" under chapter 11 of the Bankruptcy Code.

Thus, the Debtors have an unqualified right to intervene in the Adversary Proceeding.

10.      The unconditional right of a party in interest under section 1109(b) of the

Bankruptcy Code to intervene in matters that arise under chapter 11 includes the right to

intervene in adversary proceedings. See Term Loan Holder Comm. v. Ozer Group, L.L.C. (In re

Caldor Corp.), 303 F.3d 161, 169 (2nd Cir. 2002) ("We hold, therefore, that the phrase 'any issue

in a case' plainly grants a right to raise, appear and be heard on any issue regardless whether it

arises in a contested matter or an adversary proceeding."); <u>Iridium India Telecom Ltd. v.</u>

<u>Motorola, Inc.</u>, 165 Fed. Appx. 878, 879 (2d Cir. 2005) (same); 7 Collier on Bankruptcy

¶ 1109.04[2][d] (16th ed. 2016) ("Civil Rule 24(a)(1) expressly provides that any entity may

intervene in an adversary proceeding when a person 'is given an unconditional right to intervene

by a federal statute,' and section 1109(b) qualifies as a statute of this kind").

11.    Thus, the Debtors have an unconditional right to intervene in the Adversary

Proceeding.

**B.    The Debtors Are Entitled To Intervene Under Federal Rule 24(a)(2).**

12.    "[A] party in interest under 11 U.S.C. § 1109(b) has an unconditional right to

intervene in an adversary proceeding under [Federal Rule] 24(a)(1) and need not make a separate

showing under [Federal Rule] 24(a)(2)."  <u>Iridium</u>, 165 F. App'x at 879.  However, for the

avoidance of doubt, in addition to their absolute right to intervene under Federal Rule 24(a)(1),

the Debtors also are entitled to intervene under Federal Rule 24(a)(2).  Federal Rule 24(a)(2), as

incorporated through Bankruptcy Rule 7024, provides that "[o]n timely motion, the court must

permit anyone to intervene who . . . claims an interest relating to the property or transaction that is

the subject of the action, and is so situated that disposing of the action may as a practical matter

impair or impede the movant's ability to protect its interest, unless existing parties adequately

represent that interest." <u>See</u> <u>also</u> <u>Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC</u>, 550

B.R. 241, 247-48 (Bankr. S.D.N.Y. 2016).

13.    The Debtors unquestionably have an interest in the D&O Policies that are

the subject of this Adversary Proceeding.  And, as further set forth in Mediation/Stay Request, if

those policies continue to be eroded and ultimately are exhausted, the estate will suffer a

significantly decreased recovery to the detriment of all creditors and other stakeholders.  If the

relevant parties are compelled to mediate, the Committee will forego bringing yet more claims

covered under the D&O Policies.  Thus, the Debtors' intervention in the Adversary Proceeding to pursue mediation and a temporary stay of the D&O Actions in favor of mediation, for the benefit of the Debtors' estates and all parties in interest, is warranted.

## C.    The Debtors' Motion Is Timely.

14.    "Among the factors to be taken into account to determine whether a motion to intervene is timely are: (a) the length of time the applicant knew or should have known of his interest before making the motion; (b) prejudice to existing parties resulting from the applicant's delay; (c) prejudice to applicant if the motion is denied; and (d) presence of unusual circumstances militating for or against a finding of timeliness."  Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC, 550 B.R. 241, 248 (Bankr. S.D.N.Y. 2016)  (quoting United States v. State of New York, 820 F.2d 554, 557 (2d Cir. 1987).  "The most significant criterion is whether the delay in moving for intervention has prejudiced any of the existing parties."  Id. (quoting Hartford Fire Ins. Co. v. Mitlof, 193 F.R.D. 154, 160 (S.D.N.Y. 2000)).

15.    Here, the Debtors have not delayed in moving to intervene, and have done so at the express request of certain Response Objectors.  Further, no party to the Adversary Proceeding will be prejudiced by the Debtors' intervention, as the Committee supports and has adopted the request for relief sought in the Debtors' Mediation/Stay Request and Mediation/Stay Reply.

## FEDERAL RULE 24(C)

16.    Pursuant to Federal Rule 24(c), attached hereto as Exhibit B is a copy of the Committee's Adversary Complaint, which the Debtors will join as Plaintiffs for the limited purpose of seeking relief consistent with that set forth in the Debtors' Mediation/Stay Request and Mediation/Stay Reply upon entry of an order, substantially in the form attached hereto as Exhibit A, authorizing the Debtors to intervene as plaintiffs in the Adversary Proceeding.

**CONCLUSION**

17.    For the reasons set forth herein, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as <u>Exhibit A</u>, authorizing the Debtors to intervene as plaintiffs in the Adversary Proceeding.


**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

Dated: New York, New York
       December 22, 2016

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By: */s/ J. Eric Ivester*
     Jay M. Goffman
     J. Eric Ivester
     Four Times Square
     New York, New York 10036-6522
     Telephone: (212) 735-3000
     Fax: (212) 735-2000

     -and-

     James J. Mazza, Jr. (admitted *pro hac vice*)
     Louis S. Chiappetta (admitted *pro hac vice*)
     155 N. Wacker Dr.
     Chicago, Illinois 60606-1720
     Telephone: (312) 407-0700
     Fax: (312) 407-0411

     *Counsel for Debtors and Debtors in Possession*

## EXHIBIT A

**Proposed Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | : | **Chapter 11** |
| | : | |
| **SUNEDISON, INC.,** *et al.*, | : | **Case No. 16-10992 (SMB)** |
| | : | |
| Debtors.[1] | : | **Jointly Administered** |
| | : | |
| | : | |

| | | |
|---|---|---|
| **OFFICIAL COMMITTEE OF** | : | |
| **UNSECURED CREDITORS**, on behalf of | : | |
| the estates of the Debtors, | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Adversary Proceeding No. 16-01257 (SMB)** |
| | : | |
| **JUAN M. RODRIGUEZ BELTRAN,** *et al.*, | : | |
| | : | |
| **Defendants.** | : | |

**ORDER GRANTING DEBTORS' MOTION TO INTERVENE IN ADVERSARY
PROCEEDING**

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number are as follows: SunEdison, Inc. (5767); SunEdison DG, LLC (N/A); SUNE Wind Holdings, Inc. (2144); SUNE Hawaii Solar Holdings, LLC (0994); First Wind Solar Portfolio, LLC (5014); First Wind California Holdings, LLC (7697); SunEdison Holdings Corporation (8669); SunEdison Utility Holdings, Inc. (6443); SunEdison International, Inc. (4551); SUNE ML 1, LLC (3132); MEMC Pasadena, Inc. (5238); Solaicx (1969); SunEdison Contracting, LLC (3819); NVT, LLC (5370); NVT Licenses, LLC (5445); Team-Solar, Inc. (7782); SunEdison Canada, LLC (6287); Enflex Corporation (5515); Fotowatio Renewable Ventures, Inc. (1788); Silver Ridge Power Holdings, LLC (5886); SunEdison International, LLC (1567); Sun Edison LLC (1450); SunEdison Products Singapore Pte. Ltd. (7373); SunEdison Residential Services, LLC (5787); PVT Solar, Inc. (3308); SEV Merger Sub Inc. (N/A); Sunflower Renewable Holdings 1, LLC (6273); Blue Sky West Capital, LLC (7962); First Wind Oakfield Portfolio, LLC (3711); First Wind Panhandle Holdings III, LLC (4238); DSP Renewables, LLC (5513); Hancock Renewables Holdings, LLC (N/A); EverStream HoldCo Fund I, LLC (9564); Buckthorn Renewables Holdings, LLC (7616); Greenmountain Wind Holdings, LLC (N/A); Rattlesnake Flat Holdings, LLC (N/A); Somerset Wind Holdings, LLC (N/A); SunE Waiawa Holdings, LLC (9757); SunE MN Development, LLC (8669); SunE MN Development Holdings, LLC (5388); and SunE Minnesota Holdings, LLC (8926).  The address of the Debtors' corporate headquarters is 13736 Riverport Dr., Maryland Heights, Missouri 63043.

Upon the motion (the "Motion")[2] of the Debtors for an Order, pursuant to section 1109 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 7024 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 24 of the Federal Rules of Civil Procedure (the "Federal Rules"), authorizing the Debtors to intervene in the Adversary Proceeding; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein, it is hereby,

**ORDERED, ADJUDGED, AND DECREED THAT:**

1.      The Motion is granted subject to the limits and conditions set forth herein.

2.      The Debtors are permitted to intervene in the Adversary Proceeding as plaintiffs for the limited purpose of seeking relief consistent with that set forth in the Debtors' Mediation/Stay Request and Mediation/Stay Reply under the terms of this Order.

3.      The caption of the Adversary Proceeding shall be amended to include the Debtors as intervenor-plaintiffs.

4.      The Debtors are authorized to take any and all actions to protect their interests in the Adversary Proceeding.

5.      The Debtors and their counsel will coordinate with, and use reasonable efforts to avoid duplicating the efforts of, the Committee and its counsel.

6.      The Debtors are permitted to (a) file their own papers, (b) argue and respond to arguments in Court, (c) raise issues of concern at hearings and case status conferences, (d) question and interpose objections at depositions, (e) ask questions at any trial or hearing, and (f) object to any settlement of the Adversary Proceeding.

---

[2]      Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

7.      This Court shall retain jurisdiction with respect to all matters arising from

or related to the implementation or interpretation of this Order.

Dated: New York, New York
           _____, 2017

_____
The Honorable Judge Stuart M. Bernstein
UNITED STATES BANKRUPTCY JUDGE

## **EXHIBIT B**

**Adversary Complaint**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Matthew S. Barr
David J. Lender
Theodore E. Tsekerides
Joshua S. Amsel

*Counsel to Official Committee of Unsecured Creditors*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : | Case No. 16-10992 (SMB) |
| SUNEDISON, INC., *et al.*, | : | (Jointly Administered) |
|  | : |  |
| Debtors.[1] | : |  |
|  | : |  |
| OFFICIAL COMMITTEE OF UNSECURED | : |  |
| CREDITORS, on behalf of the estates of the | : |  |
| Debtors, | : |  |
|  | : | Adversary Proceeding |
| Plaintiff, | : | No. 16-_____ |
|  | : |  |
| v. | : |  |
|  | : |  |
| JUAN M. RODRIGUEZ BELTRAN, | : |  |
| (contd.) | : |  |

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number are as follows: SunEdison, Inc. (5767); SunEdison DG, LLC (N/A); SUNE Wind Holdings, Inc. (2144); SUNE Hawaii Solar Holdings, LLC (0994); First Wind Solar Portfolio, LLC (5014); First Wind California Holdings, LLC (7697); SunEdison Holdings Corporation (8669); SunEdison Utility Holdings, Inc. (6443); SunEdison International, Inc. (4551); SUNE ML 1, LLC (3132); MEMC Pasadena, Inc. (5238); Solaicx (1969); SunEdison Contracting, LLC (3819); NVT, LLC (5370); NVT Licenses, LLC (5445); Team-Solar, Inc. (7782); SunEdison Canada, LLC (6287); Enflex Corporation (5515); Fotowatio Renewable Ventures, Inc. (1788); Silver Ridge Power Holdings, LLC (5886); SunEdison International, LLC (1567); Sun Edison LLC (1450); SunEdison Products Singapore Pte. Ltd. (7373); SunEdison Residential Services, LLC (5787); PVT Solar, Inc. (3308); SEV Merger Sub Inc. (N/A); Sunflower Renewable Holdings 1, LLC (6273); Blue Sky West Capital, LLC (7962); First Wind Oakfield Portfolio, LLC (3711); First Wind Panhandle Holdings III, LLC (4238); DSP Renewables, LLC (5513); Hancock Renewables Holdings, LLC (N/A); EverStream HoldCo Fund I, LLC (9564); Buckthorn Renewables Holdings, LLC (7616); Greenmountain Wind Holdings, LLC (N/A); Rattlesnake Flat Holdings, LLC (N/A); Somerset Wind Holdings, LLC (N/A); SunE Waiawa Holdings, LLC (9757); SunE Minnesota Holdings, LLC (8926); SunE MN Development Holdings, LLC (5388); and SunE MN Development, LLC (8669). The address of the Debtors' corporate headquarters is 13736 Riverport Drive, Maryland Heights, Missouri 63043.

PYRAMID HOLDINGS, INC.,                          :
ABHISHEK AGRAWAL, IRON                           :
WORKERS MID-SOUTH PENSION FUND,                  :
ANTON S. BADRI, MITESH PATEL,                    :
COBALT PARTNERS, LP,COBALT                       :
PARTNERS II, LP, COBALT OFFSHORE                 :
MASTER FUND, LP, COBALT KC                       :
PARTNERS, LP, OKLAHOMA                           :
FIREFIGHTERS PENSION AND                         :
RETIREMENT SYSTEM, GLENVIEW                      :
CAPITAL PARTNERS, L.P. GLENVIEW                  :
INSTITUTIONAL PARTNERS, L.P.,                    :
GLENVIEW CAPITAL MASTER FUND,                    :
LTD., GLENVIEW CAPITAL                           :
OPPORTUNITY FUND, L.P., GLENVIEW                 :
OFFSHORE  OPPORTUNITY MASTER                     :
FUND, LTD., OMEGA CAPITAL                        :
INVESTORS, L.P.,OMEGA CAPITAL                    :
PARTNERS, L.P., OMEGA EQUITY                     :
INVESTORS, L.P.,OMEGA OVERSEAS                   :
PARTNERS, LTD., DINA HOROWITZ,                   :
KENNETH J. MOODIE, ROBERT KUNZ,                  :
ALEXANDER Y. USENKO, JULIE DULL,                 :
ERIC O'DAY, ROBERT LINTON,                       :
RICHARD A. WHEELER, JAMES                        :
GOLDEN, JERRY JONES, CHARLES                     :
BLOOM, SHARON BURNSTEIN,                         :
TERRAFORM GLOBAL, INC., DARCY                    :
CHURCH, JOHN CHAMBLEE, KINGDON                   :
ASSOCIATES, KINGDON CREDIT                       :
MASTER FUND, L.P., KINGDON FAMILY                :
PARTNERSHIP, L.P., M. KINGDON                    :
OFFSHORE MASTER FUND, L.P.,                      :
CANYON CAPITAL ADVISORS LLC,                     :
CANYON BALANCED MASTER FUND,                     :
LTD., CANYON CAPITAL ARBITRAGE                   :
MASTER FUND, LTD., CANYON-GRF                    :
MASTER FUND II, L.P., CANYON                     :
VALUE REALIZATION FUND, L.P.,                    :
CANYON VALUE REALIZATION                         :
MASTER FUND, L.P., PERMAL CANYON                 :
IO LTD., VMT II, LLC, SIMON                      :
FRASER, JASON ALDRIDGE, KEARNY                   :
INVESTORS S.À R.L, POWELL                        :
INVESTORS L.P. and POWELL                        :
INVESTORS II LIMITED PARTNERSHIP,                :
                                                 :
    Defendants.                                 :

## ADVERSARY COMPLAINT

The Official Committee of Unsecured Creditors (the "**Creditors' Committee**") of

SunEdison, Inc. ("**SUNE**" or the "**Company**") and certain of its affiliates in the above-captioned

chapter 11 cases, as debtors and debtors-in-possession (collectively, the "**Debtors**"), by and

through its undersigned counsel, on behalf and as the representative of the Debtors' estates, as

and for its Adversary Complaint, hereby alleges as follows:

## INTRODUCTION

1.      This is an adversary proceeding for declaratory relief and to enforce the

automatic stay under section 362 or, in the alternative, section 105 of the Bankruptcy Code with

respect to pending litigation against certain current and former directors and officers of the

Debtors (collectively, the "**D&O Actions**"), among others, the majority of which cases (20 of

30) also name the Company as a defendant.[2]   As set forth herein, the automatic stay must be

enforced against the D&O Actions because the Debtors have a property interest in the

Company's directors' and officers' liability insurance policies (collectively, the "**D&O**

**Policies**"), which are likely to fund most or all of any money judgment in the D&O Actions, and

the continued prosecution of those actions threatens to deplete—if not entirely eliminate—that

property interest.

2.      The D&O Actions were commenced by the individuals and entities that are

named as defendants in this adversary proceeding (collectively, "**Defendants**").   Across the

D&O Actions, Defendants have asserted a variety of claims—including claims for, among other

things, securities fraud, breaches of fiduciary duty, and breach of duty under the Employee

Retirement Income Security Act of 1974 ("**ERISA**")—against a host of current and former

---

[2] Pursuant to an October 4, 2016 order of the U.S. Judicial Panel on Multidistrict Litigation, the D&O Actions have been consolidated before Judge P. Kevin Castel in the U.S. District Court for the Southern District of New York.

directors and officers of SUNE and various of its affiliates (including, but not limited to, SUNE's publicly-traded "YieldCo" subsidiaries, TerraForm Power, Inc. ("**TERP**") and TerraForm Global, Inc. ("**GLBL**," and together with TERP, the "**YieldCos**")) and, in many cases, SUNE itself. Certain of the D&O Actions have been brought as putative class actions, certain have been brought as shareholder derivative actions, and certain have been brought as direct actions on an individual basis by several of Defendants.

3.     The Creditors' Committee, in a separate adversary proceeding,[3] intends to assert many of these same claims—including claims for breaches of fiduciary duty and other violations of law—against many, if not all, of the same current and former directors and officers. To that end, on October 7, 2016, the Creditors' Committee served on SUNE's Board of Directors a written demand to commence litigation against these directors and officers or, in the alternative, consent to the Creditors' Committee's standing to commence such litigation on behalf of the Debtors' estates. SUNE responded through counsel on October 14, 2016 and refused to do either.

4.     Continued prosecution of the D&O Actions outside of these bankruptcy cases threatens to harm the Debtors' estates, affect the Debtors' property interest in the D&O Policies, and, potentially, affect the recoveries available to creditors of the estates. Worse yet, should any of the D&O Actions settle (with insurance money) or proceed to judgment, such settlement or judgment could very well extinguish all amounts remaining under the policies (given that the potential damages in the D&O Actions, in the aggregate, are in the billions of dollars). That would leave SUNE to both fund the entirety of its own potential liability in the D&O Actions and satisfy any indemnification obligations to those directors and officers still

---

[3] Contemporaneous with the filing of this Adversary Complaint, the Creditors' Committee intends to file a motion for, among other things, leave, standing and authority to commence and prosecute breach of fiduciary duty and other claims against certain current and former SUNE directors and officers.

litigating, all at the expense of the Debtors' estates and creditors.  Unless the automatic stay is enforced against the D&O Actions, those actions are sure to deplete, and likely wipe out, a valuable property interest of the Debtors—the D&O Policies.  Those policies cover the Debtors, the YieldCos and their respective directors and officers, and, importantly, proceeds of the policies may be an asset for distribution to unsecured creditors.[4]

5.     Specifically, unless the automatic stay is enforced against the D&O Actions, the named directors and officers, along with the YieldCos in certain of the actions, will continue to draw down on the D&O Policies as defense costs are incurred.  Given the number of D&O Actions and the number of covered individuals and entities that are named as defendants therein, such defense costs, in the absence of the relief requested herein, will soon spiral out of control, threatening to materially reduce the total coverage available under the policies long before any of the actions reach a logical settlement point or proceed to judgment.  Further, if any of the D&O Actions settle or proceed to judgment, again, in the absence of the relief requested herein, the use of insurance dollars to pay for the settlement or satisfy the judgment would naturally impair—and, eventually, preclude—the estates' (and, thus, unsecured creditors') ability to access the D&O Policies.

6.     The D&O Actions are now stayed as to SUNE pursuant to the automatic stay.  The Creditors' Committee brings this adversary proceeding pursuant to Fed. R. Bankr. P. 7001 seeking declaratory relief and to enforce the automatic stay against the D&O Actions in their entirety under section 362 or, in the alternative, section 105 of the Bankruptcy Code.

---

[4] Subject to certain conditions and carve-outs, the Debtors' unsecured creditors are entitled to the proceeds of the D&O Policies under the Litigation Trust and D/O Insurance Proceeds provisions of the Committee Settlement annexed to the Final DIP Order [ECF No. 523].

## JURISDICTION AND VENUE

7.      This is an adversary proceeding pursuant to Fed. R. Bankr. P. 7001. Pursuant to Local Bankruptcy Rule 7008-1, the Creditors' Committee consents to the entry of final orders or judgments by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

8.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

9.      Venue is proper before the Court pursuant to 28 U.S.C. § 1409.

## PARTIES

10.      The Creditors' Committee is the seven-member creditors' committee duly-appointed by the Office of the U.S. Trustee on April 29, 2016 pursuant to section 1102(a)(1) of the Bankruptcy Code.  [Docket No. 148].[5]

11.      Defendants Juan M. Rodriguez Beltran, Pyramid Holdings, Inc., Abhishek Agrawal, Iron Workers Mid-South Pension Fund, Anton S. Badri, Mitesh Patel, Cobalt Partners, LP, Cobalt Partners II, LP, Cobalt Offshore Master Fund, LP, Cobalt KC Partners, LP, Oklahoma Firefighters Pension and Retirement System, Glenview Capital Partners, L.P., Glenview Institutional Partners, L.P., Glenview Capital Master Fund, Ltd., Glenview Capital Opportunity Fund, L.P., Glenview Offshore Opportunity Master Fund, Ltd., Omega Capital Investors, L.P., Omega Capital Partners, L.P., Omega Equity Investors, L.P., Omega Overseas Partners, Ltd., Dina Horowitz, Kenneth J. Moodie, Robert Kunz, Alexander Y. Usenko, Julie Dull, Eric O'Day, Robert Linton, Richard A. Wheeler, James Golden, Jerry Jones, Charles

---

[5] The members of the Creditors' Committee are:  Advantage Opportunities Fund, LP; Albemarle Corporation; AQR DELTA Master Account, L.P.; BOKF, N.A., as Indenture Trustee; D. E. Shaw Composite Holdings, LLC; Flextronics Industrial, Ltd.; and Vivint Solar, Inc.

Bloom, Sharon Burnstein, TerraForm Global, Inc., Darcy Church, John Chamblee, Kingdon

Associates, Kingdon Credit Master Fund, L.P., Kingdon Family Partnership, L.P., M. Kingdon

Offshore Master Fund, L.P., Canyon Capital Advisors LLC, Canyon Balanced Master Fund,

Ltd., Canyon Capital Arbitrage Master Fund, Ltd., Canyon-GRF Master Fund II, L.P., Canyon

Value Realization Fund, L.P., Canyon Value Realization Master Fund, L.P., Permal Canyon IO

Ltd., VMT II, LLC, Simon Fraser, Jason Aldridge, Kearny Investors S.À R.L, Powell Investors

L.P., and Powell Investors II Limited Partnership are the plaintiffs in the D&O Actions.

**RELIEF REQUESTED**

12.     By this Adversary Complaint, the Creditors' Committee seeks a declaratory

judgment and an order enforcing the automatic stay under sections 362(a) and/or 105(a) of the

Bankruptcy Code against the D&O Actions in their entirety.

**FACTUAL ALLEGATIONS**

13.     SUNE is a renewable-energy development company that develops,

finances, installs, owns and operates renewable energy power plants, while also serving as a

renewable energy asset manager.

14.     In its capacity as asset manager, SUNE provides asset management,

operations and maintenance, monitoring and reporting services to safeguard and maximize the

performance of its customers' renewable energy assets.

15.     SUNE is the ultimate parent company of hundreds of domestic and foreign

subsidiaries, including the other Debtors and various non-debtors, that operate throughout the

world, including in the United States, Canada, Mexico, Latin America, Europe, India, Malaysia,

Singapore, Africa, the Middle East, Australia and Asia.

16.     As referenced above, SUNE has two non-debtor YieldCo subsidiaries,

TERP and GLBL, that own completed energy projects and were designed to contribute a steady

dividend to the YieldCos' investors, including SUNE.  On July 23, 2014, SUNE completed the

7

initial public offering ("**IPO**") of TERP.  SUNE retained a majority equity stake in TERP

immediately following the IPO[6] and contributed completed energy projects in developed

countries (*e.g.*, North America, the United Kingdom and Chile) to TERP.  On August 5, 2015,

SUNE completed the IPO of GLBL.  SUNE retained an approximately 33% equity stake in

GLBL immediately following the IPO and contributed completed energy projects in emerging

markets (*e.g.*, Brazil, China and India) to GLBL.

## I.   PROCEDURAL HISTORY

17.     Beginning on April 21, 2016, the Debtors filed with the Court voluntary

petitions for relief under chapter 11 of the Bankruptcy Code.  The Debtors' chapter 11 cases are

being jointly administered for procedural purposes.   The Debtors continue to operate their

businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and

1108 of the Bankruptcy Code.  As of the date hereof, neither a trustee nor an examiner has been

appointed in these chapter 11 cases.

18.     On April 21, 2016, the Debtors filed a motion, pursuant to sections 105(a)

and 362(d)(1) of the Bankruptcy Code, Rule 4001 of the Bankruptcy Rules, and Rule 4001-1 of

the Local Bankruptcy Rules for the U.S. Bankruptcy Court for the Southern District of New

York, seeking entry of an order modifying the automatic stay, to the extent it applies, to permit

certain insurers to reimburse certain defense costs in accordance with the Debtors' D&O

Policies.  [ECF Nos. 32, 33].

19.     On May 20, 2016, the Court granted the Debtors' motion, permitting

reimbursement from the D&O Policies with cap amounts of $8 million and $12 million (for

SUNE and the YieldCos, respectively), which could be increased by written agreement among

---

[6] SUNE's equity interest in TERP has reduced over time—from approximately 64% immediately following the IPO,
to approximately 43% in November 2015 and approximately 35% as of the Petition Date.

the Debtors, the Creditors' Committee, the Tranche B Lenders and Steering Committee and the DIP Agent.  [ECF Nos. 367, 368].  If those parties fail to agree on an increase, the Debtors may move for an expedited hearing.  The Court's orders specifically reserved, among other things, the right of parties to assert that the Debtors have a property interest in the D&O Policies.  [ECF Nos. 367, 368].

20.    On June 6, 2016, the Court entered an order clarifying that the automatic stay did not extend to certain pre-petition ERISA actions brought against non-debtor defendants, including directors and officers of the Debtors.  [ECF No. 474].  This order was entered without prejudice to the Creditors' Committee moving to extend the automatic stay to those non-debtor defendants in the ERISA actions or any other actions.

## II.    D&O ACTIONS

21.    Defendants have filed 30 actions against various current and former SUNE directors and officers, including:

- Actions alleging breaches of fiduciary duty.

  - *TerraForm Global, Inc. v. SunEdison, Inc.*, No. 12159 (Del. Ch.)
  - *Golden v. Chatila*, No. 16 Civ. 1423 (D. Md.)

- Actions alleging violations of ERISA.

  - *Jones v. MEMC Elec. Materials, Inc.*, No. 08 Civ. 1991 (E.D. Mo.)
  - *Usenko v. SunEdison, Inc.*, No. 16 Civ. 76 (E.D. Mo.)
  - *Dull v. SunEdison, Inc.*, No. 16 Civ. 173 (E.D. Mo.)
  - *Linton v. SunEdison, Inc.*, No. 16 Civ. 199 (E.D. Mo.)
  - *Wheeler v. SunEdison, Inc.*, No. 16 Civ. 226 (E.D. Mo.)

- Actions alleging securities fraud.

  - *Beltran v. TerraForm Global, Inc.*, No 15. Civ. 4981 (N.D. Cal.)
  - *Pyramid Holdings, Inc. v. TerraForm Global, Inc.*, No. 15 Civ. 5068 (N.D. Cal)
  - *Agrawal v. TerraForm Global, Inc.*, No. 15 Civ. 6322 (N.D. Cal.)
  - *Iron Workers v. TerraForm Global, Inc.*, No. 16 Civ. 2270 (N.D. Cal.)
  - *Badri v. TerraForm Global, Inc.*, No. 16 Civ. 2269 (N.D. Cal.)
  - *Patel v. TerraForm Global, Inc.*, No. 16 Civ. 2272 (N.D. Cal.)

- ○ *Aldridge v. TerraForm Global, Inc.*, C.A. No. 12196-VCL (Del. Ch.)
- ○ *Chamblee v. TerraForm Power, Inc.*, 16 Civ. 981 (D. Md.)
- ○ *Horowitz v. SunEdison, Inc.*, No. 15 Civ. 1769 (E.D. Mo.)
- ○ *Moodie v. SunEdison, Inc.*, No. 15 Civ. 1809 (E.D. Mo.)
- ○ *Kunz v. SunEdison, Inc.*, No. 16 Civ. 113 (E.D. Mo.)
- ○ *Cobalt Partners, LP v. SunEdison, Inc.*, No. 16 Civ. 2263 (N.D. Cal.)
- ○ *Okla. Firefighters Pension & Ret. Sys. v. SunEdison, Inc.*, No. 16 Civ. 2267 (N.D. Cal.)
- ○ *Glenview Capital Partners, LP v. SunEdison, Inc.*, No. 16 Civ. 2264 (N.D. Cal.)
- ○ *Omega Capital Inv., LP v. SunEdison, Inc.*, No. 16 Civ. 2268 (N.D. Cal.)
- ○ *Bloom v. SunEdison, Inc.*, No. 16 Civ. 7427 (S.D.N.Y.)
- ○ *Canyon Capital Advisors, LLC v. TerraForm Global, Inc.*, No. 16 Civ. 5185 (N.D. Cal.)
- ○ *Canyon Capital Advisors, LLC v. Alvarez*, No. 16 Civ. 5187 (N.D. Cal.)
- ○ *Kingdon Assocs. v. TerraForm Global, Inc.*, No. 16 Civ. 5477 (N.D. Cal.)
- ○ *Fraser v. TerraForm Global, Inc.*, No. 16 Civ. 2273 (N.D. Cal.)
- ○ *VMT II, LLC v. TerraForm Global, Inc.*, No. 16 Civ. 5531 (N.D. Cal.)
- ○ *Church v. Chatila*, No. 16 Civ. 628 (E.D. Mo.)
- ○ *Kearny Investors S.À R.L v. Goldman Sachs & Co.*, No. 16-CIV-01732 (Sup. Ct. Cal.)

22.     The current and former directors and officers named as defendants in the D&O Actions include:

- Antonio Alvarez, Director, SUNE.

- Jeremy Avenier, Vice President, SUNE; formerly Chief Financial Officer, GLBL.

- Peter Blackmore, formerly Director, SUNE; currently Chairman, TERP; and currently Chairman, GLBL.

- Ahmad Chatila, formerly President, Chief Executive Officer and Director, SUNE; formerly Chairman and Director, TERP; and formerly Chairman and Director, GLBL.

- Rebecca Cranna, Chief Financial Officer, GLBL; Chief Financial Officer TERP; formerly Senior Vice President and CFO, Global Asset Management, SUNE.

- Clayton Daley, Jr., Director, SUNE.

- Sebastian Deschler, Senior Vice President and General Counsel, TERP; formerly Vice President and Head of Legal, EMEA, and Latin America, SUNE.

- Carlos Domenech Zornoza, formerly Executive Vice President, SUNE; formerly Chief Executive Officer and Director, TERP; formerly Chief Executive Officer and Director, GLBL.

- Rik Gadhia, Vice President, SUNE; Vice President, TERP; and Vice President, GLBL.

- Francisco Perez Gundin, formerly Executive Vice President and Chief Operating Officer, SUNE; formerly Chief Operating Officer, TERP.

- Alejandro Hernandez, Executive Vice President and Chief Financial Officer, TERP; Executive Vice President and Chief Financial Officer, GLBL.

- Emmanuel Hernandez, Executive Chairman, SUNE.

- Matthew Herzberg, Senior Vice President and Chief Human Resources Officer, SUNE.

- Sanjeev Kumar, formerly Chief Financial Officer, TERP.

- Georganne Proctor, Director, SUNE.

- David Ranhoff, Senior Vice President, SUNE.

- Manavendra Sial, formerly Senior Vice President and Deputy Chief Financial Officer, SUNE; formerly interim Chief Financial Officer, TERP; formerly interim Chief Financial Officer, GLBL.

- Steven Tesoriere, formerly Director, SUNE; formerly Director, TERP; and formerly Director, GLBL.

- Martin Truong, Senior Vice President, General Counsel and Secretary, SUNE; formerly Director, TERP; and formerly Director, GLBL.

- James Williams, Director, SUNE.

- Brian Wuebbels, formerly Executive Vice President and Chief Financial Officer, SUNE; formerly Chief Executive Officer, President and Director, TERP; and formerly Chief Executive Officer, President and Director, GLBL.

- Randy Zwirn, Director, SUNE.

23.     In general, the D&O Actions assert a variety of claims against the named directors and officers, all stemming from allegations that the directors and officers failed to exercise good faith oversight over SUNE's operations and, instead, abdicated their responsibility to ensure that SUNE maintained adequate internal controls and complied with all applicable legal, regulatory and financial reporting requirements.  More specifically, some of the plaintiffs in the D&O Actions allege that the directors and officers filed false and misleading statements, including with the U.S. Securities and Exchange Commission (the "**SEC**"), concerning SUNE's financial status, including statements that concealed SUNE's true financial condition and misled the public and SUNE's stakeholder constituencies about SUNE's liquidity, internal controls and capital constraints—causing, among other things, the artificial inflation of SUNE's stock price and leading investors to continue investing and customers to continue doing business with SUNE (all to their significant financial detriment).

24.     Other plaintiffs in the D&O Actions allege that certain directors and officers sold their stock in SUNE while knowing, but failing to disclose, that SUNE had falsely stated or otherwise misstated its financial position.

25.     Other allegations in the D&O Actions include claims that the directors and officers were responsible for wasteful and imprudent spending of corporate assets, without disclosing liquidity and financial problems, on an unsustainable acquisition plan, including, but not limited to, the acquisitions of First Wind Holdings, LLC for $2.4 billion (plus an additional $510 million in earn-out payments to the sellers); Latin American Power for $677 million; Atlantic Power Transmission, Inc. for $525 million; and, as proposed, Vivint Solar, Inc. ("**Vivint**") for $2.2 billion—which proposed transaction was never completed and has led to litigation against SUNE with alleged damages in excess of $1 billion.

26.     Other claims brought by the plaintiffs in the D&O Actions arise out of SUNE's alleged manipulation of the YieldCos, including by, *inter alia*, (a) replacing members of

the TERP Conflicts Committee and senior management in order to receive authorization for revising the Vivint purchase agreement that approved pre-payment of future project purchases from SUNE, and (b) being complicit in the manipulation of the GLBL Board to conceal SUNE's true financial condition.

27.     The plaintiffs in the D&O Actions also allege that SUNE failed to monitor its internal controls over financial reporting, leading to the delayed filing of its 2015 Form 10-K with the SEC due to the identification of "material weaknesses in its internal controls over financial reporting."

28.     SUNE is named as a defendant in 20 of the D&O Actions, and it is alleged to have committed securities fraud in 14 of those actions, including: *Beltran*, *Pyramid Holdings*, *Agrawal*, *Badri*, *Patel*, *Horowitz*, *Moodie*, *Kunz*, *Cobalt Partners*, *Oklahoma Firefighters*, *Glenview Capital*, *Omega Capital*, *Bloom* and *Fraser*.

29.     The allegations in these complaints arise out of material misstatements and omissions relating to the GLBL IPO in August 2015 and SUNE's acquisitions and attempted acquisitions of other energy companies in and around the same time period and after, including those identified above (*see* ¶ 25, *supra*).

## III.   D&O POLICIES

30.     The primary D&O Policy, under which SUNE is the named insured, is with ACE American Insurance Company (Policy No. DON G23652389 009), in effect from July 15, 2015 through July 15, 2016 (the "**ACE Policy**").[7]   The ACE Policy provides for Sides A/B/C coverage[8] with a $10 million limit of liability.

---

[7] The Debtors purchased a six-year tail to extend the claims period under this policy, as well as under the excess layers in the tower (*see* ¶ 31, *infra*), until July 15, 2022.

[8] "Side A" provides coverage to individual directors and officers when not indemnified by the named insured corporation or another covered entity. *See, e.g.*, ACE Policy § I.A.  "Side B" provides coverage for the named insured corporation or another covered entity when it indemnifies directors and officers (*i.e.*, corporate

31.     Fifteen other D&O Policies, each also effective from July 15, 2015 through July 15, 2016, are excess to the ACE Policy (also providing Sides A/B/C coverage) in the following order and amounts:

- National Union Fire Insurance Company of Pittsburgh, Pa. (Policy No. 01-565-30-35), $10 million;

- Beazley Insurance Company, Inc. (Policy No. V122A7150501), $10 million;

- Freedom Specialty Insurance Company (Policy No. XMF1500236), $10 million;

- Starr Indemnity & Liability Company (Policy No. SISIXFL21226515), $10 million;

- National Union Fire Insurance Company of Pittsburgh, Pa. (Policy No. 01-565-37-56), $10 million;

- Old Republic Insurance Company (Policy No. CUG 37717), $10 million;

- National Union Fire Insurance Company of Pittsburgh, Pa. (Policy No. 01-565-38-29), $10 million;

- Beazley Insurance Company, Inc. (Policy No. V133E2150401), $5 million;

- Everest National Insurance Company (Policy No. SC5DO00179-151), $10 million;

- Endurance American Insurance Company (Policy No. DOX10007451600), $5 million;

- QBE Insurance Corporation (Policy No. QPL0133085), $10 million;

- Axis Insurance Company (Policy No. MCN788613/01/2015), $10 million;

- Liberty Insurance Underwriters Inc. (Policy No. DOCHAA6FKR001), $10 million;

---

reimbursement).  *See, e.g.*, ACE Policy § I.B.  "Side C" provides coverage to the named insured corporation or another covered entity for certain claims brought against it.  *See, e.g.*, ACE Policy § I.C.

- Endurance American Insurance Company (Policy No. DOX10007452000), $10 million; and

- XL Specialty Insurance Company (Policy No. ELU140099-15), $10 million.

32.     Upon information and belief, each of the defendants in the D&O Actions is an insured under the D&O Policies.  The D&O Policies, in the aggregate, provide for $150 million in coverage.  They cover, among other things, judgments, settlements and defense costs incurred in connection with certain claims brought against SUNE, its subsidiaries (including, but not limited to, the YieldCos) or its or their directors or officers.  *See, e.g.*, ACE Policy § II.I. These policies provide for aggregate liability, and, subject to the specific terms and conditions contained therein, proceeds are paid out as claims are made against the policies (*i.e.*, on a first-billed, first-paid basis) following exhaustion of the applicable retention (*i.e.*, deductible)—here, $2.5 million (which amount, upon information and belief, has already been expended).

33.     In addition, there are a number of other liability insurance policies under which SUNE is the named insured that provide excess Side A-only coverage, effective from July 15, 2015 through July 16, 2016 (collectively, the "**Side A-Only Policies**").[9]  The Creditors' Committee is not currently seeking any relief in this adversary proceeding with respect to the Side A-Only Policies,[10] although the Creditors' Committee reserves the right to seek relief with respect to the Side A-Only Policies in the future.

## IV.    DEBTORS' INDEMNIFICATION OBLIGATIONS

34.     SUNE has indemnification obligations to certain of its current and former directors and officers, including many or all of those named in the D&O Actions, pursuant to its

---

[9] The claims period for these policies has also been extended to July 15, 2022.

[10] Accordingly, "D&O Policies," as used herein, does not include or refer to the Side A-Only Policies.

Amended and Restated Certificate of Incorporation (the "**Certificate**"). The Certificate provides for broad indemnification of SUNE's current and former directors, officers and employees.

35.     Specifically, Article SIXTH of the Certificate provides that SUNE

shall indemnify any person who was or is a party or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative (other than an action by or in the right of the Corporation) by reason of the fact that he is or was a director, officer, employee or agent of the Corporation, or is or was serving at the request of the Corporation as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise, to the full extent authorized or permitted by law, as now or hereafter in effect, against expenses (including attorneys' fees), judgments, fines and amounts paid in settlement actually and reasonably incurred by him in connection with such action, suit or proceeding. The Corporation shall indemnify any person who was or is a party or is threatened to be made a party to any threatened, pending or completed action or suit by or in the right of the Corporation to procure a judgment in its favor by reason of the fact that he is or was a director, officer, employee or agent of the Corporation, or is or was serving at the request of the Corporation as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise, to the full extent authorized or permitted by law, as now or hereafter in effect, against expenses (including attorneys' fees) actually and reasonably incurred by him in connection with the defense or settlement of such action or suit.

36.     These obligations cover defense and settlement costs, judgments and other expenses associated with claims arising out of an act or omission committed in good faith while acting as a director, officer or employee. In addition, the Company has indemnification obligations to certain of its current and former directors and officers, including several of those named in the D&O Actions, pursuant to, among other things, employment, severance and other contractual undertakings and agreements.

## V.      **DEBTORS HAVE A PROPERTY INTEREST IN D&O POLICIES**

37.     An insurance policy issued to a debtor is "property of the estate" within the meaning of section 541 of the Bankruptcy Code. *See* 11 U.S.C. § 541(a); *see also In re MF Glob. Holdings Ltd.*, 469 B.R. 177, 190 (Bankr. S.D.N.Y. 2012) ("[I]t is well-settled that a debtor's liability insurance is considered property of the estate.").

38.     Further, where a directors and officers' liability insurance policy provides coverage to both individual insureds and debtors, courts have held that the debtors have a property interest in the policies "if depletion of the proceeds would have an adverse effect on the estate to the extent the policy actually protects the estate's other assets from diminution." *MF Glob.*, 469 B.R. at 191; *see also In re Focus Capital, Inc.*, 504 B.R. 296, 305 (Bankr. D.N.H. 2014) (similar), *aff'd sub nom.*, *Straccia v. Menard*, 2014 WL 4364904 (D.N.H. Sept. 2, 2014). Here, depletion of the value of the D&O Policies would adversely affect the Debtors' estates because such policies, subject to their terms and conditions, may be paid out on a first-billed, first-paid basis, with any payments or reimbursements to the directors and officers depleting the total value available to the Debtors under the policies.

39.     Courts analyze the terms of the policies and consider the facts and circumstances of each case when deciding whether debtors have a property interest in the policies.  The presence, as here, of Side C coverage weighs in favor of finding such a property interest.  *See In re Allied Digital Techs., Corp.*, 306 B.R. 505, 511 (Bankr. D. Del. 2004) ("When a liability insurance policy provides direct coverage to the debtor as well as the directors and officers, the general rule is that since the insurance proceeds may be payable to the debtor they are property of the debtor's estate."); *see also In re Downey Fin. Corp.*, 428 B.R. 595, 603 (Bankr. D. Del. 2010) (same).  Similarly, courts are concerned with whether claims have already been asserted against the debtor.  *Cf. In re First Cent. Fin. Corp.*, 238 B.R. 9, 17-18 (Bankr. E.D.N.Y. 1999) (holding that debtor did not have a property interest in policy, in part, because no securities claims had been filed to trigger Side C coverage).

40.     Here, SUNE's Side C coverage is triggered because securities fraud claims have already been asserted against SUNE (*see* ¶ 28, *supra*).  Thus, the Debtors have a property interest in the policies.  *See Allied Digital*, 306 B.R. at 511 ("A debtor's interest in the proceeds requires protection from depletion and overrides the interest of the directors and officers.");

17

*Focus*, 504 B.R. at 306; *In re Arter & Hadden, LLP*, 335 B.R. 666, 672-73 (Bankr. N.D. Ohio 2005); *see also* 1-15 Collier on Bankruptcy ¶ 15.03 (16th ed. 2016) (acknowledging that such a finding "give[s] adequate breadth to the concept of property of the estate").

41.    Additionally, courts have found that even where a debtor's own liability exposure was not covered by a directors' and officers' liability insurance policy, but where the debtor is entitled to proceeds of that policy if it had been required to indemnify directors and officers directly (*i.e.*, Side B coverage), then such "an indemnification interest in proceeds is sufficient to bring those proceeds into the estate." *In re Sacred Heart Hosp.*, 182 B.R. 413, 420 (Bankr. E.D. Pa. 1995); *see also Kirschenbaum v. Federal Ins. Co. (In re EMS Fin. Servs., LLC)*, 2013 Bankr. LEXIS 139, at *19 (Bankr. E.D.N.Y. Jan. 4, 2013) (same); *City Ins. Co. v. Mego Int'l, Inc. (In re Mego Int'l, Inc.)*, 28 B.R. 324, 326 (Bankr. S.D.N.Y. 1983) (same).

## VI.    BY DRAINING D&O POLICIES, CONTINUATION OF D&O ACTIONS WILL BE DETRIMENTAL TO DEBTORS' ESTATES

42.    If the D&O Actions continue, and the automatic stay is not enforced against them, the Debtors' estates will be harmed via the depletion, and eventual exhaustion, of a significant property interest of the Debtors—the D&O Policies.

43.    Specifically, depletion of the value of the D&O Policies will have an adverse effect on the estates because the estates have a significant interest in such policies—by virtue of claims that the Creditors' Committee intends to bring against SUNE's current and former directors and officers, with any recovery therein inuring to the benefit of all creditors. With dozens of other cases against these directors and officers to defend against, the value of the D&O Policies will be quickly exhausted in the absence of the relief requested herein, to the direct financial detriment of the Debtors' estates.  Because the claims largely, if not entirely, arise out of the same operative facts, it is wasteful for the D&O Actions to proceed at the same time.  *See, e.g.*, *Circle K Corp. v. Marks (In re Circle K Corp.)*, 121 B.R. 257, 261 (Bankr. D.

Ariz. 1990) ("[C]ontinued prosecution of the District Court security litigation affects debtor's property interests in a valuable estate asset [directors and officers liability insurance policy proceeds] in violation of the automatic stay.").

44.    Instead, the Court should enforce the automatic stay against the D&O Actions and allow the Creditors' Committee, on behalf of the Debtors' estates, to proceed against the directors and officers and attempt to recover from the D&O Policies, in which the Debtors have a property interest. *See, e.g.*, *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1001–02 (4th Cir. 1986) ("[A]ctions 'related to' the bankruptcy proceedings against the insurer or against officers or employees of the debtor who may be entitled to indemnification under such policy or who qualify as additional insureds under the policy are to be stayed under section 362(a)(3).").[11] Allowing that to occur has the obvious benefit of potentially providing substantially more money for distribution.

45.    Denying the relief sought herein would have the contrary effect:  allowing such property to leave the Debtors' estates other than via distribution, and without any benefit, to the Debtors' estates and creditors.  Thus, allowing the plaintiffs in the D&O Actions to obtain value from the D&O Policies in the event of a settlement or judgment will hurt the estates—

---

[11] In addition, to the extent there is an "identity of interest" between SUNE and the directors and officers named in the D&O Actions, such that SUNE "is the true, real party in interest, and a judgment against the [directors and officers] will, in effect, be a judgment or a finding against" SUNE (such as, for example, in the securities fraud actions in which SUNE is also named as a defendant (*see* ¶ 21, *supra*)), a sufficient basis exists to enforce the litigation stay against the D&O Actions under section 362(a)(1) of the Bankruptcy Code. *In re Bidermann Indus. U.S.A., Inc.*, 200 B.R. 779, 783-84 (Bankr. S.D.N.Y. 1996) (Bernstein, J.) (citing *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986)).  Alternatively, as indicated below (*see* ¶¶ 52-60, *infra*), the Court can stay the actions under section 105 of the Bankruptcy Code.  *See Bidermann*, 200 B.R. at 783; *see also, e.g., Drennen v. Certain Underwriters at Lloyd's of London (In re Residential Capital, LLC)*, 2016 WL 6155925, at *11 (Bankr. S.D.N.Y. Oct. 21, 2016) (in determining whether to stay action against non-debtor under section 105, court should consider, "among other relevant factors, whether the suits would (i) threaten the debtor's insurance coverage, (ii) increase the debtor's indemnification liability, (iii) result in inconsistent judgments, (iv) expose the debtor to risks of collateral estoppel or *res judicata*, and (v) burden and distract the debtor's management by diverting its manpower from reorganization to defending litigation").

namely, by depleting and, in turn, exhausting the value of the D&O Policies, in which the

Debtors have a property interest, before the estates and creditors obtain any benefit therefrom.[12]

46.    In addition, allowing the D&O Actions to proceed (and, in turn, the D&O

Policies to be depleted or exhausted) will only increase the total claims pool in these chapter 11

cases (and, thus, decrease recoveries for, among others, the Debtors' unsecured creditors):  given

the unavailability of insurance coverage (post-exhaustion of the D&O Policies) for SUNE's own

liability in the D&O Actions and to satisfy the Debtors' continuing indemnification obligations

to the directors and officers named in those actions, the attendant cost will be borne entirely by

the Debtors' estates and creditors.

## FIRST CLAIM FOR RELIEF

### (Declaratory Judgment)

47.    The Creditors' Committee repeats and realleges the allegations contained

in Paragraphs 1-46 of this Adversary Complaint as if fully set forth herein.

48.    For the reasons discussed above, the Creditors' Committee seeks an order

and judgment declaring that the Debtors have a property interest in the D&O Policies.

49.    Once so determined, and as described below, the Creditors' Committee will

seek to enforce the automatic stay to prevent depletion of this property interest.

50.    There is a substantial and continuing controversy between the Creditors'

Committee and Defendants, given that Defendants' continued prosecution of the D&O Actions

threatens to deplete, and quickly exhaust, the D&O Policies in which the Debtors have a property

interest.  A declaratory judgment that the Debtors have a property interest in the D&O Policies,

---

[12] Importantly, the directors and officers named as defendants in the Creditors' Committee's lawsuit also have a property interest in the D&O Policies and, thus, would still be entitled to use of the D&O Policies' proceeds to defend against the Creditors' Committee's claims.  *See In re CyberMedica, Inc.*, 280 B.R. 12, 18 (Bankr. D. Mass. 2002).  In order to preserve the value of the D&O Policies, however, the Court should continue to impose the $8 million and $12 million Cap Amounts (*see* ¶ 19, *supra*), with the same consultation and reservation of rights under the Court's prior orders.  [ECF Nos. 367, 368].

coupled with enforcement of the automatic stay with respect to those policies and against the D&O Actions in their entirety (as sought in the Creditors' Committee's Second Claim for Relief), would preserve this important property interest for the benefit of the Debtors' estates and creditors.

51.     As noted above (*see* ¶ 3 n.3, *supra*), the Creditors' Committee is seeking standing to commence and prosecute litigation imminently against various current and former SUNE directors and officers.  Because these individuals are unlikely to have assets sufficient to satisfy a judgment against them (given potential liability in the hundreds of millions of dollars, if not more), the D&O Policies are the principal source of any recovery for the estates for such causes of action.  A declaratory judgment that the Debtors have a property interest in the D&O Policies is thus critical, including to the Debtors' unsecured creditors.

## SECOND CLAIM FOR RELIEF

**(Enforcement of Automatic Stay under section 362 or,
in the alternative, section 105 of Bankruptcy Code)**

52.     The Creditors' Committee repeats and realleges the allegations contained in Paragraphs 1-51 of this Adversary Complaint as if fully set forth herein.

53.     As a result of the commencement of the Debtors' chapter 11 cases, and pursuant to section 362(a) of the Bankruptcy Code, the automatic stay enjoins all entities from "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."  11 U.S.C. § 362(a)(3).

54.     The automatic stay serves a number of purposes, including "protecting the assets of the estate."  *In re Zarnel*, 619 F.3d 156, 171 (2d Cir. 2010) (quoting *MBNA Am. Bank, N.A. v. Hill*, 436 F.3d 104, 109 (2d Cir. 2006)).  It bars any action which "would inevitably have an adverse impact on the property of the bankruptcy estate."  *Official Comm. of Unsecured Creditors v. PSS S.S. Co. (In re Prudential Lines Inc.)*, 119 B.R. 430, 432 (S.D.N.Y. 1990)

(quoting *In re 48th Street Steakhouse, Inc.*, 835 F.2d 427, 431 (2d Cir. 1987)), *aff'd*, 928 F.2d 565 (2d Cir. 1991).

55.     "The protections of the automatic stay inure to the benefit of both the debtor and creditors. 'One of the principal purposes of the automatic stay is to preserve the property of the debtor's estate for the benefit of all the creditors.'" *In re Taub*, 427 B.R. 208, 220–21 (Bankr. E.D.N.Y. 2010) (quoting *Prudential Lines*, 928 F.2d at 573), *aff'd*, 2011 WL 1322390 (E.D.N.Y. Mar. 31, 2011).  The automatic stay "protects creditors by 'prevent[ing] dissipation of the debtor's assets before orderly distribution to creditors can be effectuated.'" *In re Salander*, 450 B.R. 37, 45 (Bankr. S.D.N.Y. 2011) (quoting *Penn Terra Ltd. v. Dep't of Envtl. Res.*, 733 F.2d 267, 271 (3d Cir. 1984)); *see also In re Lehman Bros. Holdings Inc.*, 433 B.R. 101, 112 (Bankr. S.D.N.Y. 2010) ("Nothing is more basic to bankruptcy law than the automatic stay and nothing is more important to fair case administration than enforcing stay violations. . . . This Court has the power to protect a debtor's estate, and thereby ensure the equitable treatment of creditors, by enforcing the automatic stay."), *aff'd*, 445 B.R. 130 (S.D.N.Y. 2011).

56.     The protections of the automatic stay extend to all property of a debtor's estate.  Section 541 of the Bankruptcy Code defines "property of the estate" to include "all legal or equitable interests of the debtor in property as of the commencement of the case."  11 U.S.C. § 541(a)(1); *see also Banner v. Bagen (In re Bagen)*, 186 B.R. 824, 830 (Bankr. S.D.N.Y. 1995) ("By including all legal interests without exception, Congress indicated its intention to include all legally recognizable interests although they may be contingent and not subject to possession until some future time."), *aff'd*, 201 B.R. 642 (S.D.N.Y. 1996).

57.     The automatic stay applies to litigation against non-debtors where the claims "will have an immediate adverse economic consequence for the debtor's estate." *Queenie, Ltd. v. Nygard Int'l*, 321 F.3d 282, 287 (2d Cir. 2003).

22

58.    The Debtors have a property interest in the D&O Policies under well-settled law—including, without limitation, because those Policies also provide coverage to the Debtors, both for their own liability, given that SUNE itself has been sued for securities fraud (*i.e.*, Side C coverage), and to provide reimbursement for SUNE's indemnification obligations to the named current and former directors and officers (*i.e.*, Side B coverage).

59.    Continued litigation of the D&O Actions will deplete—and, soon, entirely exhaust—the value of the D&O Policies, harming the Debtors' estates.

60.    Accordingly, the Court should enforce the automatic stay pursuant to section 362(a) (or, in the alternative, section 105(a)) and prevent the continued litigation of the D&O Actions. *A.H. Robins Co.*, 788 F.2d at 1001–02 ("[A]ctions 'related to' the bankruptcy proceedings against the insurer or against officers or employees of the debtor who may be entitled to indemnification under such policy or who qualify as additional insureds under the policy are to be stayed under section 362(a)(3).").

WHEREFORE, the Creditors' Committee demands judgment against Defendants and requests the following relief:

A.    Entering a declaratory judgment that the Debtors have a property interest in the D&O Policies;

B.    Entering an order enforcing the automatic stay under section 362 of the Bankruptcy Code with respect to the D&O Policies and against the D&O Actions (pursuant to sections 362(a) and/or 105(a) of the Bankruptcy Code) until the effective date of a restructuring plan or further order of the Court; and

C.    Granting the Creditors' Committee such other and further relief as the Court deems just and proper under the circumstances.

Dated: November 2, 2016
       New York, New York

 

                      /s/ Matthew S. Barr
                      WEIL, GOTSHAL & MANGES LLP
                      767 Fifth Avenue
                      New York, New York  10153
                      Telephone:  (212) 310-8000
                      Facsimile:  (212) 310-8007
                      Matthew S. Barr
                      David J. Lender
                      Theodore E. Tsekerides
                      Joshua S. Amsel

                      *Counsel to Official Committee of Unsecured Creditors*

# EXHIBIT C

**Judge Castel's Mediation and Stay Order**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

IN RE: SUNEDISON, INC. SECURITIES
LITIGATION

-----------------------------------------------------------x

CASTEL, U.S.D.J.

ORDER

16-MD-2742
16-MC-2742
16-MC-2743
16-MC-2744

There is a limited pool of directors and officers liability insurance available to

cover certain defendants in this Multi-District Litigation. The debtor has noted that the costs

incurred by directors and officers in defending these actions will erode coverage limits. The

parties are directed to participate in a private mediation. It is anticipated that the mediation will

include non-parties such as Sun Edison's Creditors' Committee and the plaintiff in the derivative

action in the Delaware Chancery Court. To preserve the available coverage, there will be a one-

time, limited stay of all actions that are part of this MDL, which will expire on March 31, 2017.

A status report is required by March 17, 2017, and the Court does not anticipate extending the

stay absent a breakthrough development or other good cause.

The limited stay does not preclude the filing of amended complaints, pre-motion

letters, submissions related to the appointment of lead plaintiffs or lead counsel, or the other

procedural matters raised at today's pretrial conference. Contingent on the appointment of lead

counsel, Amended Consolidated Class Action Complaints in Pyramid Holdings, Inc. v.

TerraForm Global, Inc., et al., 16 Civ. 7981 (PKC), Church v. Chatila, et al., 16 Civ. 7962 (PKC)

and Usenko v. SunEdison, Inc., et al., 16 Civ. 7950 (PKC) shall be filed no later than January 16,

2017. Submissions for the appointment of lead counsel in the ERISA class action shall be made

no later than January 6, 2017. For all actions, the contemplated grounds for any proposed

motion to dismiss shall be set forth in a pre-motion letter to be filed no later than February 6,

2017, with any response due February 20, 2017. Defendants' letter brief concerning the status of

Oklahoma Firefighters Pension and Retirement System v. SunEdison, Inc., et al., 16 Civ. 7995

(PKC), is due January 16, 2017, with plaintiff's response due February 3, 2017.

       The time for any party to answer or move is stayed pending further action by the

Court.

       SO ORDERED.

 

                                        P. Kevin Castel
                               United States District Judge

Dated: New York, New York
       December 19, 2016